## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

NOV 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**KEVIN HAWKINS**
**8705 BOLERO COURT**
**CLINTON, MD 20735**
**301-856-0750**

**VS.**

Case: 1:07-cv-02077
Assigned To : Friedman, Paul L.
Assign. Date : 11/14/2007
Description: Employ. Discrim.

**DEPARTMENT OF JUSTICE (DOJ)**
**BUREAU OF ALCOHOL, TOBACCO, FIRARMS & EXPLOSIVES (ATF)**
**99 NEW YORK AVENUE, NE**
**WASHINGTON, DC 20226**

## COMPLAINT

### Agency's Failure to Complete an EEO Investigation within 180 Days:

On March 6, 2007, the DOJ, ATF acknowledged receipt of my EEO Complaint initially filed in January 2007; however, recorded by ATF on February 27, 2007. In accordance with EEO law the agency has until 180 days of the filing date to conduct a complete investigation of all EEO complaints. On July 2007 or August 27, 2007, the agency has failed to meet this deadline in Case Number ATF-2007-00212.

In summary, I hereby allege that from about July 2006 until the present, I have been subjected to continuous and a on-going pattern and practice of discrimination on the basis of my race (African-American), sex, (male), reprisal/retaliation for having engaged in a protected EEO activity (Contacting EEO & Filing a Complaint), notifying the Merit

1

Systems Protection Board (MSPB) and seeking an Office of Special Counsel (OSC)

investigation (Whistleblower). DOJ/ATF Management have violated my civil rights

under the EEO law protections and No Fear Act. The agency has created a hostile work

environment including, but are not limited to the following sequence of events or actions:

1.   On May 30, 2006, William Ellison, Former Assistant Human Resources

Officer, (AHRO) OM and Ann Marie Hannon, Branch Chief, Policy

(Caucasian Male & Female) directed me to draft my Critical Elements and

Standards (Disparate Treatment/Supervisor's Responsibility/Start of

Hostile Work Environment between First line and myself), stated for the

record that it was unfair to have an "Exceeds Fully Successful" rating

score without a standard to achieve the score (Comment ignored – told

ATF does not provide standards for "Exceeds Fully Successful";

2.   On July 24, 2006, met with ATF, Office of Management, Human

Resources Officer (HRO), Diane Filler (Caucasian Female), Assistant HR

Officer (AHRO), William Ellison, and former supervisor Ann Marie

Hannon, Human Capitol/Policy Branch and voiced my concerns/complaint

regarding being assigned at the branch level due to my assignments

coming from the HRO or Vivian Michalic, Deputy Assistant Director

(DAD) of OM (Caucasian Female) or other directorates. The lack of

understanding of my position and management at the branch level's

reluctance to accept my position lending itself to minimal supervision

would hinder me accomplishing my responsibilities and would escalate a

hostile work environment between management and myself; In addition, and most importantly, the Assistant HR Officer and my immediate supervisor initially accepting non-minority non-subject matter experts advice over mine until the HR Officer or DAD steps in and concurs with my advice supports it was a race issue (Ex. Eperformance, Telework Committee, Information for ATF Managers & Employees Q&As, etc.);

3. On July 31, 2006, Ms. Hannon sends an email implying that I was insubordinate; however, the fact of the matter is that I received a different directive from her immediate supervisor, Mr. Ellison who is my second line supervisor (This sort of miscommunication will continue/escalate creating a hostile working environment between my immediate supervisor and myself);

4. On August 2, 2006, met with OM Chain first – third line management to discuss and voice concern/complaint of management's reluctance to appropriate place my position. In addition, numerous complaints I have been receiving from fellow employees in regards to Office of Management. Most importantly, I voiced my concerns of me not having Critical Elements & Standards in accordance with 5 CFR;

5. On August 3, 2006, sent an email complaint to HRO regarding management's failure to provide my performance work plan (PWP), my incorrect leave balances, comp. time issues, and the bureau's work environment (Exhibit #1);

6.   On August 3, 2006, Ms. Filler responds to email, ignores complaint/prohibited personnel practices/EEO concerns by referring me back to my second and first line supervisor - Accusers of Violations (Exhibit #2);

7.   On August 3, 2006, Ms. Filler sends me an email regarding my whereabouts – a third level manger failing to follow the Chain of Command – why? Retaliatory for complaints (Exhibit #3);

8.   On August 3, 2006, Mr. Filler sends unrealistic assignment based on the timeframe due to complaint - Retaliation and Violation of the No Fear Act (Exhibit #4);

9.   On August 9, 2006, the Rosanne Russo, Telework Coordinator (Caucasian Female) provides labor relations advice which is not in accordance with the Telework Agreement; however, instead of addressing the coordinator I am verbally chastised about my tone (Exhibit #5);

10.  On August 9, 2006, correct LR advice regarding Telework Q&As ignored due to race (Exhibit #6);

11.  On August 18, 2006, Ms. Hannon sends me an email stating, "We need to make sure you are on a PWP as soon as possible," however, my PWP rating cycle has a June 16, 2006 start date and I did not receive the PWP UNTIL SEPTEMBER 20, 2006 TEN DAYS BEFORE THE END OF THE APPRAISAL – Prohibited Personnel Practices (Exhibit #7);

12. On August 31, 2006, Ms. Russo's inappropriate email is ignored due to her race; most importantly, I am not invited to attend the first Telework Committee meeting based on the Telework Coordinator's email rampage (Exhibit #8);

13. On September 1, 2006, Mr. Ellison and Ms. Hannon's excessive interference my duties as the National Negotiator which is to interpret agreements between the agency and NTEU and advise on compliance with such agreement – Telework Agreement (Exhibit #9);

14. On September 5, 2006, Leslie Randolph, Attorney, Chief Counsel provides her directorates position on whether or not I as the National Negotiator should attend Telework Committee meetings – It took this recommendation and complaints from managers on the Telework Committee in order of the Office of Management to reinstate me on the Telework Committee (Exhibit #10);

15. On September 14, 2006, met again with OM CHAIN and discussed all EEO issues and placement of my position;

16. On September 14, 2006, excluded from Telework Committee due to EEO complaints, etc. – Race/Retaliation (Exhibit 10A);

17. **On September 20, 2006, directed by Mr. Ellison, AHRO, and Ms. Hannon, first line supervisor, to back date receipt of PWP and mid-year review (Exhibit 10B);**

18.    On September 25, 2006, Mr. Ellison the manager that hired me specifically states, "If the Senior Negotiator position is placed in MELRB, the function should still be retained, i.e., the Negotiator will not be functioning as another MER Specialist but will be focusing exclusively on negotiation matters," which clearly means my position is not like any other staff member in MELRB; however, OM managers since Mr. Ellison's departure have attempted to treat my position as such – Violation of the No Fear Act – FOR THE RECORD, I SUGGESTED DUE TO THE LEVEL OF MY ASSIGNMENTS AND WHO DIRECTED MY ASSIGNMENTS MY POSITION SHOULD BE ABOVE THE BRANCH LEVEL (Exhibit #11);

19.    On October 10, 2006, Mr. Ellison takes out anger on me due to him being left out of Contract Negotiations Protocol by OM's upper-management - DAD & AD's decision (Exhibit #12);

20.    On October 3, 2006, vacation leave requests approved via email; however, not approved in WebTA – had to inquire up to scheduled day off (Retaliation for EEO complaint);

21.    On October 17, 2006, sent Critical Category A Negotiating Issues directly to Ms. Michalic, DAD due to document taking days going through the chain of command – year later allegations of failing to follow the chain of command (Exhibit #13);

22. **On October 20, 2006, I request a meeting with Vivian Michalic, DAD, OM because three levels of management refused to address my EEO concerns/complaint and prohibited practices - REASON WHY FY 06 RATING WAS CHANGED AND SUPPORTED BY MS. FILLER (Exhibit #14);**

23. On October 20, 2006, DAD requests all participants to provide her a solution to address all issues;

24. On October 23, 2006, only I as the complainant submitted a resolution; however, DAD rejected solution verbally – would not respond in writing! (Exhibit #15);

25. On October 25, 2006, met with new first-line supervisor Adrienne Moore, Chief of MELRB and Mr. Ellison, AHRO to discuss duties under my new branch;

26. **On October 29, 2006, former first-line supervisor Ann Marie Hannon, Chief of Policy emails me my FY 06 final rating – ALL OUTSTANDINGS (Exhibit #16);**

27. On November 6, 2006, management non-responsive to leave requests – Retaliation for EEO complaints (Exhibit #17);

28. **On November 26, 2006, received FY 06 Final Rating - Ms. Hannon started the PWP meeting off by stating, "I was not going to be happy with my rating because Mr. Ellison directed her to change the rating," I asked was Ms. Filler aware and Ms. Hannon replied that Ms. Filler agreed with Mr. Ellison.  Ms. Hannon I think inadvertently gave me**

two PWPs – one with four "Outstandings" and one "Fully Successful" and another with three "Outstandings" and two "Fully Successfuls" she stated, "the later one was the updated one - The documentation proves Mr. Ellison was tinkering with the rating to make sure the overall would not be "Outstanding" - Informed management that I was going to file an EEO & MSPB Complaint – Management documented on Rating Cover Sheet (Exhibit #18);

29.     In December 2006, met with Ms. Filler and she stated once she gathered all the facts she would address all of my issues – At several meetings she stated, "She was not changing my rating because of an administrative error," - Prohibited personnel practices is not an administrative error and retaliation for disclosing practices and filing an EEO complaint is a violation of my rights and should have been addressed by Ms. Filler, HRO and by Ms. Michalic, DAD, OM if management under her supervision refused!

.30     On December 21, 2006, retaliation from Mr. Ellison regarding misunderstood email tones;

31:     On December 21, 2006, I sent an email checking on the status of my rating to all of OM Chain of Command including Melanie Stinnett, Assistant Director, CFO/OM – Never received a response (Exhibit #19)

32    On January 5, 2007, met with Ms. Filler rendered management's final decision regarding FY 06 rating and refused to address EEO concerns, reassignment, etc.;

33.    On January 5, 2007, went to the ATF/EEO Office to file EEO complaint (Exhibit #20);

34.    **On January 22, 2007, sent an email to DAD regarding releasing confidential information to another staff member Lisa Boykin, HR Specialist. Ms. Boykin later becomes the Acting Chief, MELRB Branch and given permanent Chief position as a result of pre-selection/preferential treatment/retaliation against me for EEO complaints and MSPB/OSC complaints (Exhibit #21);**

35.    On January 23, 2007, Adrienne Moore, Chief, MELRB designates Ms. Boykin as the manager of status reports – Retaliation from OM Chain of Command due to January 22, 2007 complaint (Exhibit #22);

36.    In February 2007, William Ellison, AHRO and Diane Filler, HRO promoted Lisa Boykin, to a 120-Day Temporary Promotion at the GS-14, Branch Chief, MELRB position;

37.    **From about February 2007 to the present OM has either directed Ms. Boykin or on her own has attempted to micro-manage my work, attempted to set me up for failure, have excluded me from meetings/committees that I would normally attend, falsely accused me of failing to follow a chain of command set only for me; because, they have not followed there own alleged chain of command process. More**

importantly, have published and/or verbally released erroneous negative comments about my interaction with others (Exhibit #23);

38.     On March 9, 2007, Ms. Boykin sends an email stating, "Now that looks good," in reference to my Weekly Report submission; however, in my FY 07 appraisal she alleges that I don't keep her or OM management informed – Failure to follow the Chain of Command (Exhibit #24);

39.     On March 16, 2007, Ms. Boykin states, "I spoke with Kevin about the email below and he and I agree that this is more of an ER matter," this contradicts her allegations in my FY 07 appraisal that I do not give advice on ER matter and I only advise on Labor Relations/Negotiation matters (Exhibit #25);

40.     On March 20, 2007, I concurred with Leslie Randolph, Attorney, Chief Counsel's different opinion than mine – contradicts Ms. Boykin's allegation in my FY 07 appraisal under "Customer Service" that I do not get along with Chief Counsel or that I am not perceptive to others opinions (Exhibit #26);

41.     On April 5, 2007, Ms. Boykin and I met to resolve a misunderstanding about responsibility between myself and other ER/LR Specialist, she states, "I am glad that we met and were able to clear up the misunderstanding, thanks a lot Kevin," this contradicts her allegation in my FY 07 appraisal under "Customer Service" that I do not get along with

OHR Division and MELRB managers and that I am not perceptive to others opinions (Exhibit #27);

42. **On April 6, 2007, and numerous occasions Ms. Boykin has designated Ms. Wanda Gill, OWCP Program Manager as the Acting Chief for the Branch – Ms. Gill and I are GS-13's and should be sharing this role equally – Discrimination based on ~~Race~~ Sex and Retaliation for EEO complaint (Exhibit #28);**

43. On April 9, 2007, I send a second email to Ms. Boykin, often times she forgets that I have sent her an email or she have not read them; however, asks or accuses me of not forwarding her information – Failing to keep her informed; thus, failing to adhere to the chain of command (Exhibit #28);

44. **On April 19, 2007, Ms. Michalic states management's obligation to negotiate with NTEU, this was inappropriate and an insult to my position and responsibility – In addition, she did not follow the proper Chain of Command (Exhibit #29)**

45. On May 3, 2007, I placed Ms. Boykin back on a cc list regarding OM Directives; thus, this contradicts her allegation that I do no keep her informed of initiatives (Exhibit #30);

46. On May 4, 2007, I provided my Contract Training advice based on my experience; however, in my FY 07 Rating Ms. Boykin alleges my non-receptiveness to others opinion and gave an example of the TPD training workshop (Exhibit #31)

47. **On May 8, 2007, Ms. Boykin directs staff to provide Individual Development Plans (IDPs) – I provided one; however, I did state my concern that it was a directive due to the fact that IDPs are voluntary not mandatory – This will not be the last time Ms. Boykin directs staff members to respond to non-mandatory initiatives – Any voicing of your rights as an employee is later held against you by OM management through Ms. Boykin (Exhibit 31A)**

48. On May 18, 2007, Ms. Filler's failure to follow the appropriate Chain of Command procedures that management tries to allege that I do not follow – Also, Ms. Boykin responding to my duties (Exhibit #32)

49. **On May 21, 2007, clarified misunderstanding between Jim Zammillo, Assistant Director, Field Operations; however, Ms. Boykin's intervenes and requests a meeting – even though matter resolved by the email and/or meeting she later holds this against me in my FY 07 Rating – Allegation of not getting along with others! (Exhibit #33)**

50. On May 24, 2007, Ms. Boykin agrees with my LR advice/opinion in regards to Chief Counsel; however, in my FY 07 she uses this interaction against me (Exhibit #34)

51. On May 25, 2007, Ms. Hannon clearly does not understand the exceptions to Management Rights; however, this email reflects the Office of Management disrespect for my position and responsibilities, in addition, the basis for their actions are Discriminatory/Retaliatory (Exhibit #35)

52. **In or about June 2007, the ATF Merit Promotion Board process is violated by not adhering to its own ATF O 2311.2 – The board had Ms. Filler sit on the panel knowing she authorized Ms. Boykin's detail prior to the closing of the Branch Chief, MELRB position;**

53. On June 1, 2007, Ms. Boykin harasses me about not being on a Telework Agreement; when in fact I have been on a Telework Agreement since May 16, 2006 (Exhibit #36);

54. **On June 1, 2007, Ms. Boykin elevates the information from my Weekly Report, information which use to be conveyed to upper-management by me in accordance with my position description. Ms. Boykin attempted to take this responsibility from me by telling me she wants to see everything before I send anything up the chain of command. Ms. Boykin has tried to explain my duties and status of projects to upper –management by requesting numerous emails and meetings about the same subject with me, instead of allowing me to do my inherit responsibility. This was done to show to management that they made the right choice in picking her for the Branch Chief, MELRB position over me. In addition, since my EEO, MSPB & OSC filing, upper-management avoids any discussion with me in person and limited email communication – Retaliation (Exhibit #37)**

55. On June 14, 2007, Ms. Oates, requests copy of the 2007 proposed ATF/NTEU Contract to go on a "witch hunting expedition" by comparing the contract to the CFR to find out if agreement I negotiated is in

compliance. This responsibility is Chief Counsel and mine. In addition, if it was necessary it was done prior to signing off on all articles – No Fear Act/Retaliation (Exhibit #38)

56. **On June 15, 2007, Ms. Hannon and Daniel Clark, Program Manager from Policy clearly states their intentions, when Ms. Hannon states, "Yes, Daniel and I agree that Kevin does not have to notify the National NTEU as that was done by Treasury," which they think is to do my job! I am responsible for determining appropriate notices to the union – These sorts of decisions is condoned by upper-management by non-minorities that are not the Specialist and the majority of the time the minority specialist correct advice is ignored - No Fear Act/Retaliation/Harassment (Exhibit #39)**

57. On June 18, 2007, OM/Ms. Boykin's micro-management over my responsibilities – Violation of No Fear Act/Harassment (Exhibit #40);

58. On June 25, 2007, Ms. Boykin's interference with the Contract Bargaining Book which should have been completed at the end of every negotiation session – Violation of No Fear Act (Exhibit #41);

59. **On June 26, 2007, more micro-management from Ms. Boykin. A GS-13, National Negotiator/Senior HR Specialist eligible for a GS-14 and currently performing work at a GS-14 level should not have to be under a microscope due to filing complaints. In addition, I have to often times correct emails by Ms. Boykin trying to capture what I have stated or done in my duties, instead of management allowing me**

14

to provide my own updates; these interactions have created a Hostile Work Environment between Ms. Boykin and I – Violation of the No Fear Act (Exhibit #42);

60. **In or about July 2007, management fails to select me for the Supervisory HR Specialist (Employee Relations) Ann #M07-086 position due to my EEO FILINGS AND DISCLOSURES TO OSC AND MSPB – PICKS MS. BOYKIN – PRE –SELECTION (Retaliation);**

61. On July 2, 2007, Ms. Boykin asks for 2 subjects that have or may have bureau wide impact. I provide one and a non-bureau wide issue attempting to alleviate another confrontation; however, as usual, Ms. Boykin takes it as a challenge of her authority – Harassment (Exhibit #43)

62. **On July 3, 2007, Ms. Boykin as she commonly due, responds to an email sent to me for my strategy/guidance as the Subject Matter Expert (SME) – Violation of the No Fear Act/Disparate Treatment/Retaliation (Exhibit #44);**

63. On July 11, 2007, Ms. Boykin directs me to be the Acting Chief for the branch, only because Ms. Gill had a family emergency – Discrimination based on Sex/Disparate Treatment/Retaliation (Exhibit #45);

64. In July, 2007, strategy regarding signing agreement for the finalized contract ignored - my responsibility – later agreed to after NTEU requested the commonly known strategy in the Labor Relations Field – Violation of the No Fear Act/Retaliation (Exhibit #46);

65. On July 20, 2007, Helen Oates, New Assistant Human Resources Officer, compliments me on my Acting Branch duties – Customer Service Standard contradicts Ms. Boykin's alleged argument of customer service as I deal with OM (Exhibit #47);

66. On July 26-30, 2007, Ms. Boykin's micro-management continues, I am capable of determining the necessary steps to address all matters (Exhibit #48);

67. **On July 30, 2007 – August 2, 2007, the constant probing, micro-management became unbearable, thus, I sent my concerns which are a component of my EEO complaint to the OM Chain of Command (Exhibit #49);**

68. **On August 21, 2007, Ms. Boykin states she doesn't want any emails; however, wants a summary – this contradicts her allegation in my FY 07 Rating that I do not keep her informed about initiatives – also how about letting me do my job and provide the status (Exhibit #50);**

69. On August 21, 2007, I voice my concerns to Ms. Oates, that Mr. Clark constantly, will not accept the LR advice given to him; however, management refuses to address him (Race) – Disparate Treatment/Discrimination (Exhibit #51)

70. On August 30-31, 2007, Ms. Boykin inquires about my wear abouts; however, when I ask her the necessity to leave an email, instead of calling me on my work issued cell phone, she replies she thought I may have left

16

for the day - What professional would leave the office for the day prior to their scheduled time without getting approval – Harassment (Exhibit #52);

71.    On August 31, 2007, Ms. Boykin issues an email about office coverage and informing her when we go to lunch – not required by OPM regulations – Harassment/Retaliation (Exhibit #53);

72.    On August 31, 2007, Ms. Boykin begins to communicate with parties that I have only discussed negotiation matter with – unprofessional – undermining – I later find out from various customer's that she often talks to my customers after I have communicated with them inquiring about my interaction with them – Retaliation/Violation of the No Fear Act/Micro-management (Exhibit #54);

73.    **On September 13, 2007, Ms. Boykin clearly demonstrates unnecessary micro-management. A request from management over her is asked of me, I respond, management is happy, and she finds a way to complain about this interaction – I provided "Outstanding" customer service for three high-level managers – Email held against me in my Customer Service element of my FY 07 RATING (Exhibit #55);**

74.    **On September 14, 2007, more harassment from Ms. Boykin and a outright lack of knowledge of my position and Labor Relations; however, she has been given the Branch Chief position by Ms. Filler to harass and micro-manage my every steps – Violation of the No Fear Act/Harassment/Retaliation (Exhibit #56);**

75.   On September 18, 2007, Ms. Boykin once again tries to address a matter that I should handle per my position, instead of referring the call or inquiry to me – Micromanagement (Exhibit #57);

76.   In September, 2007, the DOJ sent the contract back with some concerns. I would have responded within one to two days; however, with the micro-management of OM management a response required numerous emails, meetings, and took weeks to reply – Violation of the No Fear Act (Exhibit #58);

77.   On September 24, 2007, Ms. Michalic, DAD incidentally reveals obviously a discussion I have not been privy to regarding letting someone else train on the contract that I negotiated and I am responsible for per my position.  She states, "I thought we discussed having someone in your office be able to do the training…" – Violation of the No Fear Act/Retaliation (Exhibit #59);

78.   In October 2007, harassed by Ms. Boykin about Training Workshop that she was invited to; however, elected not to attend - Held against me in my FY 07 Rating  - Retaliation/Violation of the No Fear Act (Exhibit #60);

79.   **On October 2007, met with Ms. Michalic & Ms. Boykin concerning a realignment of the Denver Field Office and CONTRACT resubmission to DOJ – due to me having a different opinion than Ms. Michalic my rating was lowered again this year.  Also, due to my EEO/OSC/MSPB Complaint I will never receive an "Outstanding"**

under the Office of Management – Retaliation/No Fear Act Violations (Exhibit #61);

80. **On October 4, 2007, sent an email to Ronnie Carter, Deputy Director, ATF regarding hostile working environment as a result of harassment – Still waiting on some relief - No Fear Act Violations/Violation of Violence in the Workplace Act (Exhibit #61A);**

81. On October 18, 2007, Ms. Filler as she often does since my EEO complaint goes out of her way to disagree with my advice. In fact the document she thinks is mine actually came from Chief Counsel – Retaliation (Exhibit #62);

82. On October 29, 2007, Ms. Boykin per OM management's directive issues a FY 07 Final Rating with erroneous allegations in order for me to not receive an "Outstanding". The directive was ordered due to my EEO complaint. Also, once again, the rating is not in accordance with the 5 CFR (Exhibit #63);

84. The Office of Management has violated my EEO rights and has refused to reassign me out of a "hostile work environment." I have made numerous reassignment requests which have been either ignored or refused months later.

19

**I HEREBY REQUEST A TRIAL BY JURY AND SEEK THE FOLLOWING RELIEF:**

1. Reassignment out of the ATF Office of Management, Human Resources Division due to the hostile work environment as a result of retaliation/harassment;

2. Restoration of all my leave due to the hostile work environment;

3. Proper classification of my position to a GS-14 or GS-14/15, National Negotiator effective May 16, 2006, including all benefits;

4. Restoration of FY 06 "Outstanding" Performance rating, including all benefits (Award, etc.);

5. Proper Final rating for FY 07 "Outstanding", including all benefits (Award, etc.);

6. Removal of all inaccurate comments and quotation in both ratings;

7. Full and reasonable attorney fees; and

8. Compensatory damages in the maximum allowed by law.

Please ensure that this complaint is heard as soon as possible, since the bureau continues to violate my equal employment rights.

Thank you,

*Kevin Hawkins*

Kevin Hawkins
8705 Bolero Court
Clinton, MD  20735
301-856-0750

*Kevin Hawkins*

20

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


KEVIN HAWKINS
8705 BOLERO COURT
CLINTON, MD  20735
301-856-0750


VS.                                                    CIVIL ACTION NO.


DEPARTMENT OF JUSTICE (DOJ)
99 NEW YORK AVENUE, NE
WASHINGTON, DC 20226

COMPLAINT

AGENCY'S FAILURE TO COMPLETE AN EEO INVESTIGATION WITHIN 180 DAYS


ON MARCH 6, 2007 THE DOJ, BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND
EXPLOSIVES (ATF) ACKNOWLEDGED RECEIPT OF MY EEO COMPLAINT FILED
ON FEBRUARY 27, 2007.  IN ACCORDANCE WITH EEO LAW THE AGENCY HAS
UNTIL 180 DAYS OF THE FILING DATE TO CONDUCT A COMPLETE INVESTIGA-
TION OF ALL COMPLAINTS.  ON AUGUST 27, 2007 THE AGENCY HAS FAILED TO
MEET THIS DEADLINE IN CASE NUMBER ATF-2007-00212.

IN SUMMARY, I HEREBY ALLEGE THAT FROM ABOUT JULY 2006, UNTIL THE
PRESENT, I HAVE BEEN SUBJECTED TO CONTINUOUS AND ON-GOING PATTERN
AND PRACTICE OF DISCRIMINATION ON THE BASIS OF MY RACE
(AFRICAN-AMERICAN), SEX (MALE) AND IN RETALIATION/REPRISAL FOR HAV-
ING ENGAGED IN PROTECTED EEO ACTIVITY (CONTACTING EEO), WHISTLE-
BLOWING ACTIVITY (CONTACTING MSPB & OSC).  MANAGEMENT ACTIONS
HAVE CREATED A HOSTILE WORK ENVIRONMENT INCLUDE, BUT ARE NOT
LIMITED TO THE FOLLOWING:

    1. ON SEPTEMBER 20, 2006, MR. HAWKINS WAS DIRECTED TO SIGN A
FALSIFIED FY 06 CRITICAL ELEMENTS & STANDARDS DOCUMENT (ER
RONEOUS RECEIPT DATE FOR PWP & MID-YEAR REVIEW);

    2. IN OR ABOUT NOVEMBER 2006, MR HAWKINS FY 06 RATING WAS
CHANGED FROM AN "OUTSTANDING" TO AN "EXCEEDS FULLY SUC
CESSFUL" FOR COMPLAINING ABOUT AN INAPPROPRIATE DIRECTIVE
AND THE RATING HAS BEEN SUSTAINED DUE TO MR. HAWKINS EEO FIL
ING AND DISCLOSURES;

3. FROM ABOUT JANUARY 2007 TO THE PRESENT, MANAGEMENT HAS MICRO-MANAGED MY WORK, ATTEMPTED TO SET ME UP FOR FAILURE, ATTEMPTED TO EXCLUDE ME FROM MEETINGS/COMMITTEES THAT I WOULD NORMALLY ATTEND, FALSELY ACCUSED ME OF FAILING TO FOLLOW A CHAIN OF COMMAND SET ONLY FOR ME, AND PUBLISHED NEGATIVE COMMENTS ABOUT MY SKILLS, PERFORMANCE, AND ATTITUDE;

4. FROM MAY 16, 2006 TO PRESENT I HAVE BEEN PERFORMING WORK AT A GS-14 LEVEL; HOWEVER, I HAVE BEEN COMPENSATED AT A GS-13 LEVEL;

5. MINORITY EMPLOYEES BEING MISCLASSIFIED WHILE NON-MINORITY MANAGERS BEING A PART OF A PAY DEMONSTRATION PROGRAM WHICH IS A RECRUITMENT & RETENTION PROGRAM;

6. IN ABOUT JUNE 2007, I HAVE BEEN DENIED A 120-DAY DETAIL OF THE ACTING CHIEF FOR THE EMPLOYEE & LABOR RELATIONS BRANCH;

7. IN ABOUT JUNE 2007, THE ATF MERIT PROMOTION BOARD NOT ADHERING TO ITS OWN ATF O 2311.2 - THE BOARD HAD AN INAPPROPRIATE MANAGER HAVE INPUT ON THE SELECTION;

8. IN ABOUT JULY, 2007, MANAGEMENT FAILED TO SELECT ME FOR THE SUPERVISORY HR SPEC. (EMPLOYEE RELATIONS) ANN #M07-086 POSITION DUE TO MY EEO FILING AND DISCLOSURES TO OSC AND MSPB;

9. ON NUMEROUS OCCASIONS SINCE I HAVE DESIGNATED A EEO REPRESENTATIVE ATF MANAGEMENT HAS DIRECTED ME TO MEET WITH THEM WITHOUT MY REPRESENTATIVE TO DISCUSS MATTERS WHICH ARE A PART OF MY EEO COMPLAINT;

10. REFUSING MY REPEATED REQUESTS SINCE ABOUT JANUARY 2007 FOR A REASSIGNMENT FROM UNDER THE OM MANAGERS THAT HAVE SUBJECTED ME TO A HOSTILE WORK ENVIRONMENT AND VIOLATIONS OF EEO AND OTHER EMPLOYEE RIGHTS;

11. ATF MANAGEMENT'S ONCE AGAIN FAILING TO ADHERE TO 5 CFR IN REGARDS TO RATINGS - FY 07 RATING IS NOT IN COMPLIANCE WITH REGULATIONS.

**I HEREBY REQUEST A TRIAL BY JURY.**

I HEREBY SEEK THE FOLLOWING RELIEF:

1. COMPENSATORY DAMAGES IN THE MAXIMUM ALLOWED BY LAW;

2. PROPER CLASSIFICATION OF MY POSITION TO A GS-14 OR GS-14/15 EFFECTIVE MAY 16, 2006, INCLUDING ALL BENEFITS (BACK-PAY & INTEREST);

3. RESTORATION OF "OUTSTANDING" PERFORMANCE RATING FOR FY 2006, INCLUDING ALL BENEFITS (AWARD, ETC.);

4. REMOVAL OF INACCURATE COMMENTS AND QUOTATIONS IN MY FY 2006 FINAL RATING;

5. REASSIGNMENT OUT OF THE ATF OFFICE OF MANAGEMENT, HUMAN RESOURCES DIVISION;

6. RESTORATION OF LEAVE DUE TO THE HOSTILE WORK ENVIRONMENT;

7. FULL AND REASONABLE ATTORNEY FEES.

PLEASE ENSURE THAT THIS COMPLAINT IS HEARD EXPEDITIOUSLY, SINCE THE BUREAU BELIEVES THAT THEY CAN IGNORE EEO LAW AND EEOC OR THE DISTRICT COURT IS TOO BOGGED DOWN TO HEAR COMPLAINTS.

THANK YOU,

*Kevin Hawkins*

KEVIN HAWKINS
8705 BOLERO COURT
CLINTON, MD 20735

EXHIBIT #1

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Thursday, August 03, 2006 9:03 AM |
| **To:** | Filler, Diane E. |
| **Cc:** | Ellison, William E.; Hannon, Ann Marie |
| **Subject:** | RE: Recording time and attendance |
| **Importance:** | High |

**Tracking:**

| Recipient | Delivery | Read |
|---|---|---|
| Filler, Diane E. | Delivered: 8/3/2006 9:03 AM | |
| Ellison, William E. | Delivered: 8/3/2006 9:03 AM | Read: 8/3/2006 12:08 PM |
| Hannon, Ann Marie | Delivered: 8/3/2006 9:03 AM | |

Diane,

I am hereby requesting a meeting to address the following issues:

1) My PWP;
2) My incorrect leave balances;
3) The need to request leave a week in advance;
4) The need to sign in and sign out on top of completing WebTA; (OPM approved WebTA to replace Sign In and Sign Out)
5) Compensation for working beyond 8 hours;
6) Work Environment.

Every week it appears that instead of making the work environment more family friendly/conducive to accomplish your job/etc., I am getting emails or directives that further restrict mobility which hinders my ability to my job. This is why I was frustrated in our last meeting. For what is worth, I have been an employee of ATF for three months (August 15, 2006) and there is definitely a retention issue within HR. There are numerous studies that show an employee will take a position that offers a more family friendly work environment (Flexible Programs/A level of Trust/Etc.) over a position the offers an equal salary or even a higher salary without this family friendly environment.

Maybe no one cares, however, it is very disheartening to be told one thing in an interview, accept a position based on what you were told in the interview, and then after you arrive the statements in the interview mean nothing!

There is a Telework Program that HR has the responsibility for promoting; however, we do not have HR employees in FT or PT telework status. I was informed that situational does not count when an agency is attempting to show they have a Telework program. I know numerous negotiators in my field, their grade levels are GS-13/14 or GS-15 and they were teleworking before the term was even invented.

In conclusion, when I first arrived I was given space in the water supply area, on the second day I was told that management understood that my position required mobility; therefore, I signed a bunch of forms and received a cell phone. On the other hand, it took a month or so to get a laptop, printer, etc. Unfortunately, having a cell phone and laptop with all these restrictions mean nothing! Finally, forgive me if I seem disillusioned; however, this email doesn't capture the 360 degree turn I have been subjected to over the course of a month or so.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*

07 2077

**FILED**

NOV 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

EXHIBIT #2

## Hawkins, Kevin J.

**From:**    Filler, Diane E.
**Sent:**    Thursday, August 03, 2006 11:29 AM
**To:**       Hawkins, Kevin J.
**Cc:**       Ellison, William E.; Hannon, Ann Marie
**Subject:** RE: Recording time and attendance

Kevin,
1   You should discuss your PWP with your supervisor
2   If you have incorrect leave balances, you should work with Judy Kamerer's shop to help get those reconciled.
3   I am not sure what you refer to w/ respect to requesting leave a week in advance. Certainly, all a/l should be pre-scheduled, absent emergency issues.

4     OM policy is to sign in and out. Everyone does it. What is the problem with it?
5   You need to request and obtain approval in advance for compeensation beyond 8 hours.
6   You should discuss your work enviornment with your supervisor.

I am not sure what all the discussion is on telework. I will tell you, that as a new employee to ATF with your upcoming responsibilities to carry forth a major term negotiation -- you will need to be here at the office meeting, dealing, researching and preparing. For now, I don't see your position until you are established, as telework. Is that really your question? Again, you should discuss with Ann Marie.

Lastly. You have the equipment now to do your job, I believe? You should set your work hours, have them approved by Ann Marie and carry on.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, August 03, 2006 9:03 AM
**To:** Filler, Diane E.
**Cc:** Ellison, William E.; Hannon, Ann Marie
**Subject:** RE: Recording time and attendance
**Importance:** High

Diane,

I am hereby requesting a meeting to address the following issues:

   1)    My PWP;
   2)    My incorrect leave balances;
   3)    The need to request leave a week in advance;
   4)    The need to sign in and sign out on top of completing WebTA; (OPM approved WebTA to replace Sign In and Sign Out)
   5)    Compensation for working beyond 8 hours;
   6)    Work Environment.

Every week it appears that instead of making the work environment more family friendly/conducive to accomplish your job/etc., I am getting emails or directives that further restrict mobility which hinders my ability to my job. This is why I was frustrated in our last meeting. For what it is worth, I have been an employee of ATF for three months (August 15, 2006) and there is definitely a retention issue within HR. There are numerous studies that show an employee will take a position that offers a more family friendly work environment (Flexible Programs/A level of Trust/Etc.) over a position the offers an equal salary or even a higher salary without this family friendly environment.

Maybe no one cares, however, it is very disheartening to be told one thing in an interview, accept a position

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Filler, Diane E. |
| **Sent:** | Thursday, August 03, 2006 11:06 AM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: Use of Official time by NTEU reps in ATF |
| **Sensitivity:** | Confidential |

I am not sure I know what the question is. by the way -- I was looking for you. Where are you?

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, August 03, 2006 9:20 AM
**To:** Filler, Diane E.
**Subject:** FW: Use of Official time by NTEU reps in ATF
**Importance:** High
**Sensitivity:** Confidential

Diane,

I spoke to Mike Church (TTB) late yesterday and they have done their part; now it is our turn! What's your call Madame?

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Lambert, Marcia F.
**Sent:** Thursday, August 03, 2006 8:12 AM
**To:** Randolph, Leslie; Filler, Diane E.; Hawkins, Kevin J.
**Cc:** Zammillo, James A., Sr.
**Subject:** FW: Use of Official time by NTEU reps in ATF
**Importance:** High

Jim Z asked that I forward this to you before I reply to Mr. Keller.

---

**Steve, I read Ms. Greemore's e mail to TTB NTEU officials to cease "representing or advising ATF employees", as they are "not in their own specific bargaining unit." Am I incorrect on this, or is Ms. Greemore's message not valid? The situation in my division is that TTB NTEU officials have been representing ATF employees directly in B.U. issues. If this is, in fact, allowed, please advise. My e mail made no mention of ATF NTEU stewards discussing issues with officials of NTEU.**

Any issues with that? Thanks, marcia

---

**From:** Steve Keller [mailto:steve.keller@NTEU.ORG]
**Sent:** Wednesday, August 02, 2006 11:02 AM
**To:** Lambert, Marcia F.

EXHIBIT #4

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Filler, Diane E. |
| **Sent:** | Thursday, August 03, 2006 4:40 PM |
| **To:** | Hawkins, Kevin J. |
| **Cc:** | Ellison, William E.; Hannon, Ann Marie |
| **Subject:** | FW: Directive This Morning |
| **Attachments:** | WEEKLY REPORT CHART.doc |

1) Great. Before our meeting with Vivian, you should have prepared a list of next steps and how they will be accomplished. she should have a packet of the proposed ground rules, the team memebers, our draft list of issues, and the agenda for the 2-day meeting with the team. This package should be shared with Bill Ann Marie and I in advance.

2) The e=mail should be set up for my approval, once I see it, I may in fact need to let Vivian/Melanie know about it.

3) I would be interested in a better understanding of some of the additional topics on the list. Most I am familiar with. Thanks

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, August 03, 2006 12:57 PM
**To:** Filler, Diane E.
**Subject:** Directive This Morning

Ms. Filler,

1) We are scheduled to meet with Vivian per your Directive. After we meet with Vivian you want me to bring the management team in for about two days to discuss strategy, their roles, management's position, etc.

2) I can send NTEU an email reply with management's position regarding TTB employees representing ATF employees or would you like a letter? If you want a letter sent who would you like to sign it?

3) I have attached a list of my assignments.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Friday, August 04, 2006 3:38 PM |
| **To:** | Filler, Diane E. |
| **Cc:** | Ellison, William E.; Hannon, Ann Marie |
| **Subject:** | RE: Directive This Morning |
| **Attachments:** | ATF term ground rules-NTEU2.doc; NTEU-MGMT Proposed term ground rules (2)(lr).doc; Ground Rules Analysis.doc; STRATEGY FOR BARGAINING ATF.doc; RE Management Team Members for the New ATFNTEU Collective Bargaining Agreement.htm |

**Tracking:**

| Recipient | Delivery | Read |
|---|---|---|
| Filler, Diane E. | Delivered: 8/4/2006 3:38 PM | |
| Ellison, William E. | Delivered: 8/4/2006 3:38 PM | Read: 8/4/2006 3:39 PM |
| Hannon, Ann Marie | Delivered: 8/4/2006 3:38 PM | Read: 8/7/2006 10:20 AM |

I already emailed you the Strategy/Steps. I am now sending you both set of proposals and an analysis. The team members list was previously emailed. The only things left for our meeting is drafting a preliminary list of issues, preparing the 2-day agenda, and putting together a folder. By the way, do you know the meeting is scheduled for Monday?

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Filler, Diane E.
**Sent:** Thursday, August 03, 2006 4:40 PM
**To:** Hawkins, Kevin J.
**Cc:** Ellison, William E.; Hannon, Ann Marie
**Subject:** FW: Directive This Morning

1) Great. Before our meeting with Vivian, you should have prepared a list of next steps and how they will be accomplished. she should have a packet of the proposed ground rules, the team memebers, our draft list of issues, and the agenda for the 2-day meeting with the team. This package should be shared with Bill Ann Marie and I in advance.
2) The e=mail should be set up for my approval, once I see it, I may in fact need to let Vivian/Melanie know about it.
3) I would be interested in a better understanding of some of the additional topics on the list. Most I am familiar with. Thanks

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, August 03, 2006 12:57 PM
**To:** Filler, Diane E.
**Subject:** Directive This Morning

Ms. Filler,

1) We are scheduled to meet with Vivian per your Directive. After we meet with Vivian you want me to bring

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Wednesday, August 09, 2006 11:16 AM |
| **To:** | Ellison, William E. |
| **Cc:** | Hannon, Ann Marie |
| **Subject:** | RE: Telework Committee |
| **Importance:** | High |
| **Sensitivity:** | Confidential |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | Ellison, William E. | Delivered: 8/9/2006 11:16 AM | Read: 8/9/2006 11:17 AM |
| | Hannon, Ann Marie | Delivered: 8/9/2006 11:16 AM | Read: 8/9/2006 11:17 AM |

For the record, the statements below are not in accordance with the Telework Program Agreement for the Bargaining Unit Employees (BUE):

*As for the committee, one is already established and as I indicated I will get NTEU participation and yours when the need arises to discuss changes.*

**My response:**

*What committee is she referring to? Because if two (2) NTEU REPS. are not members of this alleged committee there is no committee; and definitely not in accordance with the Bargaining Unit Employees Telework Program Committee.*

*If you refer to the agreement and the order, which apparently I am very unfamiliar with, it says we will develop policies, etc. (the agreement does that);*

**My response:**

*The Telework Committee has this role, not the agreement or Roe.*

*Work with OST on technological support (already done and determined per both the order and agreement;*

**My response:**

*Working with OST is the Telework Committee's role not Roe, not an order nor and agreement.*

10/31/2007

*Recommend training programs that should be provided (the only one is on learn ATF and it is in both the order and the agreement;*

*My response:*

*This statement refers to future training programs not the required learnATF course.*

*Monitor Telework progress (I am already doing that thru HR Connect).*

*Once again this is the Telework Committee's role*

*When I become aware of new technologies or classes, I will convene the committee. There is no requirement noted on either document on when that has to be done.*

*My response:*

*Telework Committee's Role not Roe's and definitely not whenever she thinks so!*

*FYI –NTEU HAS ALREADY INQUIRED ABOUT THE TELEWORK COMMITTEE*

*In summary, this is why I have been answering so many inquiries because the responses I received from Roe prior to my involvement were not: 1) in accordance with the BUE Telework Program Agreement, 2) neither clear advice and should not be supported by non-bargaining agreements / programs or any other documentation.*

*In addition, I hate to say this, but some of the advice or responses are out right incorrect! Without a doubt, with my priorities escalating I cannot continue answering all these Telework inquiries, debate with Roe, nor double check to see whether or not she accepted my interpretation of an agreement or labor comments on briefs / orders.*

Kevin J. Hawkins
Senior Negotiator, ATF
Human Resources Division
Policy and Human Capital Planning Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

10/31/2007

**From:** Russo, Rosanne F.
**Sent:** Wednesday, August 09, 2006 10:17 AM
**To:** Hawkins, Kevin J.
**Cc:** Hannon, Ann Marie; Ellison, William E.
**Subject:** RE: Telework Committee

*Kevin*

*I am so thrilled that you and Bill had a discussion about the program and my responsibilities and role in it without my input or presence. There may have been information I could have added so that everyone wouldn't think I was not taking an active role which I am. As for the committee, one is already established and as I indicated I will get NTEU participation and yours when the need arises to discuss changes. If you refer to the agreement and the order, which apparently I am very unfamiliar with, it says we will develop policies, etc. (the agreement does that); work with OST on technological support (already done and determined per both the order and agreement;, recommend training programs that should be provided (the only one is on learn atf and it is in both the order and the agreement; and, and monitor telework progress (I am already doing that thru HR Connect). When I become aware of new technologies or classes, I will convene the committee. There is no requirement noted on either document on when that has to be done. I am also rewriting the order and writing a paper for Inside ATF to try and get this program going in a more forward direction.*

*Additionally, I am very well aware of the provisions in the agreement, however, because you were doing the cross over from flexi place to the agreement and wanted to answer the questions, I worked with you on that one. I can just as easily answer them myself in the future. However, my working with you to achieve a final product should not be confused with a lack of knowledge or understanding of the agreement. In the future I will make sure you don't get the questions and if possible, please refer every question you receive regarding telework to me. I would be more than happy to answer them and assist people with their questions and concerns.*

*For the record, since I have been here for 20 years and have experience working with both NBU and BU issues in more complex issues than telework, I believe I know how to accurately cite things in a response and don't feel I need to be told.*

**Rosanne F. Russo**

*Program Analyst*

*Policy & Human Capital Planning Branch*

*202/648-9004/FAX 202/648-9005*

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, August 09, 2006 9:52 AM
**To:** Russo, Rosanne F.
**Cc:** Hannon, Ann Marie
**Subject:** RE: Telework Committee
**Importance:** High

Good Morning Roe,

Bill and I discussed the Telework Program and the numerous inquiries I have received and responded to regarding the transition period from the old Flexiplace Pilot Program to the new Telework Agreement. The Telework Program has a life of its own and he wants you to take more of an active role.

May I suggest from this point on you view the BU & Non-BU programs as two separate programs; because they are. As far as a need arising before you establish a committee, this is not in accordance with the agreement. In order for me to play a less active role in the Telework Program you have to become knowledgeable of the new Telework Agreement especially when it comes to what is required. (For Example: A Committee) If we had a committee already established management/I wouldn't have had to respond to so many inquiries. In addition, when inquiries come in refer to the Telework Agreement and your response should cite the applicable section. Also, prior to answering inquiries that are not covered in the Telework Agreement I suggest you forward your response to me prior to replying to the customer.

In conclusion, I am here to assist; however, as Bill stated, "I am not the Telework Coordinator."

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

**From:** Russo, Rosanne F.
**Sent:** Wednesday, August 09, 2006 8:02 AM
**To:** Hawkins, Kevin J.
**Cc:** Hannon, Ann Marie
**Subject:** RE: Telework Committee
**Sensitivity:** Confidential

*Yes, I will manage and address the committee portion of the agreement as it relates not only to BU employees, but NBU as well. As soon as the need arises to convene the committee, I will let you know. At this point since there are no significant changes to the non BU order and the agreement was recently signed, I do not see the need to convene the committee. There are representatives from each directorate on the committee already; however as*

*part of the agreement, I would love to have your input... At this point, unless something major changes we will not be convening. I do need to reach out and determine who can be the NTEU representatives and will do so as soon as I can.*

*Roe*

### Rosanne F. Russo

### Program Analyst

### Policy & Human Capital Planning Branch

### 202/648-9004/FAX 202/648-9005

---

**From:** Hawkins, Kevin J.
**Sent:** Tuesday, August 08, 2006 4:55 PM
**To:** Russo, Rosanne F.
**Subject:** Telework Committee
**Importance:** High
**Sensitivity:** Confidential

Roe,

As the Telework Coordinator are you going to manage and address the committee portion of the Agreement? I think it would be best if I was a member; keep me posted either way.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

10/31/2007

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Wednesday, August 09, 2006 12:09 PM |
| **To:** | Hannon, Ann Marie |
| **Cc:** | Ellison, William E. |
| **Subject:** | RE: |

My suggested revision to Answer #9 may seem like semantics; however, Holidays are taken on weekdays when they fall on weekends and Alternate Work Schedule days off change because of holidays, not the other way around. (You do not move a holiday for an employee's AWS day off)

My suggested deletion of the last sentence addressing question #13 needs to be deleted; because it is outright incorrect and it promotes side deals/unofficial arrangements/etc.!

Kevin J. Hawkins
Senior Negotiator, ATF
Human Resources Division
Policy and Human Capital Planning Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

---

**From:** Russo, Rosanne F.
**Sent:** Wednesday, August 09, 2006 8:20 AM
**To:** Hannon, Ann Marie
**Cc:** Hawkins, Kevin J.
**Subject:**

<< File: INFORMATION FOR ATF MGRSEMPL(1)(kh)_(2)(AMH).doc >>
*I have made changes where deemed necessary.*

*Thanks*

*roe*

*Rosanne F. Russo*
*Program Analyst*
*Policy & Human Capital Planning Branch*
*202/648-9004/FAX 202/648-9005*

**Tracking:**

| Recipient | Delivery | Read |
|---|---|---|
| Hannon, Ann Marie | Delivered: 8/9/2006 12:09 PM | Read: 8/9/2006 12:37 PM |
| Ellison, William E. | Delivered: 8/9/2006 12:09 PM | Read: 8/9/2006 12:10 PM |

1

EXHIBIT-0-0177

## Hawkins, Kevin J.

**From:** Hannon, Ann Marie
**Sent:** Friday, August 18, 2006 10:35 AM
**To:** Hawkins, Kevin J.
**Subject:** RE: PWP Proposed by Bill for your review and feedback

Hello Kevin:

We need to make sure you are on a PWP as soon as possible. Can you let me know if you have any issues with what Bill proposed? (See below). If not, I'll put it into the proper format. If you do however, let's discuss at your earliest convenience. Thanks and I hope you have a nice weekend.

Ann Marie

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, July 10, 2006 8:01 AM
**To:** Hannon, Ann Marie
**Subject:** RE: PWP Proposed by Bill for your review and feedback

Okay, I am checking on Ms. Loos's office location.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Office of Human Resources*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hannon, Ann Marie
**Sent:** Friday, July 07, 2006 5:39 PM
**To:** Hawkins, Kevin J.; Sankar, Donna T.
**Subject:** FW: PWP Proposed by Bill for your review and feedback

Hello Kevin:
Hello Donna:

Per Bill's request, let's work together to review this PWP. If we don't get to it this week, I'd suggest that the week after be scheduled. I'm going to send out a meeting request so we can coordinate on this. Thanks for your patience and cooperation.

Ann Marie

---

**From:** Ellison, William E.
**Sent:** Wednesday, June 14, 2006 3:00 PM
**To:** Hannon, Ann Marie
**Subject:** GS-13 PWP

Please review and share with Donna and Kevin. My changes are in bold and focus on the responsiveness issue we discussed yesterday with the other Worklife branch chiefs.

10/31/2007

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Russo, Rosanne F. |
| **Sent:** | Thursday, August 31, 2006 10:50 AM |
| **To:** | Hawkins, Kevin J. |
| **Cc:** | Ellison, William E.; Hannon, Ann Marie |
| **Subject:** | Telework committee |

*Kevin*

*Kevin, in the future when you are asked about convening a committee for any meeting regarding teleworking, please ensure you refer that person to me. I am the telework coordinator and manager of the program, as you so often tell me, and I am tasked with the responsibility to make the decision whether to convene the committee based on all the information, not just based on bits and pieces being piecemealed to me from you. You should not be concurring with the need for a committee meeting without my involvement. Perhaps if you had explained the reasons or had me there during the conversations, I would not need to ask you the history of the request or any other questions.*

*FYI - I have requested a meeting of the Telework Committee on September 6, 2006. As a union negotiator, I do not concur with your need to be present at the committee meeting(s). I am working with NTEU on getting the representatives. I have requested Leslie's presence and if I have future union questions, I will speak with Tina or Lisa.*

**Rosanne F. Russo**
**Program Analyst**
**Policy & Human Capital Planning Branch**
**202/648-9004/FAX 202/648-9005**

1

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Hannon, Ann Marie |
| **Sent:** | Friday, September 01, 2006 4:20 PM |
| **To:** | Ellison, William E. |
| **Cc:** | Russo, Rosanne F.; Hawkins, Kevin J.; Randolph, Leslie |
| **Subject:** | Update --- Telework Committee |

Hello Bill:

I contacted Leslie Randolph for clarification of the language in the Telework Agreement for Bargaining Unit employees.

Leslie indicated that, yes, a Telework Committee for BU and NBU employees must exist, but only "may" conduct activities if they so decide. She further agreed that a Telework Committee w/NTEU reps is required in the Agreement, while a Telework Committee w/o NTEU reps is required in the Order for NBU employees.

As a result, she indicated it could be that the Committee w/o NTEU reps could meet internally and the Committee w/NTEU reps would only need to meet when issues for BU employees would emerge.

Here are some additional points that may need to be recognized as valid:

- There is nothing in the agreement or the order that the NBU Telework Committee members cannot also participate on the BU Telework Committee.
- There is nothing in the agreement or order that prohibits the Telework Coordinator from participating on the Committee, or indeed in chairing the committee.
- There is nothing in the agreement to allow for participation by the Senior Negotiator.

So, again, I feel strongly that Roe has and continues to handle her responsibilities for Telework appropriately. Also, I would be willing to discuss this further at your earliest convenience.

Ann Marie

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Randolph, Leslie |
| **Sent:** | Tuesday, September 05, 2006 11:19 AM |
| **To:** | Hawkins, Kevin J.; Hannon, Ann Marie; Ellison, William E. |
| **Cc:** | Russo, Rosanne F.; Loos, Eleaner R. |
| **Subject:** | RE: Update --- Telework Committee |

I will clarify the following points I made with Marie Hannon on Friday:

- Section 9.d, "Telework Committee, <u>which is</u> composed of one representative per directorate and two NTEU representatives may . . ."
  - The choice of language conveys that it is mandatory that a telework committee exist which is comprised of one representative per directorate and two NTEU representatives
  - The balance of the sentence indicates that the committee "may" address four defined areas (Section 9.d(1)-(4)) (however the committee is probably not precluded from mutually agreeing to address more than those four topics. I would advise, however, that the committee limit itself to those subjects or risk inviting union participation that verges on becoming "partnership."
- The ATF/NTEU Telework Agreement was negotiated from the underlying ATF Telework Order (which applies to non-bargaining unit employees)
  - The underlying ATF Telework Order uses the same language above regarding a telework committee minus the reference to NTEU representatives
  - I suggest that the same Telework Committee that meets to address non-bargaining unit issues can also meet with NTEU representatives to address bargaining unit telework issues. (Of course managers on the main Telework Committee who have no BU employees would not need to participate in the joint sessions)
- HR should determine internally whether it would like its national negotiator to participate in the Telework Committee meetings with HR's Telework Coordinator. Legal, however, recommends that since the Telework Committee will essentially enter into discussions that may become "impact/implementation negotiation," it is highly advisable that HR's National Negotiator jointly participate with the Telework Coordinator in those meetings.

---

**From:** Hawkins, Kevin J.
**Sent:** Tuesday, September 05, 2006 10:17 AM
**To:** Hannon, Ann Marie; Ellison, William E.
**Cc:** Russo, Rosanne F.; Randolph, Leslie
**Subject:** RE: Update --- Telework Committee

I like to discuss the matter at today's meeting.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

10/31/2007

## Hawkins, Kevin J.

**From:**     Ellison, William E.
**Sent:**     Thursday, September 14, 2006 1:11 PM
**To:**       Hawkins, Kevin J.
**Subject:** RE: Telework committee meeting

I talked to Roe…at this point, it does not appear that any negotiations will take place.  Roe/Ann will fill you in.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 14, 2006 8:34 AM
**To:** Ellison, William E.; Hannon, Ann Marie; Russo, Rosanne F.
**Subject:** RE: Telework committee meeting
**Importance:** High

This meeting is not on my calendar, nor have I been invited to attend this meeting.  However, I am still responding to inquiries regarding the Telework Agreement; because the inquiries are compliance/labor related.

Bill,

Ann does not have a computer (technical problems).

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Ellison, William E.
**Sent:** Thursday, September 14, 2006 8:28 AM
**To:** Hannon, Ann Marie; Russo, Rosanne F.; Hawkins, Kevin J.
**Subject:** Telework committee meeting
**Importance:** High

Is there an agenda for this meeting today? Who will be coming and where will it be held at again?

EXHIBIT 10B

U. S. DEPARTMENT OF JUSTICE

BUREAU OF ALCOHOL TOBACCO FIREARMS
AND EXPLOSIVES

# ADDENDUM

## TO
## PERFORMANCE WORK PLAN

DATED JUNE 30, 2006

## FOR
## KEVIN J. HAWKINS

ANN MARIE HANNON, CHIEF          KEVIN J. HAWKINS, HR SPECIALIST

POLICY & HUMAN CAPITAL PLANNING BRANCH, HUMAN RESOURCES DIVISION

WILLIAM E. ELLISON, ASSISTANT HUMAN RESOURCES OFFICER

THE ATTACHED ADDENDUM

IS MADE A PART

**OF THE PERFORMANCE WORK PLAN OF KEVIN J. HAWKINS**

CRITICAL ELEMENTS AND PERFORMANCE STANDARDS
HUMAN RESOUCES SPECIALIST
(SENIOR NEGOTIATOR) GS-201-13

## 1. Customer Service. (10%)

Outstanding: In addition to the Fully Successful standard, provides independent, accurate and timely advice on the most complex and unprecedented labor relations issues. Advice reflects expert labor relations and negotiations knowledge and creativity. In most instances, identifies volatile and/or critical issues, anticipates management's requests in regard to them, and initiates appropriate contact to achieve resolution. Incumbent is relied upon to resolve serious problems in order to meet management's objectives while maintaining the integrity of the labor relations program and comporting with Federal or other requirements.

Fully Successful: Independently provides timely and accurate technical advice and guidance on labor relations issues to Bureau supervisors and managers, officials of other Government agencies/bureaus, other employees, and the public. Written and oral advice is sound, well researched, and thoroughly analyzed. Guidance is clear and unambiguous; the method of presentation is straightforward. Oral advice is given by telephone, cell phone and at conferences, meetings and training sessions; written advice is given via E-mail or other documents. If there is feedback it is usually positive. Requests from management for information are addressed in a timely fashion.

Unacceptable: Usually fails to independently provide accurate or timely advice. Issues and concerns are not appropriately researched. Presentations and written documents are disorganized and management's questions and concerns have not been resolved appropriately.

## 2. Workload Management. (10%)

Outstanding: Independently manages negotiations/labor relations projects covering a diverse mix of human resource management functions. Management initiatives are frequently completed before mandated timeframes; however, managerial/contractual impediments are taken into consideration.

Office of Management/Human Resources Division receives frequent positive feedback from customers on the efficiency of service and timeliness of assistance provided by the specialist. Provides regular written updates on negotiations/labor relations projects as required by management, without frequent need for a reminder.

Fully Successful: Independently manages negotiations/labor relations projects and a diverse mix of human resource management functions. Ensures that management initiatives are completed in accordance within established time frames.

Advises appropriate managers of situations where time frames cannot be met and the reasons for the delay. Managers rarely receive inappropriate complaints of delays. Provides regular written updates on negotiations/labor relations projects as required by management, with few reminders necessary.

Unacceptable: Requires assistance from branch chief in prioritizing work. Assignments are rarely completed on time. Management actions are completed and leave the branch well beyond established time frames. Branch chief frequently received valid complaints of untimely service and poor and untimely work products.

## 3. Labor Relations Technical Support. (15%)

Outstanding: In addition to the fully successful standard, on a continuing basis, independently provides timely and accurate technical advice and guidance on negotiations/labor relations issues to management and less senior employees. Managers are consulted only regarding extremely complex, unique or sensitive situations. Inquiries from entities within and outside the Bureau are prepared in a timely manner. Draft materials are prepared with a conscious effort to minimize confusion and understanding. Written work contains clarity to address the customer's intent. Oral presentations are given based on knowledge and the ability to interact appropriately with the recipients. Provides information to all inquiries and is able to diffuse potentially explosive situations, with little or no need for supervisory involvement. Can be relied upon with confidence to express thoughts and issues effectively. Makes proactive, practical recommendations to improve service delivery.

Fully Successful: With occasional assistance from management, provides timely and accurate technical advice and guidance to management and less senior employees on a variety of labor relations issues. Written and oral advice is current and in accordance with applicable law, regulation and policy. The method of presentation is straightforward. Oral advice is given by telephone, cell phone, at conferences, meetings and training sessions; written advice is given via e-mail or other documents. Inquiries with entities inside and outside of the Bureau are handled, quickly, accurately and succinctly. If there is feedback it is usually positive. Requests from management for information and advice are normally addressed in a timely matter.

Unacceptable: Usually is unable to provide written or oral technical guidance without significant assistance from the branch chief. Written work products contain frequent grammatical, spelling, and structural errors. Almost always fails to develop written materials suitable for distribution to Bureau employees.

## 4. Labor Relations Program Accountability. (15%)

Outstanding: In addition to the fully successful standard, keeps abreast of potential changes in Labor Relations statute and Federal personnel regulations using professional literature, Internet and other appropriate sources to anticipate potential impact on Bureau. Independently and on own initiative reviews human resources and administrative orders, policy statements, and Bureau guidance to ensure that they are consistent with the national labor agreement. Independently and on own initiative recommends appropriate changes in policy to ensure compliance with the national labor agreement. Maintains expert knowledge of Federal personnel regulations as they relate to assigned negotiations and labor relations areas.

Fully Successful: Is fully knowledgeable of negotiations/labor relations goals and responsibilities assuring that the assigned functions are carried out in line with the established goals and responsibilities. Reviews orders, policy statements and other Bureau guidance in human resources management and administration to ensure that they are consistent with current national labor agreement and brings discrepancies to the attention of the point of contact for changes. Keeps current on Federal personnel and administrative regulations as related to assigned Labor relations

areas. Coordinates with other Division, Directorate or Bureau staff when functional responsibilities overlap in order to develop and present a unified position.

Unacceptable: Does not keep abreast of the national labor relations program area, review directives/orders, and maintain current technical knowledge of Federal personnel regulations. Fails to identify and make recommendation on changes to existing directives or complete assigned work.

## 5. Negotiations. (50%)

Outstanding: Independently identifies complex situations which may generate a duty to bargain and/or potential resolution through unprecedented efforts, and provides expert advice and guidance to applicable parties. Consistently provides appropriate notice to the union of changes in working conditions; determine whether impact and implementation bargaining is required. Independently determines if interest based bargaining or alternate dispute resolution processes are appropriate. Consistently without supervision determines the negotiability of proposals during the negotiation process. Independently study and provide expert guidance on the feasibility of jointly fashioned recommendations by working groups, focusing on problem resolution and joint interests. Consistently leads management teams on negotiating techniques and strategies.

Fully Successful: Requires occasional supervision in addressing complex situations which may generate a duty to bargain and/or potential resolution through unprecedented efforts, and provides expert advice and guidance to applicable parties. Usually provides appropriate notice to the union of changes in working conditions; determine whether impact and implementation bargaining is required. Requires occasional supervision in determining if interest based bargaining or alternate dispute resolution processes are appropriate. Usually without supervision determines the negotiability of proposals during the negotiation process. Requires occasional supervision when studying and providing expert guidance on the feasibility of jointly fashioned recommendations by working groups, focusing on problem resolution and joint interests. Usually leads management teams on negotiating techniques and strategies.

Unacceptable: Demonstrates failure or unwillingness to exhibit the initiative necessary to meet the needs of management's priorities and work in progress.

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Ellison, William E. |
| **Sent:** | Monday, September 25, 2006 10:30 AM |
| **To:** | Hannon, Ann Marie; Hawkins, Kevin J. |
| **Cc:** | Moore, Adrienne T. |
| **Subject:** | FW: Senior Negotiator's Reassignment/Transfer |
| **Sensitivity:** | Confidential |
| **Attachments:** | Senior Negotiator Briefing Paper_rev_09_15_06_amh(2).doc |

I find this proposal to be fragmented and unclear. I have added notes in bold. I don't see any discussion/mention of the following…these are not statements, I want you all to think about themg :

1. If the Senior Negotiator position is placed in MELRB, the function should still be retained, i.e., the Negotiator will not be functioning as another MER specialist but will be focusing exclusively on negotiation matters.

2. During and with the conclusion of negotiations the Senior Negotiator will be developing and coordinating interpretations/summary of the contract with the Policy staff.

3. The Senior Negotiator will be responsible for clearing directives with the union as was done previously with MELRB.  MELRB will track on the clearances and report status every week to Policy and asst HRO (Worklife).

---

**From:** Moore, Adrienne T.
**Sent:** Tuesday, September 19, 2006 4:40 PM
**To:** Ellison, William E.
**Subject:** FW: Senior Negotiator's Reassignment/Transfer
**Sensitivity:** Confidential

Bill,

I have nothing to add to this until you and I meet to discuss.  Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, September 18, 2006 12:28 PM
**To:** Hannon, Ann Marie; Moore, Adrienne T.
**Cc:** Ellison, William E.
**Subject:** RE: Senior Negotiator's Reassignment/Transfer
**Sensitivity:** Confidential

As the requestor I made some minor additions.  Regarding the performance work plan, the plan is a close reflection of my duties and the reason I was hired; thus, I've re-attached it.  In addition, the plan should alleviate any misunderstanding regarding my role once the reassignment/transfer become effective.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

# Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Tuesday, October 10, 2006 10:06 AM |
| **To:** | Ellison, William E. |
| **Cc:** | Moore, Adrienne T.; Hannon, Ann Marie; Filler, Diane E. |
| **Subject:** | RE: Proposed Bargaining Dates for the last Four Weeks of Bargaining |
| **Sensitivity:** | Confidential |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | Ellison, William E. | Delivered: 10/10/2006 10:06 AM | Read: 10/10/2006 11:33 AM |
| | Moore, Adrienne T. | Delivered: 10/10/2006 10:06 AM | Read: 10/12/2006 7:53 PM |
| | Hannon, Ann Marie | Delivered: 10/10/2006 10:06 AM | Read: 10/10/2006 12:46 PM |
| | Filler, Diane E. | Delivered: 10/10/2006 10:06 AM | |

Good Morning,

Article 7, will comply with the new PWP order and Pay Demo employees will have a separate Article – Section.

Thanks for the comments; however, per Vivian's/Diane's instructions the list has to be a reflection of the management team's priorities and I cannot just add issues without the team agreeing.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Ellison, William E.
**Sent:** Tuesday, October 10, 2006 8:00 AM
**To:** Hawkins, Kevin J.
**Cc:** Moore, Adrienne T.; Hannon, Ann Marie
**Subject:** RE: Proposed Bargaining Dates for the last Four Weeks of Bargaining
**Importance:** High
**Sensitivity:** Confidential

Kevin, I don't know if you have sent the list of issues as yet for Diane's review and Vivian's approval. I've been cut out of a lot of the traffic...but I wanted to note two things that I've noticed haven't been directly addressed in any of the versions of the issue listing that I've seen

First, Article 7, section 8 should be deleted since we are now under a single rating cycle. Appraisals are no longer done on WGI anniversary dates. By OPM regulation, WGIs would be based on the last rating of record and when a within-grade increase decision is not consistent with the employee's most recent rating of record a more current rating of record must be prepared." (5 CFR 531.404 (a) (1).

Second and this goes to the Demo union dues issue, shouldn't the last sentence in Article 37 section 8 be deleted? It makes no sense for the employer to waive recovery of dues not deducted and pay the union.

I have other questions and would like to see you ...along with Adrienne and Ann

# Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Tuesday, October 17, 2006 4:06 PM |
| **To:** | Michalic, Vivian B. |
| **Cc:** | Hannon, Ann Marie; Filler, Diane E.; Ellison, William E. |
| **Subject:** | RE: Critical Category A Negotiating Issues |
| **Sensitivity:** | Confidential |

**Tracking:**

| Recipient | Delivery | Read |
|---|---|---|
| Michalic, Vivian B. | Delivered: 10/17/2006 4:06 PM | Read: 10/17/2006 4:58 PM |
| Hannon, Ann Marie | Delivered: 10/17/2006 4:06 PM | Read: 10/17/2006 4:41 PM |
| Filler, Diane E. | Delivered: 10/17/2006 4:06 PM | Read: 10/18/2006 2:15 PM |
| Ellison, William E. | Delivered: 10/17/2006 4:06 PM | Read: 10/17/2006 4:08 PM |

Okay.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Michalic, Vivian B.
**Sent:** Tuesday, October 17, 2006 2:57 PM
**To:** Hawkins, Kevin J.
**Cc:** Hannon, Ann Marie; Filler, Diane E.; Ellison, William E.
**Subject:** FW: Critical Category A Negotiating Issues
**Sensitivity:** Confidential

Kevin,
Thank you for forwarding these, I was waiting for them so we can go to the Deputy Director to synopsize our priorities for negotiations. We need to capture the issues not just list the Article and Section. Please try and summarize each of the issues for EPS and TPD. Once I get that back I want to schedule a meeting with you, Diane, Melanie, myself and the Deputy Director later this week. Thanks, I think this should go well.

Vivian

---

**From:** Hawkins, Kevin J.
**Sent:** Tuesday, October 17, 2006 1:41 PM
**To:** Michalic, Vivian B.
**Subject:** Critical Category A Negotiating Issues
**Sensitivity:** Confidential

Vivian,

Just in case you wanted them ASAP.

*Kevin J. Hawkins*

*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, October 13, 2006 12:15 PM
**To:** Filler, Diane E.
**Subject:** RE: Proposed Bargaining Dates for the last Four Weeks of Bargaining
**Importance:** High
**Sensitivity:** Confidential

FYI – I sent reminders, here are the framed issues confirmations and critical/category A issues/concerns.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Filler, Diane E.
**Sent:** Friday, October 06, 2006 12:28 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Proposed Bargaining Dates for the last Four Weeks of Bargaining
**Sensitivity:** Confidential

I spoke to Viv -- please go ahead and confirm w/ the team that they have the list and what to do with it. **Have the reveiw and prioirties back by next Friday, thanks**

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Friday, October 20, 2006 11:41 AM |
| **To:** | Michalic, Vivian B. |
| **Subject:** | RE: Announcement on negotiations |
| **Sensitivity:** | Confidential |

**Tracking:**

| Recipient | Delivery | Read |
|---|---|---|
| Michalic, Vivian B. | Delivered: 10/20/2006 11:41 AM | Read: 10/20/2006 11:57 AM |

Vivian,

Thank you, can I request that Ann Marie also attend?

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Michalic, Vivian B.
**Sent:** Friday, October 20, 2006 11:39 AM
**To:** Hawkins, Kevin J.
**Cc:** Filler, Diane E.; Ellison, William E.; Moore, Adrienne T.; Coleman, Betty
**Subject:** RE: Announcement on negotiations
**Sensitivity:** Confidential

Kevin,
We certainly can meet. I would like to have the opportunity to have everyone in the room to hear what the issues are from everyone and we can follow-up with a one on one after that. We can meet at 4:00 after our meeting with the Deputy on the contract negotiations.

Vivian

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, October 20, 2006 11:33 AM
**To:** Michalic, Vivian B.
**Cc:** Filler, Diane E.; Ellison, William E.; Moore, Adrienne T.
**Subject:** RE: Announcement on negotiations
**Importance:** High
**Sensitivity:** Confidential

I have followed the chain of command by discussing my concerns up the chain of command, thus, my request is to have a one on one with you.

Thank you,


*Kevin J. Hawkins*


10/31/2007

Senior Negotiator, ATF
Human Resources Division
Policy and Human Capital Planning Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

---

**From:** Ellison, William E.
**Sent:** Friday, October 20, 2006 11:26 AM
**To:** Hawkins, Kevin J.; Filler, Diane E.; Moore, Adrienne T.
**Cc:** Michalic, Vivian B.
**Subject:** FW: Announcement on negotiations
**Importance:** High
**Sensitivity:** Confidential

Adrienne and I will handle the matter.

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, October 20, 2006 11:16 AM
**To:** Michalic, Vivian B.
**Cc:** Filler, Diane E.; Ellison, William E.; Moore, Adrienne T.
**Subject:** RE: Announcement on negotiations
**Importance:** High
**Sensitivity:** Confidential

I hereby request a meeting in order to effectively carry out the duties I was hired to perform.

Kevin J. Hawkins
Senior Negotiator, ATF
Human Resources Division
Policy and Human Capital Planning Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

---

**From:** Ellison, William E.
**Sent:** Friday, October 20, 2006 10:36 AM
**To:** Hawkins, Kevin J.
**Cc:** Filler, Diane E.; Moore, Adrienne T.
**Subject:** RE: Announcement on negotiations
**Importance:** High
**Sensitivity:** Confidential

Kevin, I asked you what I took to be a simple question and your response was a non answer.  Perhaps if your communication were clearer we wouldn't need all this back and forth.

I want to remind you that what arrangements/protocol you may have outside of MELRB/Worklife chain of command is of no concern to me...you work for Adrienne and me and we are the ones you report to.

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, October 20, 2006 9:50 AM
**To:** Ellison, William E.
**Cc:** Filler, Diane E.; Moore, Adrienne T.

10/31/2007

**Subject:** RE: Announcement on negotiations
**Importance:** High
**Sensitivity:** Confidential

Bill,

Since I have been on board the protocol between Diane and I has been, her directive is emailed or voiced directly, then I respond/carryout the directive ASAP. If the protocol has changed no one informed me. I've received suggestions from Ann Marie, Adrienne, and you after I had already responded to Diane. In addition, I did cc the three of you.

I may not capture exactly what Diane wants all of the time; however, usually we resolve the issue expeditiously and alleviate numerous emails between four parties.

I have a 10:00 Telework Pilot negotiations meeting, contract negotiations preparation, and a meeting this evening with Vivian; corresponding over an over about the same subject will inevitable hinder these other assignments.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Ellison, William E.
**Sent:** Friday, October 20, 2006 9:31 AM
**To:** Hawkins, Kevin J.; Moore, Adrienne T.
**Subject:** RE: Announcement on negotiations
**Sensitivity:** Confidential

So I take it ,Kevin, that managers will tell union reps that MELRB respond and then the manager is supposed to report the contact to MER? Or should the manager not even say anything and just report the contact out to MELRB?

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, October 20, 2006 9:23 AM
**To:** Ellison, William E.
**Subject:** RE: Announcement on negotiations
**Sensitivity:** Confidential

All these suggested revisions came after I had already replied to Diane. I did cc everyone.

This is what I sent:

Title: ATF and NTEU Contract Negotiations

The Collective Bargaining Agreement (CBA) between the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and the National Treasury Employees Union (NTEU) expired on Thursday, July 20, 2006; however, the CBA remains in effect until we reach another agreement. The parties will begin bargaining on October 30, 2006, and until bargaining has concluded, out of respect for the two teams management/union matters shall not be discussed between managers and union officials. If you receive an email or call from a union official please inform the official that a member of MELRB will respond ASAP.

In my opinion, having MELRB respond instead of directing managers/union stewards to

10/31/2007

call MELRB is better customer service.

Kevin J. Hawkins
Senior Negotiator, ATF
Human Resources Division
Policy and Human Capital Planning Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

---

**From:** Ellison, William E.
**Sent:** Friday, October 20, 2006 8:12 AM
**To:** Hawkins, Kevin J.; Moore, Adrienne T.
**Subject:** FW: Announcement on negotiations
**Importance:** High

I saw two versions of this announcement. I take it that this is the one that  went
to Diane.  I added a title. If the intent of this broadcast is to a narrow
audience, managers, I don't think that Broadcast folks have a separate manager
list.


Discussions Between ATF Management and NTEU Union Officials


The Collective Bargaining Agreement (CBA) between the Bureau of Alcohol, Tobacco,
Firearms, and Explosives (ATF) and the National Treasury Employees Union (NTEU)
expired on Thursday, July 20, 2006.  Until the agency and NTEU are able to reach a
new agreement, we are requesting that there be no further discussions between ATF
management and NTEU union officials on union matters. Both ATF and NTEU will begin
bargaining on October 30, 2006, and will continue until all bargaining has
concluded.  If any ATF managers should receive an email or call from a union
official direct them to the Management/Employee and Labor Relations Branch at (202)
927-8640 for attention and reply.  Thank you in advance for your cooperation.

# Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Monday, October 23, 2006 1:55 PM |
| **To:** | Michalic, Vivian B. |
| **Subject:** | Follow-up to our Friday Meeting Regarding Issues/Problems |
| **Importance:** | High |
| **Sensitivity:** | Confidential |
| **Attachments:** | ASSIGNMENTS 092906.doc; Human Resources Proposed Organization Chart (3).doc |

**Tracking:** 

| Recipient | Delivery | Read |
|---|---|---|
| Michalic, Vivian B. | Delivered: 10/23/2006 1:55 PM | Read: 10/23/2006 4:13 PM |

Vivian,

Per your request, I've attached the Weekly Report. Also, over the weekend I thought about the issues/problems covering my five month ATF tenure and instead of rehashing bad memories that I would love to forget☺; I am providing a long term solution that I suggested in June.

Alleged Problems/Issues:

Communication – Too many Emails & Meetings on the same topic
Various Chain of Command Expectations – 1st Level vs. 2nd Level vs. 3rd Level vs. 4th Level
Various Protocol/Procedures Debates - Ditto
First & Only Senior Negotiator (Unique Position) – Does not fit in Policy or MELRB

Analysis:

Too Many Layers of Supervision (Organization Structure)
Different Meanings of the Chain of Command
Pressure from Various Supervisors Interferes with Advisory Ability & Places the Senior Negotiator in a Compromised Position
Placement of the Position interferes with the work product
1st & 2nd Level Supervisors has at best a minimal knowledge of the Senior Negotiator's responsibilities/duties

Solution:

Flatter Organization Structure (Org. Chart)
- Less chance for miscommunication
- Clear expectations
- Uninfluenced Negotiation/Union Advice

I have been asked," What do you need to accomplish your job?" Answer, an effective organization structure which will enable me to seek helpful assistance/guidance only when necessary from my 1st and 2nd level supervisor.

I have attached the proposed Org. Chart/Flatter Structure.

## Contract Negotiations:

Vivian, prior to meeting with the team or a conference call, may I suggest we meet so we will be on the same page.

Thank you,



**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | hannon [btbbiz@betterthanbouncing.com] |
| **Sent:** | Sunday, October 29, 2006 1:40 PM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | FW: Emailing: CRITICAL ELEMENTS AND PERFORMANCE STANDARDS HR SPECIALIST_Hawkins_06 |

**Attachments:**   CRITICAL ELEMENTS AND PERFORMANCE STANDARDS HR SPECIALIST_Hawkins_06.doc



CRITICAL
IENTS AND PERFOR

Hello Kevin:

Here is the draft I've prepared for your performance appraisal.  I have backup information which includes his accomplishments and copies of customer emails in hard copy.

Ann Marie


The message is ready to be sent with the following file or link attachments:

CRITICAL ELEMENTS AND PERFORMANCE STANDARDS HR SPECIALIST_Hawkins_06


Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments.  Check your e-mail security settings to determine how attachments are handled.

PERFORMANCE APPRAISAL FOR KEVIN HAWKINS
HUMAN RESOURCES SPECIALIST (LABOR RELATIONS) GS-201-13
POLICY AND HUMAN CAPITAL PLANNING BRANCH
HUMAN RESOURCES DIVISION

JUNE 1, 2005 – SEPTEMBER 30, 2006

**1. Customer Service. (10%)**

Outstanding:  In addition to the Fully Successful standard of providing clear, straightforward and acceptable technical advice and guidance in writing or in telephone conversations, Mr. Hawkins has provided independent, accurate and timely advice on the most complex and unprecedented labor relations issues with regard to e-Government, and the new regulatory requirements involving Compensatory Time Off for Travel, as well as the MOU for Flexiplace and how this is to be addressed vis a vis the recent Telework Agreement for Bargaining Unit Employees.

Mr. Hawkins' advice has reflected expert labor relations and negotiations knowledge and creativity to the extent that he has been able to apprise management fully on the issues surrounding the validity of the current collective bargaining agreement and the need to thoroughly revamp most if not all of the articles during the upcoming national negotiations.  In most instances, Mr. Hawkins was able to identify those issues considered as most volatile and/ or critical (e.g., Telework itineraries, and issues surrounding the move to the new building), and he whether he had anticipated the requests on issues at all times, it is safe to say that Mr. Hawkins did not waste time in attempting to diffuse dissention, and anticipate management's positions in regard to them, in order to initiate appropriate contact and achieve either permanent or temporary resolution.

He has resolved problems considered serious from the standpoint of equity and fairness so that management's objectives were met while the integrity of the labor relations program would still exist within an overall comporting with Federal or other requirements. Some examples of this include the issues related to building e-Performance performance work plans into the system for all employees, now that the Special Agent pilot for this has proved to be satisfactory; also the matter of whether the MOU on Flexiplace has standing in view of the recently implemented Telework Agreement for Bargaining Employees.  In addition, there have been a number of directives which required NTEU notification and Mr. Hawkins handled counterproposals on these efficiently and effectively.

**2. Workload Management. (10%)**

Outstanding:  Mr. Hawkins, of necessity, due to his location at ATF headquarters apart from the 3rd and G Street NW location of the Policy and Human Capital Planning Branch, has been found to independently manage negotiations/labor relations projects covering a diverse mix of human resource management functions, such as Telework, MOUs, Safety Equipment and Clothing for Industry Operations Investigators, official time authorization for NTEU Telework Pilot Stewards, notice to NTEU on IOI Self-Defense Training, and NTEU bank time requests.  As with many management initiatives that are found to affect policies and collective bargaining agreements, managerial/contractual impediments must be taken into consideration.

However, in an overall sense, Mr. Hawkins can be said to have frequently completed his work before mandated timeframes.  Also, he has received frequent positive feedback from customers on the efficiency of service and timeliness of his assistance and these were provided by Mr. Hawkins who has also provided regular written updates, on negotiations/labor relations projects, as required; without frequent need for a reminder.

### 3. Labor Relations Technical Support. (15%)

Outstanding:  I am able to attest as Mr. Hawkins' supervisor during this performance rating cycle, that Mr. Hawkins did provide, with occasional assistance, timely and accurate technical advice and guidance to management and less senior employees on a variety of labor relations issues. I can further attest that his written and oral advice for the most part was current and in accordance with applicable law, regulation and policy. The method of presentation was normally straightforward. Mr. Hawkins' oral advice was given by telephone, cell phone, and at conferences, and meetings.  His written advice was given via e-mail or other documents.

Mr. Hawkins obtained several emails to show positive feedback for his efforts to inquiries with entities inside and outside ATF which appear to have been handled, quickly, accurately and succinctly, and addressed in a timely matter.   Beyond this, and with regard to timely and accurate technical advice and guidance on the upcoming negotiations, Mr. Hawkins has offered, on a continuing basis, sound technical advice on complex, unique and sensitive situations, including the flexiplace MOU issue, the Telework Committee considerations, the new building nuances which came about unexpectedly; in addition to numerous inquiries from the headquarters field operations management staff as well as managers located directly in the field.

Although Mr. Hawkins may at times demonstrate a proclivity for not precisely identifying or stating specific law, rules, regulations or policy guidance which clearly assert management's rights for certain situations, he has worked diligently to offer negotiations as the topic of primary consideration to the union in correspondence and his telephone conversations, and thus has been found to have truly alleviated the potential for extraordinary use of ATF time, money and effort to resolve issues and disputes. Thus, Mr. Hawkins has been found to make a conscious effort to minimize confusion and understanding in his deliberations, and his written work demonstrates sufficient clarity to address the customer's intent. He has given several oral presentations to higher level management officials, including one presentation to the members (all Deputy Assistant Directors) of the ATF Human Capital Council, and was able to interact appropriately with these individuals and respond accurately and succinctly to their questions.

In providing information to inquiries, to my knowledge Mr. Hawkins has definitely been able to diffuse a potentially explosive situation, i.e., submitting of a grievance regarding the itinerary required in Telework, with little or no need for supervisory involvement, on the basis that national collective bargaining negotiations were imminent.  I have felt confident, as his supervisor, that he expresses his thoughts and the issues effectively.  Deputy Assistant Director Stucko echoed this sentiment in terms of Mr. Hawkins' delivery of service at the Human Capital Council meeting during which Mr. Hawkins made his presentation to update the Council member on the national negotiations.

### 4. Labor Relations Program Accountability. (15%)

Outstanding:  In addition to being fully knowledgeable of negotiations/labor relations goals and responsibilities, assuring that the assigned functions are carried out in line with the established goals and responsibilities; Mr. Hawkins has indicated he keeps abreast of potential changes in Labor Relations statute and Federal personnel regulations through membership in at least one professional labor relations organization, and through use of professional literature, Internet and other appropriate sources to anticipate potential impact on Bureau.

Independently, and on his own initiative, Ms. Hawkins has reviewed ATF draft directives which were provided for union notification, and has also reviewed other guidance such as the new building questions and answers, and Telework questions and answers to ensure these are consistent with the national labor agreement.  Moreover, due to exigencies of the current labor agreement which have

made compliance with policy issues more profound than normal than compliance with the labor agreement, he has been more than independently involved in recommending appropriate changes in the agreement to assure that policy adherence is reached, in addition to ensuring compliance with the agreement.

Through participation in HRD meetings, Mr. Hawkins has been further able to maintain an expert knowledge of Federal personnel regulations as these are found to relate to assigned negotiations and labor relations areas.

## 5. Negotiations. (50%)

<u>Outstanding</u>: Mr. Hawkins has independently identified complex situations which may generate a duty to bargain and/ or effected potential resolution through unprecedented efforts, e.g., where Telework is a new program function for the agency and in many respects still being tested, and he has provided documentation as attached which demonstrates that he has also provided expert advice and guidance to applicable parties on numerous occasions and numerous issues such as:

- The Telework Agreement for Bargaining Unit Employees,

- Notice to NTEU of a Compensatory Time Off for Travel Order,

- Counterproposals to NTEU on Safety Equipment and Clothing for Industry Operations Investigators,

- An Analysis of the Columbus Flexiplace/Telework issues, and

- Ground Rules for National ATF/NTEU Collective Bargaining Agreement Negotiations.

Mr. Hawkins has consistently been able to provide appropriate notice to the union of changes in working conditions; and determined through meetings and discussions whether impact and implementation bargaining is required. He has also independently determined through discussions with the Chief Counsel that interest based bargaining is not used for national collective bargaining negotiations; however, this would not necessarily preclude him from making such a recommendation or suggesting alternate dispute resolution processes are appropriate, depending on the situation at hand. Mr. Hawkins has consistently without supervision determined the negotiability of proposals during the negotiation process and made such recommendations to higher level management officials for their final determination. He has been designated as co-lead on the ATF management team in the upcoming national collective bargaining negotiations.

In consideration of Mr. Hawkins' demonstrated level of excellent performance I recommend that he be rated as <u>Outstanding.</u>

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Friday, November 03, 2006 2:26 PM |
| **To:** | Ellison, William E. |
| **Cc:** | Moore, Adrienne T. |
| **Subject:** | FW: Annual Leave and Sick Leave Plans for the remainder of the calendar year |

**Tracking:**

| Recipient | Delivery | Read |
|---|---|---|
| Ellison, William E. | Delivered: 11/3/2006 2:26 PM | Read: 11/3/2006 3:12 PM |
| Moore, Adrienne T. | Delivered: 11/3/2006 2:26 PM | |

My leave requests have already been approved.

**From:** Hannon, Ann Marie
**Sent:** Tuesday, October 03, 2006 4:49 PM
**To:** Clark, Daniel J.; Hawkins, Kevin J.; Paige, Dalores A.; Russo, Rosanne F.; Sankar, Donna T.
**Subject:** Leave Requests

Hello Staff:

This is an update that if you presented an email requesting leave through the remainder of the calendar year, **that leave has been approved.** You still need to submit leave requests through WebTA, but I wanted to let you know this much forthwith.

Ann Marie

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 28, 2006 1:45 PM
**To:** Hannon, Ann Marie
**Subject:** RE: Annual Leave and Sick Leave Plans for the remainder of the calendar year

10/06/06 – 2 Hours AL (Early Departure)
11/22-24/06 – 16 Hours (Out of town travel)
12/22-26/06 – 16 Hours (B'day/XMAS)
12/29/06 - 01/02/06 – 16 Hours (Out of town travel/New Years)

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Policy and Human Capital Planning Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

10/31/2007

**From:** Hannon, Ann Marie
**Sent:** Wednesday, September 27, 2006 1:10 PM
**To:** Clark, Daniel J.; Hawkins, Kevin J.; Russo, Rosanne F.; Paige, Dalores A.; Sankar, Donna T.
**Subject:** Annual Leave and Sick Leave Plans for the remainder of the calendar year
**Importance:** High

Hello Staff:

I want to let you know that Bill is requesting me and the other Branch Chiefs to have leave plans through the end of the year provided to him by Tuesday, Oct.3rd.

Leave plans will be the subject of Worklife branch chiefs meeting so I need to be prepared to discuss PHCPB plans at that time.

If I have not received a response from any specific staff member(s) **by cob Monday, Oct. 1st,** I plan to view that as indicating that staff person plans to be here until the end of the calendar year without taking any annual or pre-planned sick leave.

If you wish to discuss this further please let me know at your earliest convenience.

Thank you for your cooperation.

Ann Marie

# DEPARTMENT OF THE TREASURY
## BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
## COMPARISON (APPRAISAL) OF EMPLOYEE PERFORMANCE
*(Against Identified Job Elements and Performance Standards)*

**ORGANIZATIONAL ASSIGNMENT**
DOJ ATF OM HRD PHCPB

PAGE 1 OF 2

**EMPLOYEE'S NAME** (Last, first, middle initial)
Hawkins, Kevin

**SUPERVISOR'S NAME**
Hannon, Ann Marie

**APPRAISAL PERIOD**
FROM June 1, 2005    TO September 30, 2006

**POSITION** (Series/Grade, Title)
HR Specialist (Labor Relations), GS-0201-13

**EMPLOYEE'S SOCIAL SECURITY NUMBER**

**I.  JOB ELEMENTS** (Duties, Responsibilities and/or Objectives) AND
PERFORMANCE STANDARDS (Quantity, Quality, and Timeliness)

**II. ACTUAL PERFORMANCE**

**RATING (O, EFS, FS, LTFS, or U)**

1. Customer Service (c)
2. Workload Management (c)
3. Oral, Written and Presentation Skills (c)
4. Program Accountability (c)
5. Teamwork (c)

THESE STANDARDS REPRESENT AN ADDENDUM TO THE
PERFORMANCE WORK PLAN FOR THE PERIOD JUNE 1, 2005 TO
SEPTEMBER 30, 2006.

........( SEE ATTACHED)

No Standards
for EFS has to

DO "Outstanding"

**OVERALL RATING**

EFS

**EMPLOYEE CERTIFICATION OF RECEIPT AND UNDERSTANDING OF PERFORMANCE STANDARDS AND CRITICAL ELEMENTS**

I have received these performance standards and critical elements consisting of ___2___ pages this date.  My supervisor has communicated performance standards and critical elements to me
and I fully understand my supervisor's expectations in order for me to meet acceptable levels of performance.

Employee's Signature and Date _____

## PROGRESS REVIEW

Signatures and dates certify that the progress review has been conducted, and a copy of any documented comments have been provided to the employee.

**RATING OFFICIAL'S SIGNATURE AND DATE**

**EMPLOYEE'S SIGNATURE AND DATE**

**CERTIFICATION OF RECEIPT AND PERFORMANCE EVALUATION**

**SUPERVISOR'S SIGNATURE AND DATE**
10/30/06

**SECOND LEVEL SUPERVISOR'S SIGNATURE AND DATE**
10/31/06

**EMPLOYEE'S SIGNATURE AND DATE**
10/21/06

ATF F 2410.31 (9-97) (Formerly ATF F 2430.3, which is obsolete)Click here to select copy (on page 1)

*Can Write-up Given*

**PERFORMANCE APPRAISAL FOR KEVIN HAWKINS**
**HUMAN RESOURCES SPECIALIST (LABOR RELATIONS) GS-201-13**
**POLICY AND HUMAN CAPITAL PLANNING BRANCH**
**HUMAN RESOURCES DIVISION**

JUNE 1, 2005 – SEPTEMBER 30, 2006

### 1. Customer Service. (10%)

<u>Outstanding:</u>  In addition to the Fully Successful standard of providing clear, straightforward and acceptable technical advice and guidance in writing or in telephone conversations, Mr. Hawkins has provided independent, accurate and timely advice on the most complex and unprecedented labor relations issues with regard to e-Government, and the new regulatory requirements involving Compensatory Time Off for Travel, as well as the MOU for Flexiplace and how this is to be addressed vis a vis the recent Telework Agreement for Bargaining Unit Employees.

Mr. Hawkins' advice has reflected expert labor relations and negotiations knowledge and creativity to the extent that he has been able to apprise management fully on the issues surrounding the validity of the current collective bargaining agreement and the need to thoroughly revamp most if not all of the articles during the upcoming national negotiations.  In most instances, Mr. Hawkins was able to identify those issues considered as most volatile and/ or critical (e.g., Telework itineraries, and issues surrounding the move to the new building), and he whether he had anticipated the requests on issues at all times, it is safe to say that Mr. Hawkins did not waste time in attempting to diffuse dissention, and anticipate management's positions in regard to them, in order to initiate appropriate contact and achieve either permanent or temporary resolution.

He has resolved problems considered serious from the standpoint of equity and fairness so that management's objectives were met while the integrity of the labor relations program would still exist within an overall comporting with Federal or other requirements. Some examples of this include the issues related to building e-Performance performance work plans into the system for all employees, now that the Special Agent pilot for this has proved to be satisfactory; also the matter of whether the MOU on Flexiplace has standing in view of the recently implemented Telework Agreement for Bargaining Employees.  In addition, there have been a number of directives which required NTEU notification and Mr. Hawkins handled counterproposals on these efficiently and effectively.

### 2. Workload Management. (10%)

<u>Outstanding:</u>  Mr. Hawkins, of necessity, due to his location at ATF headquarters apart from the 3rd and G Street NW location of the Policy and Human Capital Planning Branch, has been found to independently manage negotiations/labor relations projects covering a diverse mix of human resource management functions, such as Telework, MOUs, Safety Equipment and Clothing for Industry Operations Investigators, official time authorization for NTEU Telework Pilot Stewards, notice to NTEU on IOI Self-Defense Training, and NTEU bank time requests.  As with many management initiatives that are found to affect policies and collective bargaining agreements, managerial/contractual impediments must be taken into consideration.

However, in an overall sense, Mr. Hawkins can be said to have frequently completed his work before mandated timeframes.  Also, he has received frequent positive feedback from customers on the efficiency of service and timeliness of his assistance and these were provided by Mr. Hawkins who has also provided regular written updates, on negotiations/labor relations projects, as required; without frequent need for a reminder.

CHANGED #1 Ekrent

↑

### 3. Labor Relations Technical Support. (15%)

Outstanding: Fully  I am able to attest as Mr. Hawkins' supervisor during this performance rating cycle, that Mr. Hawkins did provide, with occasional assistance, timely and accurate technical advice and guidance to management and less senior employees on a variety of labor relations issues. I can further attest that his written and oral advice for the most part was current and in accordance with applicable law, regulation and policy. The method of presentation was normally straightforward. Mr. Hawkins' oral advice was given by telephone, cell phone, and at conferences, and meetings. His written advice was given via e-mail or other documents.

Mr. Hawkins obtained several emails to show positive feedback for his efforts to inquiries with entities inside and outside ATF which appear to have been handled, quickly, accurately and succinctly, and addressed in a timely matter.   Beyond this, and with regard to timely and accurate technical advice and guidance on the upcoming negotiations, Mr. Hawkins has offered, on a continuing basis, sound technical advice on complex, unique and sensitive situations, including the flexiplace MOU issue, the Telework Committee considerations, the new building nuances which came about unexpectedly; in addition to numerous inquiries from the headquarters field operations management staff as well as managers located directly in the field.

Although Mr. Hawkins may at times demonstrate a proclivity for not precisely identifying or stating specific law, rules, regulations or policy guidance which clearly assert management's rights for certain situations, he has worked diligently to offer negotiations as the topic of primary consideration to the union in correspondence and his telephone conversations, and this has been found to have truly alleviated the potential for extraordinary use of ATF time, money and effort to resolve issues and disputes.  Thus, Mr. Hawkins has been found to make a conscious effort to minimize confusion and understanding in his deliberations, and his written work demonstrates sufficient clarity to address the customer's intent. He has given several oral presentations to higher level management officials, including one presentation to the members (all Deputy Assistant Directors) of the ATF Human Capital Council, and was able to interact appropriately with these individuals and respond accurately and succinctly to their questions.

In providing information to inquiries, to my knowledge Mr. Hawkins has definitely been able to diffuse a potentially explosive situation, i.e., submitting of a grievance regarding the itinerary required in Telework, with little or no need for supervisory involvement, on the basis that national collective bargaining negotiations were imminent.  I have felt confident, as his supervisor, that he expresses his thoughts and the issues effectively.  Deputy Assistant Director Stucko echoed this sentiment in terms of Mr. Hawkins' delivery of service at the Human Capital Council meeting during which Mr. Hawkins made his presentation to update the Council member on the national negotiations.

### 4. Labor Relations Program Accountability. (15%)

Outstanding:  In addition to being fully knowledgeable of negotiations/labor relations goals and responsibilities, assuring that the assigned functions are carried out in line with the established goals and responsibilities; Mr. Hawkins has indicated he keeps abreast of potential changes in Labor Relations statute and Federal personnel regulations through membership in at least one professional labor relations organization, and through use of professional literature, Internet and other appropriate sources to anticipate potential impact on Bureau.

Independently, and on his own initiative, Mr. Hawkins has reviewed ATF draft directives which were provided for union notification, and has also reviewed other guidance such as the new building questions and answers, and Telework questions and answers to ensure these are consistent with the national labor agreement.  Moreover, due to exigencies of the current labor agreement which have

made compliance with policy issues more profound than normal than compliance with the labor agreement, he has been more than independently involved in recommending appropriate changes in the agreement to assure that policy adherence is reached, in addition to ensuring compliance with the agreement.

Through participation in HRD meetings, Mr. Hawkins has been further able to maintain an expert knowledge of Federal personnel regulations as these are found to relate to assigned negotiations and labor relations areas.

## 5. Negotiations. (50%)

<u>Outstanding</u>:  Mr. Hawkins has independently identified complex situations which may generate a duty to bargain and/ or effected potential resolution through unprecedented efforts, e.g., where Telework is a new program function for the agency and in many respects still being tested, and he has provided documentation as attached which demonstrates that he has also provided expert advice and guidance to applicable parties on numerous occasions and numerous issues such as:

- The Telework Agreement for Bargaining Unit Employees,

- Notice to NTEU of a Compensatory Time Off for Travel Order,

- Counterproposals to NTEU on Safety Equipment and Clothing for Industry Operations Investigators,

- An Analysis of the Columbus Flexiplace/Telework issues, and

- Ground Rules for National ATF/NTEU Collective Bargaining Agreement Negotiations.

Mr. Hawkins has consistently been able to provide appropriate notice to the union of changes in working conditions; and determined through meetings and discussions whether impact and implementation bargaining is required. He has also independently determined through discussions with the Chief Counsel that interest based bargaining is not used for national collective bargaining negotiations; however, this would not necessarily preclude him from making such a recommendation or suggesting alternate dispute resolution processes are appropriate, depending on the situation at hand. Mr. Hawkins has consistently without supervision determined the negotiability of proposals during the negotiation process and made such recommendations to higher level management officials for their final determination. He has been designated as co-lead on the ATF management team in the upcoming national collective bargaining negotiations.

In consideration of Mr. Hawkins' rating is Outstanding based on his demonstrated and substantiated performance.

3rd /final Write-up Joiner

PERFORMANCE APPRAISAL FOR KEVIN HAWKINS
HUMAN RESOURCES SPECIALIST (LABOR RELATIONS) GS-201-13
POLICY AND HUMAN CAPITAL PLANNING BRANCH
HUMAN RESOURCES DIVISION

JUNE 1, 2005 – SEPTEMBER 30, 2006

### 1. Customer Service. (10%)

Outstanding:  In addition to the Fully Successful standard of providing clear, straightforward and acceptable technical advice and guidance in writing or in telephone conversations, Mr. Hawkins has provided independent, accurate and timely advice on the most complex and unprecedented labor relations issues with regard to e-Government, and the new regulatory requirements involving Compensatory Time Off for Travel, as well as the MOU for Flexiplace and how this is to be addressed vis a vis the recent Telework Agreement for Bargaining Unit Employees.

Mr. Hawkins' advice has reflected expert labor relations and negotiations knowledge and creativity to the extent that he has been able to apprise management fully on the issues surrounding the validity of the current collective bargaining agreement and the need to thoroughly revamp most if not all of the articles during the upcoming national negotiations.  In most instances, Mr. Hawkins was able to identify those issues considered as most volatile and/ or critical (e.g., Telework itineraries, and issues surrounding the move to the new building), and he whether he had anticipated the requests on issues at all times, it is safe to say that Mr. Hawkins did not waste time in attempting to diffuse dissention, and anticipate management's positions in regard to them, in order to initiate appropriate contact and achieve either permanent or temporary resolution.

He has resolved problems considered serious from the standpoint of equity and fairness so that management's objectives were met while the integrity of the labor relations program would still exist within an overall comporting with Federal or other requirements. Some examples of this include the issues related to building e-Performance performance work plans into the system for all employees, now that the Special Agent pilot for this has proved to be satisfactory; also the matter of whether the MOU on Flexiplace has standing in view of the recently implemented Telework Agreement for Bargaining Employees.  In addition, there have been a number of directives which required NTEU notification and Mr. Hawkins handled counterproposals on these efficiently and effectively.

### 2. Workload Management. (10%)

Outstanding:  Mr. Hawkins, of necessity, due to his location at ATF headquarters apart from the 3rd and G Street NW location of the Policy and Human Capital Planning Branch, has been found to independently manage negotiations/labor relations projects covering a diverse mix of human resource management functions, such as Telework, MOUs, Safety Equipment and Clothing for Industry Operations Investigators, official time authorization for NTEU Telework Pilot Stewards, notice to NTEU on IOI Self-Defense Training, and NTEU bank time requests.  As with many management initiatives that are found to affect policies and collective bargaining agreements, managerial/contractual impediments must be taken into consideration.

However, in an overall sense, Mr. Hawkins can be said to have frequently completed his work before mandated timeframes.  Also, he has received frequent positive feedback from customers on the efficiency of service and timeliness of his assistance and these were provided by Mr. Hawkins who has also provided regular written updates, on negotiations/labor relations projects, as required; without frequent need for a reminder.

### 3. Labor Relations Technical Support. (15%)

Fully Successful: I am able to attest as Mr. Hawkins' supervisor during this performance rating cycle, that Mr. Hawkins did provide, with occasional assistance, timely and accurate technical advice and guidance to management and less senior employees on a variety of labor relations issues. I can further attest that his written and oral advice for the most part was current and in accordance with applicable law, regulation and policy. The method of presentation was normally straightforward. Mr. Hawkins' oral advice was given by telephone, cell phone, and at conferences, and meetings. His written advice was given via e-mail or other documents.

Mr. Hawkins obtained several emails to show positive feedback for his efforts to inquiries with entities inside and outside ATF which appear to have been handled, quickly, accurately and succinctly, and addressed in a timely matter. Beyond this, and with regard to timely and accurate technical advice and guidance on the upcoming negotiations, Mr. Hawkins has offered, on a continuing basis, sound technical advice on complex, unique and sensitive situations, including the flexiplace MOU issue, the Telework Committee considerations, the new building nuances which came about unexpectedly; in addition to numerous inquiries from the headquarters field operations management staff as well as managers located directly in the field.

Although Mr. Hawkins may at times demonstrate a proclivity for not precisely identifying or stating specific law, rules, regulations or policy guidance which clearly assert management's rights for certain situations, he has worked diligently to offer negotiations as the topic of primary consideration to the union in correspondence and his telephone conversations, and thus has been found to have truly alleviated the potential for extraordinary use of ATF time, money and effort to resolve issues and disputes. Thus, Mr. Hawkins has been found to make a conscious effort to minimize confusion and misunderstanding in his deliberations, and his written work demonstrates sufficient clarity to address the customer's intent. He has given several oral presentations to higher level management officials, including one presentation to the members (all Deputy Assistant Directors) of the ATF Human Capital Council, and was able to interact appropriately with these individuals and respond accurately and succinctly to their questions.

In providing information to inquiries, to my knowledge Mr. Hawkins has definitely been able to diffuse a potentially explosive situation, i.e., submitting of a grievance regarding the itinerary required in Telework, with little or no need for supervisory involvement, on the basis that national collective bargaining negotiations were imminent. I have felt confident, as his supervisor, that he expresses his thoughts and the issues effectively. Deputy Assistant Director Stucko echoed this sentiment in terms of Mr. Hawkins' delivery of service at the Human Capital Council meeting during which Mr. Hawkins made his presentation to update the Council member on the national negotiations.

### 4. Labor Relations Program Accountability. (15%)

Fully Successful : Mr. Hawkins is knowledgeable negotiations/labor relations goals and responsibilities, assuring that the assigned functions are carried out in line with the established goals and responsibilities; Mr. Hawkins has indicated he keeps abreast of potential changes in Labor Relations statute and Federal personnel regulations through membership in at least one professional labor relations organization, and through use of professional literature, Internet and other appropriate sources to anticipate potential impact on Bureau.

Independently, and on his own initiative, Ms. Hawkins has reviewed ATF draft directives to provide this for union notification whereby the union will determine if they have comments or not within the period of time specified in the notice. Mr. Hawkins reviewed other guidance such as the new building questions and answers, and Telework questions and answers to ensure these are consistent

with the national labor agreement; however, in the case of the new building questions there was a presumption about these which a further review by myself as Branch chief did not substantiate and this is documented. Moreover, due to exigencies of the current labor agreement which have made compliance with policy issues more profound than normal, Mr. Hawkins needs to be more than even aware that recommending appropriate changes in the agreement must assure that policy adherence is reached, in addition to ensuring compliance with the agreement.

Through participation in HRD meetings, Mr. Hawkins has been further able to maintain an expert knowledge of Federal personnel regulations as these are found to relate to assigned negotiations and labor relations areas.

## 5. Negotiations. (50%)

<u>Outstanding</u>: Mr. Hawkins has independently identified complex situations which may generate a duty to bargain and/ or effected potential resolution through unprecedented efforts, e.g., where Telework is a new program function for the agency and in many respects still being tested, and he has provided documentation as attached which demonstrates that he has also provided expert advice and guidance to applicable parties on numerous occasions and numerous issues such as:

- The Telework Agreement for Bargaining Unit Employees,

- Notice to NTEU of a Compensatory Time Off for Travel Order,

- Counterproposals to NTEU on Safety Equipment and Clothing for Industry Operations Investigators,

- An Analysis of the Columbus Flexiplace/Telework issues, and

- Ground Rules for National ATF/NTEU Collective Bargaining Agreement Negotiations.

Mr. Hawkins has consistently been able to provide appropriate notice to the union of changes in working conditions; and determined through meetings and discussions whether impact and implementation bargaining is required. He has also independently determined through discussions with the Chief Counsel that interest based bargaining is not used for national collective bargaining negotiations; however, this would not necessarily preclude him from making such a recommendation or suggesting alternate dispute resolution processes are appropriate, depending on the situation at hand. Mr. Hawkins has consistently without supervision determined the negotiability of proposals during the negotiation process and made such recommendations to higher level management officials for their final determination. He has been designated as co-lead on the ATF management team in the upcoming national collective bargaining negotiations.

**Overall assessment**: Mr. Hawkins' rating is Exceeds Fully Successful based on his demonstrated and substantiated performance.

*3rd Critical Write-up Silver* (handwritten)

PERFORMANCE APPRAISAL FOR KEVIN HAWKINS
HUMAN RESOURCES SPECIALIST (LABOR RELATIONS) GS-201-13
POLICY AND HUMAN CAPITAL PLANNING BRANCH
HUMAN RESOURCES DIVISION

JUNE 1, 2005 – SEPTEMBER 30, 2006

## 1. Customer Service. (10%)

Outstanding:  In addition to the Fully Successful standard of providing clear, straightforward and acceptable technical advice and guidance in writing or in telephone conversations, Mr. Hawkins has provided independent, accurate and timely advice on the most complex and unprecedented labor relations issues with regard to e-Government, and the new regulatory requirements involving Compensatory Time Off for Travel, as well as the MOU for Flexiplace and how this is to be addressed vis a vis the recent Telework Agreement for Bargaining Unit Employees.

Mr. Hawkins' advice has reflected expert labor relations and negotiations knowledge and creativity to the extent that he has been able to apprise management fully on the issues surrounding the validity of the current collective bargaining agreement and the need to thoroughly revamp most if not all of the articles during the upcoming national negotiations.  In most instances, Mr. Hawkins was able to identify those issues considered as most volatile and/ or critical (e.g., Telework itineraries, and issues surrounding the move to the new building), and he whether he had anticipated the requests on issues at all times, it is safe to say that Mr. Hawkins did not waste time in attempting to diffuse dissention, and anticipate management's positions in regard to them, in order to initiate appropriate contact and achieve either permanent or temporary resolution.

He has resolved problems considered serious from the standpoint of equity and fairness so that management's objectives were met while the integrity of the labor relations program would still exist within an overall comporting with Federal or other requirements. Some examples of this include the issues related to building e-Performance performance work plans into the system for all employees, now that the Special Agent pilot for this has proved to be satisfactory; also the matter of whether the MOU on Flexiplace has standing in view of the recently implemented Telework Agreement for Bargaining Employees.  In addition, there have been a number of directives which required NTEU notification and Mr. Hawkins handled counterproposals on these efficiently and effectively.

## 2. Workload Management. (10%)

Outstanding:  Mr. Hawkins, of necessity, due to his location at ATF headquarters apart from the 3rd and G Street NW location of the Policy and Human Capital Planning Branch, has been found to independently manage negotiations/labor relations projects covering a diverse mix of human resource management functions, such as Telework, MOUs, Safety Equipment and Clothing for Industry Operations Investigators, official time authorization for NTEU Telework Pilot Stewards, notice to NTEU on IOI Self-Defense Training, and NTEU bank time requests.  As with many management initiatives that are found to affect policies and collective bargaining agreements, managerial/contractual impediments must be taken into consideration.

However, in an overall sense, Mr. Hawkins can be said to have frequently completed his work before mandated timeframes.  Also, he has received frequent positive feedback from customers on the efficiency of service and timeliness of his assistance and these were provided by Mr. Hawkins who has also provided regular written updates, on negotiations/labor relations projects, as required; without frequent need for a reminder.

## 3. Labor Relations Technical Support. (15%)

<u>Fully Successful:</u> I am able to attest as Mr. Hawkins' supervisor during this performance rating cycle, that Mr. Hawkins did provide, with occasional assistance, timely and accurate technical advice and guidance to management and less senior employees on a variety of labor relations issues. I can further attest that his written and oral advice for the most part was current and in accordance with applicable law, regulation and policy. The method of presentation was normally straightforward. Mr. Hawkins' oral advice was given by telephone, cell phone, and at conferences, and meetings. His written advice was given via e-mail or other documents.

Mr. Hawkins obtained several emails to show positive feedback for his efforts to inquiries with entities inside and outside ATF which appear to have been handled, quickly, accurately and succinctly, and addressed in a timely matter. Beyond this, and with regard to timely and accurate technical advice and guidance on the upcoming negotiations, Mr. Hawkins has offered, on a continuing basis, sound technical advice on complex, unique and sensitive situations, including the flexiplace MOU issue, the Telework Committee considerations, the new building nuances which came about unexpectedly; in addition to numerous inquiries from the headquarters field operations management staff as well as managers located directly in the field.

Although Mr. Hawkins may at times demonstrate a proclivity for not precisely identifying or stating specific law, rules, regulations or policy guidance which clearly assert management's rights for certain situations, he has worked diligently to offer negotiations as the topic of primary consideration to the union in correspondence and his telephone conversations, and thus has been found to have truly alleviated the potential for extraordinary use of ATF time, money and effort to resolve issues and disputes. Thus, Mr. Hawkins has been found to make a conscious effort to minimize confusion and understanding in his deliberations, and his written work demonstrates sufficient clarity to address the customer's intent. He has given several oral presentations to higher level management officials, including one presentation to the members (all Deputy Assistant Directors) of the ATF Human Capital Council, and was able to interact appropriately with these individuals and respond accurately and succinctly to their questions.

In providing information to inquiries, to my knowledge Mr. Hawkins has definitely been able to diffuse a potentially explosive situation, i.e., submitting of a grievance regarding the itinerary required in Telework, with little or no need for supervisory involvement, on the basis that national collective bargaining negotiations were imminent. I have felt confident, as his supervisor, that he expresses his thoughts and the issues effectively. Deputy Assistant Director Stucko echoed this sentiment in terms of Mr. Hawkins' delivery of service at the Human Capital Council meeting during which Mr. Hawkins made his presentation to update the Council member on the national negotiations.

## 4. Labor Relations Program Accountability. (15%)

<u>Fully Successful:</u> Mr. Hawkins is knowledgeable negotiations/labor relations goals and responsibilities, assuring that the assigned functions are carried out in line with the established goals and responsibilities; Mr. Hawkins has indicated he keeps abreast of potential changes in Labor Relations statute and Federal personnel regulations through membership in at least one professional labor relations organization, and through use of professional literature, Internet and other appropriate sources to anticipate potential impact on Bureau.

Independently, and on his own initiative, Ms. Hawkins has reviewed ATF draft directives to provide this for union notification whereby the union will determine if they have comments or not within the period of time specified in the notice. Mr. Hawkins reviewed other guidance such as the new building questions and answers, and Telework questions and answers to ensure these are consistent

with the national labor agreement; however, in the case of the new building questions there was a presumption about these which a further review by myself as Branch chief did not substantiate and this is documented. Moreover, due to exigencies of the current labor agreement which have made compliance with policy issues more profound than normal, Mr. Hawkins needs to be more than even aware that recommending appropriate changes in the agreement must assure that policy adherence is reached, in addition to ensuring compliance with the agreement.

Through participation in HRD meetings, Mr. Hawkins has been further able to maintain an expert knowledge of Federal personnel regulations as these are found to relate to assigned negotiations and labor relations areas.

## 5. Negotiations. (50%)

<u>Outstanding:</u> Mr. Hawkins has independently identified complex situations which may generate a duty to bargain and/ or effected potential resolution through unprecedented efforts, e.g., where Telework is a new program function for the agency and in many respects still being tested, and he has provided documentation as attached which demonstrates that he has also provided expert advice and guidance to applicable parties on numerous occasions and numerous issues such as:

- The Telework Agreement for Bargaining Unit Employees,

- Notice to NTEU of a Compensatory Time Off for Travel Order,

- Counterproposals to NTEU on Safety Equipment and Clothing for Industry Operations Investigators,

- An Analysis of the Columbus Flexiplace/Telework issues, and

- Ground Rules for National ATF/NTEU Collective Bargaining Agreement Negotiations.

Mr. Hawkins has consistently been able to provide appropriate notice to the union of changes in working conditions; and determined through meetings and discussions whether impact and implementation bargaining is required. He has also independently determined through discussions with the Chief Counsel that interest based bargaining is not used for national collective bargaining negotiations; however, this would not necessarily preclude him from making such a recommendation or suggesting alternate dispute resolution processes are appropriate, depending on the situation at hand. Mr. Hawkins has consistently without supervision determined the negotiability of proposals during the negotiation process and made such recommendations to higher level management officials for their final determination. He has been designated as co-lead on the ATF management team in the upcoming national collective bargaining negotiations.

**Overall assessment:** Mr. Hawkins' rating is Exceeds Fully Successful based on his demonstrated and substantiated performance.

PERFORMANCE APPRAISAL FOR KEVIN HAWKINS
HUMAN RESOURCES SPECIALIST (LABOR RELATIONS) GS-201-13
POLICY AND HUMAN CAPITAL PLANNING BRANCH
HUMAN RESOURCES DIVISION

JUNE 1, 2005 – SEPTEMBER 30, 2006

**1. Customer Service. (10%)**

<u>Outstanding:</u> In addition to the Fully Successful standard of providing clear, straightforward and acceptable technical advice and guidance in writing or in telephone conversations, Mr. Hawkins has provided independent, accurate and timely advice on the most complex and unprecedented labor relations issues with regard to e-Government, and the new regulatory requirements involving Compensatory Time Off for Travel, as well as the MOU on Flexiplace and how this is to be addressed vis a vis the recent Telework Agreement for Bargaining Unit Employees.

Mr. Hawkins' advice has reflected expert labor relations and negotiations knowledge and creativity to the extent that he has been able to apprise management fully on the issues surrounding the validity of the current collective bargaining agreement and the need to thoroughly revamp most if not all of the articles during the upcoming national negotiations. In most instances, Mr. Hawkins was able to identify those issues considered as most volatile and/ or critical (e.g., Telework itineraries, and issues surrounding the move to the new building), and he whether he had anticipated the requests on issues at all times, it is safe to say that Mr. Hawkins did not waste time in attempting to diffuse dissention, and anticipate management's positions in regard to them, in order to initiate appropriate contact and achieve either permanent or temporary resolution.

He has resolved problems considered serious from the standpoint of equity and fairness so that management's objectives were met while the integrity of the labor relations program would still exist within an overall comporting with Federal or other requirements. Some examples of this include the issues related to building e-Performance performance work plans into the system for all employees, now that the Special Agent pilot for this has proved to be satisfactory; also the matter of whether the MOU on Flexiplace has standing in view of the recently implemented Telework Agreement for Bargaining Employees. In addition, there have been a number of directives which required NTEU notification and Mr. Hawkins handled counterproposals on these efficiently and effectively.

**2. Workload Management. (10%)**

<u>Outstanding:</u> Mr. Hawkins, of necessity, due to his location at ATF headquarters apart from the 3rd and G Street NW location of the Policy and Human Capital Planning Branch, has been found to independently manage negotiations/labor relations projects covering a diverse mix of human resource management functions, such as Telework, MOUs, Safety Equipment and Clothing for Industry Operations Investigators, official time authorization for NTEU Telework Pilot Stewards, notice to NTEU on IOI Self-Defense Training, and NTEU bank time requests. As with many management initiatives that are found to affect policies and collective bargaining agreements, managerial/contractual impediments must be taken into consideration.

However, in an overall sense, Mr. Hawkins can be said to have frequently completed his work before mandated timeframes. Also, he has received frequent positive feedback from customers on the efficiency of service and timeliness of his assistance and these were provided by Mr. Hawkins who has also provided regular written updates, on negotiations/labor relations projects, as required, without frequent need for a reminder.

**Comment [A1]:** My first line and second line supervisor falsified the appraisal dates; my plan was not finalized and received by me until September 30, 2006.

**Comment [A2]:** Never told of any negative instances

**Comment [A3]:** My location had no bearing; the lack of knowledge of my position and duties by my first & second line supervisor gave me no choice but to perform independently.

**Comment [A4]:** Never missed any timeframes nor did my first or second line director any assignments or timeframes.

### 3. Labor Relations Technical Support. (15%)

Outstanding (Changed to Fully Successful by my second-line supervisor who did not assign me any work or directed an initial change without a write-up/justification, in-fact ignoring my suggestion that an Exceeds Fully Successful (EFS) Guideline should be in writing in order for me to have a benchmark to obtain an EFS.  Also, the second-line supervisor later changed or directed my first-line supervisor to change another element to FS after he realized one element change would still render an overall Outstanding rating.   The changes to my rating was retaliatory based on previous harassment and work environment complaints and disagreements with my first-line supervisor and a program analyst on the policy staff.  My third and fourth line manager allowed these acts because of my complaints, race and in order to eliminate me receiving a performance award):  I am able to attest as Mr. Hawkins' supervisor during this performance rating cycle, that Mr. Hawkins did provide, with occasional assistance, timely and accurate technical advice and guidance to management and less senior employees on a variety of labor relations issues. I can further attest that his written and oral advice for the most part was current and in accordance with applicable law, regulation and policy. The method of presentation was normally straightforward. Mr. Hawkins' oral advice was given by telephone, cell phone, and at conferences, and meetings.  His written advice was given via e-mail or other documents.

Mr. Hawkins obtained several emails to show positive feedback for his efforts to inquiries with entities inside and outside ATF which appear to have been handled, quickly, accurately and succinctly, and addressed in a timely matter.  Beyond this, and with regard to timely and accurate technical advice and guidance on the upcoming negotiations, Mr. Hawkins has offered, on a continuing basis, sound technical advice on complex, unique and sensitive situations, including the flexiplace MOU issue, the Telework Committee considerations, the new building nuances which came about unexpectedly, in addition to numerous inquiries from the headquarters field operations management staff as well as managers located directly in the field.

Although Mr. Hawkins may at times demonstrate a proclivity for not precisely identifying or stating specific law, rules, regulations or policy guidance which clearly assert management's rights for certain situations, he has worked diligently to offer negotiations as the topic of primary consideration to the union in correspondence and his telephone conversations, and thus has been found to have truly alleviated the potential for extraordinary use of ATF time, money and effort to resolve issues and disputes. Thus, Mr. Hawkins has been found to make a conscious effort to minimize confusion and understanding in his deliberations, and his written work demonstrates sufficient clarity to address the customer's intent. He has given several oral presentations to higher level management officials, including one presentation to the members (all Deputy Assistant Directors) of the ATF Human Capital Council, and was able to interact appropriately with these individuals and respond accurately and succinctly to their questions.

In providing information to inquiries, to my knowledge Mr. Hawkins has definitely been able to diffuse a potentially explosive situation, i.e., submitting of a grievance regarding the itinerary required in Telework, with little or no need for supervisory involvement, on the basis that national collective bargaining negotiations were imminent.  I have felt confident, as his supervisor, that he expresses his thoughts and the issues effectively.  Deputy Assistant Director Stucko echoed this sentiment in terms of Mr. Hawkins' delivery of service at the Human Capital Council meeting during which Mr. Hawkins made his presentation to update the Council member on the national negotiations.

### 4. Labor Relations Program Accountability. (15%)

Outstanding: (Changed to Fully Successful by my second-line supervisor who did not assign me any work or directed an initial change without a write-up/justification, in-fact ignoring my suggestion

**Comment [A5]:** Never received any assistance from my first or second line supervisor.

**Comment [A6]:** Never received any complaints

**Comment [A7]:** The new building nuances did not come about unexpectedly, my first and second line supervisor did not know that NTEU was entitled to a notice in floorplans.

**Comment [A8]:** This comment shows a lack of understanding of my position and duties.

that an Exceeds Fully Successful (EFS) Guideline should be in writing in order for me to have a benchmark to obtain an EFS. Also, the second-line supervisor later changed or directed my first-line supervisor to change another element to FS after he realized one element change would still render an overall Outstanding rating. The changes to my rating was retaliatory based on previous harassment and work environment complaints and disagreements with my first-line supervisor and a program analyst on the policy staff. My third and fourth line manager allowed these acts because of my complaints, race and in order to eliminate me receiving a performance award). In addition to being fully knowledgeable of negotiations/labor relations goals and responsibilities, assuring that the assigned functions are carried out in line with the established goals and responsibilities; Mr. Hawkins has indicated he keeps abreast of potential changes in Labor Relations statute and Federal personnel regulations through membership in at least one professional labor relations organization, and through use of professional literature, Internet and other appropriate sources to anticipate potential impact on Bureau.

> **Comment [A9]:** Removed, why?
>
> **Comment [A10]:**

Independently, and on his own initiative, Ms. Hawkins has reviewed ATF draft directives which were provided for union notification, and has also reviewed other guidance such as the new building questions and answers, and Telework questions and answers to ensure these are consistent with the national labor agreement. Moreover, due to exigencies of the current labor agreement which have made compliance with policy issues more profound than normal than compliance with the labor agreement, he has been more than independently involved in recommending appropriate changes in the agreement to assure that policy adherence is reached, in addition to ensuring compliance with the agreement.

> **Comment [A11]:** Write up removed, inserted unclear, unfactual, retaliatory language, reviewing New Bldg Q&As are not program accountability.
>
> **Comment [A12]:** "However, in case of the new building questions there was a presumption about these which a further review by myself as Branch Chief did not substantiate and this is documented." is not an accurate/factual statement and is inappropriate as a justification, this language is a punitive/retaliatory justification as a result the Branch Chief not understanding common labor advocacy terms. Moreover due to exigencies of the current labor agreement which have made compliance with policy issues more profound than normal, Mr. Hawkins needs to be more than even aware that recommending appropriate changes in the agreement must assure that policy adherence is reached, in addition to ensuring compliance with the agreement, this statement demonstrates Mr. Elliott & Ms. Hanlon's resentment towards me because my difference of opinion regarding the contract/bargaining in its relation to policy within ATF. (Strictly retaliatory)

Through participation in HRD meetings, Mr. Hawkins has been further able to maintain an expert knowledge of Federal personnel regulations as these are found to relate to assigned negotiations and labor relations areas.

## 5. Negotiations. (50%)

Outstanding: Mr. Hawkins has independently identified complex situations which may generate a duty to bargain and/ or effected potential resolution through unprecedented efforts, e.g., where Telework is a new program function for the agency and in many respects still being tested, and he has provided documentation as attached which demonstrates that he has also provided expert advice and guidance to applicable parties on numerous occasions and numerous issues such as:

- The Telework Agreement for Bargaining Unit Employees,

- Notice to NTEU of a Compensatory Time Off for Travel Order,

- Counterproposals to NTEU on Safety Equipment and Clothing for Industry Operations Investigators,

- An Analysis of the Columbus Flexiplace/Telework issues, and

- Ground Rules for National ATF/NTEU Collective Bargaining Agreement Negotiations.

Mr. Hawkins has consistently been able to provide appropriate notice to the union of changes in working conditions; and determined through meetings and discussions whether impact and implementation bargaining is required. He has also independently determined through discussions with the Chief Counsel that interest based bargaining is not used for national collective bargaining

negotiations; however, this would not necessarily preclude him from making such a recommendation or suggesting alternate dispute resolution processes are appropriate, depending on the situation at hand. Mr. Hawkins has consistently without supervision determined the negotiability of proposals during the negotiation process and made such recommendations to higher level management officials for their final determination. He has been designated as co-lead on the ATF management team in the upcoming national collective bargaining negotiations.

**In consideration of Mr. Hawkins' demonstrated level of excellent performance I recommend that he be rated as Outstanding.** (The first edit per Bill's directive had Element #3 as a FS without any modification to the justification, the overall rating remained "Outstanding". Ms. Hannon told me that Diane was reviewing all ratings prior to finalization and she concurred with Bill's changes, thus, the discrimination and retaliation was endorsed by Diane in order to ensure I wouldn't receive an "Outstanding" cash award – Abuse of Authority/Retaliatory/Discriminary. In conclusion, the three Outstanding element ratings makes it impossible to receive a Fully Successful in LR Tech. Support and Program Accountability because all elements has a major impact on the two in question )

Events:

1) EOD Date:  05/15/06

2) Draft PWP:  05/30/06 - 2nd line Supervisor (Bill Ellison) emailed Donna Sankar's suggested PWP (1ST line supervisor's responsibility)

3) Initial PWP Comments:  05/30/06 – No criteria for EFS

4) Edited PWP:  06/14/06 – Ellison made edits and directed Ms. Hannon to review and forward to me.

5) Directed PWP Response:  07/07/06 – Ms. Hannon directs me to work with her to review the PWP

6) Directive Response:  07/10/07 – Delayed response due to a death in my family.

7) PWP Directive Completed:  07/20/06

8) Initial Email Complaint Date:  07/24/06

9) Accused of Implied Insubordination:    07/31/06 – Weekly Report & Database conflicts in directives.

10) Inquired on Directive Intent:  08/01/06

11) Initial Complaint in a Meeting:  08/01/06

12) 3rd Line Supervisor Acknowledging Complaint:  08/02/06

13) 2nd Complaint Notice: **08/02/06** – PWP, Incorrect leave balances, Comp. Time Issues, and Work Environment. **(Initial Retaliatory Basis)**

**14) Excessive Interference and Disparate Treatment: 08/02/06 by the third-line supervisor (Diane Filler)**

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Thursday, December 21, 2006 12:04 PM |
| **To:** | Filler, Diane E. |
| **Cc:** | Michalic, Vivian B.; Stinnett, Melanie S. |
| **Subject:** | RE: Draft Response to OIG Close Out Reports |
| **Sensitivity:** | Confidential |

| Tracking: | Recipient | Delivery | Read |
|---|---|---|---|
| | Filler, Diane E. | Delivered: 12/21/2006 12:04 PM | |
| | Michalic, Vivian B. | Delivered: 12/21/2006 12:04 PM | Read: 12/21/2006 3:51 PM |
| | Stinnett, Melanie S. | Delivered: 12/21/2006 12:04 PM | Read: 12/21/2006 12:28 PM |

Diane,

On Thursday, December 14, 2006, I left an envelope in Lorraine's chair with your name on it.

As far as unfair standards, the way the standards were applied by Bill was unfair. However, that is not the only unfair standard I am referring to; I am referring to the higher standard I am held to versus every other employee (Including managers).

In response to the other issues, I've sent emails, met with Ann Marie, Bill, you, and Vivian, however, management refuses to address the issues, this is why the situation has come to this point.

I start vacation after today and I prefer to meet when I return. Management has already affected my thanksgiving and I would like to enjoy my Birthday, Xmas, and New Years without anymore headaches, upset stomach complications, heartache, etc.

In conclusion, Ann Marie Hannon, my first line supervisor, at the minimum gave me a written statement indicating she would rate me an "Outstanding" based on my accomplishments. After I voiced my issues/concerns with Vivian, Bill Ellison, my second line supervisor, with your concurrence had Ms. Hannon change one element to "Fully Successful" without changing the written justification for the element in question. Then, Mr. Ellison realized that I would still receive an "Outstanding" overall rating, therefore, he had Ms. Hannon change another element to "Fully Successful" in order to make my overall rating an "Exceeds Fully Successful." Either way an "Outstanding or Exceeds Fully Successful" employee should not be treated like this!

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Filler, Diane E.
**Sent:** Thursday, December 21, 2006 11:16 AM
**To:** Hawkins, Kevin J.; Stinnett, Melanie S.
**Cc:** Michalic, Vivian B.
**Subject:** RE: Draft Response to OIG Close Out Reports
**Sensitivity:** Confidential

Kevin,

You and I met about a week ago. I am reviewing the background for your appraisal. I know you are dissatisfied with your rating and I will be prepared to address that. When we spoke, I asked that you be sure to provide me with any accomplishments you believe were not considered in the appraisal. I have not received anything. I am unclear about your statement regarding unfair standards. You indicated that you re-wrote your standards. How can they be unfair? I am not aware that you believe there was disparate treatment. I would need more to address that. Further I don't know what "etc" means.

I will be prepared to discuss my findings with you regarding your rating tomorrow, Friday 12/22.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, December 21, 2006 9:20 AM
**To:** Stinnett, Melanie S.
**Cc:** Michalic, Vivian B.; Filler, Diane E.
**Subject:** FW: Draft Response to OIG Close Out Reports
**Importance:** High
**Sensitivity:** Confidential

Good Morning,

When is management going to address the numerous problems I have discussed with my chain of command? (Rating, Unfair Standards, Disparate Treatment, Etc.)

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, December 21, 2006 9:11 AM
**To:** Ellison, William E.
**Cc:** Moore, Adrienne T.; Hannon, Ann Marie
**Subject:** RE: Draft Response to OIG Close Out Reports
**Sensitivity:** Confidential

What about Ann's statement, "No one was saying it was…."? I merely asked a question, without any tone intended.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Ellison, William E.
**Sent:** Thursday, December 21, 2006 8:48 AM
**To:** Hawkins, Kevin J.
**Cc:** Moore, Adrienne T.; Hannon, Ann Marie
**Subject:** RE: Draft Response to OIG Close Out Reports
**Sensitivity:** Confidential

7/20/2007

I'm concerned about the tone of your last e-mail

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, December 21, 2006 8:31 AM
**To:** Ellison, William E.
**Cc:** Moore, Adrienne T.; Hannon, Ann Marie
**Subject:** RE: Draft Response to OIG Close Out Reports
**Sensitivity:** Confidential

I am free until 12:30; however, what are we meeting for?

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Ellison, William E.
**Sent:** Thursday, December 21, 2006 8:28 AM
**To:** Hawkins, Kevin J.; Hannon, Ann Marie; Moore, Adrienne T.
**Subject:** RE: Draft Response to OIG Close Out Reports
**Importance:** High
**Sensitivity:** Confidential

When is a good time we can discuss this?

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, December 21, 2006 7:32 AM
**To:** Hannon, Ann Marie; Moore, Adrienne T.
**Cc:** Ellison, William E.
**Subject:** RE: Draft Response to OIG Close Out Reports
**Sensitivity:** Confidential

Good Morning,

My comment is my Labor Relations/Negotiations advice; I was not implying that anyone said the order was negotiable. Why do you constantly take my advice out of context?

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hannon, Ann Marie
**Sent:** Wednesday, December 20, 2006 5:07 PM
**To:** Hawkins, Kevin J.; Moore, Adrienne T.
**Cc:** Ellison, William E.
**Subject:** RE: Draft Response to OIG Close Out Reports
**Sensitivity:** Confidential



No one was saying it was....we were simply complying with your request.

---

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, December 20, 2006 10:38 AM
**To:** Moore, Adrienne T.
**Cc:** Ellison, William E.; Hannon, Ann Marie
**Subject:** RE: Draft Response to OIG Close Out Reports
**Sensitivity:** Confidential

Good Morning,

Management's Delegation of Authority is not a negotiable matter.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hannon, Ann Marie
**Sent:** Wednesday, December 20, 2006 10:04 AM
**To:** Moore, Adrienne T.
**Cc:** Hawkins, Kevin J.; Ellison, William E.
**Subject:** FW: Draft Response to OIG Close Out Reports
**Importance:** High

In case Dalores wasn't able to forward this to you yesterday while I was on SL.  If there are any questions, please let me know.

---

**From:** Ellison, William E.
**Sent:** Tuesday, December 19, 2006 10:18 AM
**To:** Moore, Adrienne T.; Hannon, Ann Marie
**Cc:** Hawkins, Kevin J.
**Subject:** RE: Draft Response to OIG Close Out Reports

Ann Marie, can you address Kevin's request?

---

**From:** Hawkins, Kevin J.
**Sent:** Tuesday, December 19, 2006 9:25 AM
**To:** Ellison, William E.; Moore, Adrienne T.
**Cc:** Hannon, Ann Marie
**Subject:** RE: Draft Response to OIG Close Out Reports

In order to respond to this request I will need the orders.  Can someone please email me the orders?

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*

7/20/2007

Kevin.Hawkins@ATF.gov

---

**From:** Ellison, William E.
**Sent:** Tuesday, December 19, 2006 8:05 AM
**To:** Moore, Adrienne T.
**Cc:** Hawkins, Kevin J.; Hannon, Ann Marie
**Subject:** FW: Draft Response to OIG Close Out Reports
**Importance:** High

See my comments…I've cc'd Kevin and Ann Marie re: orders…we need to give the IG some idea as to when these orders can be finalized

---

**From:** Moore, Adrienne T.
**Sent:** Monday, December 18, 2006 6:48 PM
**To:** Ellison, William E.
**Cc:** Moore, Adrienne T.
**Subject:** Draft Response to OIG Close Out Reports

Bill,

Attached is the draft response to the OIG requests I received on last Wednesday.  Please note this is only a draft and I am available to discuss any changes, edits, etc.  I have requested copies of the orders referenced by the IG as required attachments.  Ann Marie has requested that Dalores Paige provide these to me, hopefully by tomorrow morning. I have a copy of the agreement between the ATF & OIG Counsel regarding policy guidance on generic charges that will be included as attachment 1, the ATF O 2750.1 if available in draft will be attachment 2, ATF O 1150.4 will be attachment 3 and finally the time line standards from our SOP and whatever PRB has will be attachment 4. I was scheduled for leave for the entire day, but will be in for staff meeting then I'll meet with my staff before I have to leave at 12:30.

EXHIBIT 7-2

Hawkins, Kevin J.   *DC CIRCUIT FILING/OPM COMPLAINT*

*AUDIT*

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Friday, January 05, 2007 3:34 PM |
| **To:** | Torres, Anthony N. |
| **Subject:** | Informal EEO Mixed Complaint |
| **Sensitivity:** | Private |

**Tracking:**

| Recipient | Delivery | Read |
|---|---|---|
| Torres, Anthony N. | Delivered: 1/5/2007 3:34 PM | Read: 1/5/2007 3:43 PM |

For the record, we met today in order to meet the required Informal EEO filing deadline.

Have a nice weekend☺

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

10/3/2007

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Michalic, Vivian B. |
| **Sent:** | Monday, January 22, 2007 8:23 AM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: Status Report |
| **Sensitivity:** | Confidential |

Kevin,

It is appropriate for Diane, Bill and Adrienne to be briefed due to their positions. As to the content of what should be in the report I agree that we should not share specifics of what was discussed, however we can say that last weeks negotiations focused on articles 34, Grievances and 7 Evaluations of Performance and we initialed off on article 34 at the end of the week. We can also share that we discussed trying to keep to the timeline outlined in the ground rules and try and work from 9:00am through 4:30pm each day.

As to why Lisa made a suggestion to you instead of Wanda I don't think that was out of line because Wanda has not been involved in our negotiations, but Lisa has sat in on several sessions and has experience with confidential issues directly related to union issues and I am not sure if Wanda does or not. I do think that it is a good idea for team members of one branch try to work with each other to offer the benefits of their experience so that a branch's product is complete. I would be happy to discuss further if you like.

Vivian

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, January 22, 2007 8:10 AM
**To:** Michalic, Vivian B.
**Subject:** FW: Status Report
**Sensitivity:** Confidential

Good Morning Vivian,

I have two issues:

1) With the confidentiality agreement I do not know how much information to share, and with me giving a briefing to Diane, Bill, and Adrienne at the end of the two week negotiation sessions why is this even necessary;
2) Why is another staff member questioning how much information I input into a status report; Wanda Gill was acting not Ms. Boykin.

Kevin J. Hawkins
Senior Negotiator, ATF
Human Resources Division
Management/Employee and Labor Relations Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

---

**From:** Boykin, Lisa T.
**Sent:** Friday, January 19, 2007 1:20 PM
**To:** Hawkins, Kevin J.; Gill, Wanda J.
**Cc:** Moore, Adrienne T.
**Subject:** RE: Status Report

Thanks for the status report however, it appears a bit incomplete. Understanding the confidentiality of the information discussed during negotiations, you can still provide generic but relevant information such as the number of articles discussed this week and the names and also identify the weekly objective of the negotiations such as what management would like to see accomplished "this week".

I will provide an update to Bill on Monday once I receive your updated information

Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, January 19, 2007 12:29 PM
**To:** Gill, Wanda J.
**Cc:** Boykin, Lisa T.
**Subject:** RE: Status Report


*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, January 05, 2007 1:44 PM
**To:** Boykin, Lisa T.
**Subject:** RE: Status Report


*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Friday, January 05, 2007 1:12 PM
**To:** Hawkins, Kevin J.
**Subject:** Status Report

Hi Kevin, I forgot to tell you that I need your status report by 12 today so you get an extension until 2 pm. Thanks. ☺

*Lisa T. Boykin*
*Employee and Labor Relations*
*650 Massachusetts Avenue, NW*
*Washington, DC 20226*
*202-927-8539 (work)*
*202-927-8841 (fax)*
*Lisa.Boykin@atf.gov*

10/1/2007

**EXHIBIT #2** *(handwritten)*

**Hawkins, Kevin J.**    *# AFTER VOICING MY ISSUES #* *(handwritten)*

| | |
|---|---|
| **From:** | Moore, Adrienne T. |
| **Sent:** | Tuesday, January 23, 2007 10:03 AM    *ON 01/22/07 (handwritten)* |
| **To:** | Hawkins, Kevin J. |
| **Cc:** | Moore, Adrienne T. |
| **Subject:** | Status Report |

Kevin,

Due to the increased volume of work and projects I'm reviewing, I've tasked Lisa with receiving and consolidating the MELRB status reports.  I of course will continue to review these to ensure we're timely responding and following up on issues as well as regularly updating all actions we're engaged in.  To that end, in my review of your submission for week ending January 19th, in addition to reporting those articles signed off on or discussed for that week, I want you to provide a running total of all articles negotiated and agreed to as of that report date.  This way, we can see at a glance the accomplishments that have been made towards reaching an accord with the union on the new CBA.

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Sunday, February 25, 2007 10:47 PM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: Comp. Time |
| **Sensitivity:** | Confidential |

Thanks Kevin but I need to gain a better understanding of what you sent in the e-mail update, not that there were no additional updates, I guess we got our signals crossed.  Let's meet on Monday.  I see that you have requested February 28th and March 1st as days off as well.

Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, February 23, 2007 12:27 PM
**To:** Boykin, Lisa T.
**Subject:** RE: Comp. Time
**Sensitivity:** Confidential

Hey Lisa,

I think I had 2 to 3 hours coming into this pay period; with the added hours of this week I should have 5 to 6 hours or so.  With me rushing this morning I locked myself out of WebTA.

Regarding the Pay Demo Web Page, there are no updates beyond my report submitted on Thursday.

Have a nice weekend.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Friday, February 23, 2007 8:20 AM
**To:** Hawkins, Kevin J.
**Subject:** RE: Comp. Time
**Sensitivity:** Confidential

Good morning and sure, I do not have a problem with that at all.  I just need to receive an update to the e-mail you sent regarding the Pay Demo Web page.

How much comp time do you have, since I obviously have not had a reason to keep up with this before ☺, please let me know how many hours you have to date (currently I cannot view the time sheets) so that I can keep up as well!

Let's talk when you return this afternoon.

Thanks and thanks in advance for the information to come!

Lisa

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, February 23, 2007 7:36 AM
**To:** Boykin, Lisa T.
**Subject:** Comp. Time
**Sensitivity:** Confidential

Good Morning,

I am requesting to use my Comp. Time when negotiations conclude today.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Tuesday, March 06, 2007 11:52 AM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: Federal Firearms Licensing Center (FFLC) Licensees Redistribution |
| **Sensitivity:** | Confidential |

How so? I would like to understand more…let's meet this afternoon at 3 pm.

---

**From:** Hawkins, Kevin J.
**Sent:** Tuesday, March 06, 2007 11:44 AM
**To:** Boykin, Lisa T.
**Subject:** RE: Federal Firearms Licensing Center (FFLC) Licensees Redistribution
**Sensitivity:** Confidential

This management initiative is separate/new from the settlement agreement.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Tuesday, March 06, 2007 10:56 AM
**To:** Hawkins, Kevin J.
**Subject:** RE: Federal Firearms Licensing Center (FFLC) Licensees Redistribution
**Sensitivity:** Confidential

Thanks for the update Kevin. Why are we noticing them? The settlement agreement only pertained to previous issues already settled, or so I thought. Since I may not have space and opportunity to keep all e-mails, please make sure this is on you status report. ☺

---

**From:** Hawkins, Kevin J.
**Sent:** Tuesday, March 06, 2007 10:17 AM
**To:** Boykin, Lisa T.
**Subject:** FW: Federal Firearms Licensing Center (FFLC) Licensees Redistribution
**Sensitivity:** Confidential

FYI

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

**From:** Hawkins, Kevin J.
**Sent:** Monday, March 05, 2007 3:58 PM
**To:** Barnwell-Burton, Robin G.
**Cc:** Power, Patricia
**Subject:** Federal Firearms Licensing Center (FFLC) Licensees Redistribution
**Sensitivity:** Confidential

Good Afternoon Ms. Barnwell-Burton,

I am hereby providing a notice with two enclosures.


*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Friday, March 09, 2007 2:56 PM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: Weekly Report |
| **Sensitivity:** | Confidential |

Thanks Kevin!  Now that's looks good!

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, March 09, 2007 2:26 PM
**To:** Boykin, Lisa T.
**Subject:** Weekly Report
**Sensitivity:** Confidential

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*



**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Friday, March 16, 2007 1:05 PM |
| **To:** | Power, Patricia; Hawkins, Kevin J. |
| **Cc:** | Mendoza, B. Scott; Moye, Diana D.; Griffith, Shaun M.; Hall-Evans, Robin E. |
| **Subject:** | RE: Linda Whiting |

I spoke with Kevin about the e-mail below and he and I agree that this is more of an ER matter. Robin Hall-Evans, who is the ER/LR Specialists for your area Pat, will be in on Monday and I will talk with her about this issue then. By way of this e-mail, I will provide her with this information.

In reviewing the e-mail below, it is not clear to me whether or not this issue has been addressed with Robin Barnwell-Burton yet so that we may get her "side" before we move forward.

Thanks.

---

**From:** Power, Patricia
**Sent:** Friday, March 16, 2007 12:49 PM
**To:** Hawkins, Kevin J.
**Cc:** Mendoza, B. Scott; Boykin, Lisa T.; Moye, Diana D.; Griffith, Shaun M.
**Subject:** FW: Linda Whiting
**Importance:** High

Good afternoon Kevin,

Please review Supervisor Griffith's summary of events that presumably occurred between NTEU President Robin Barnwell-Burton and Examiner Linda Whiting concerning the FFL Redistribution management initiative to realign workload at the FFLC. Apparently she is "bullying" this employee to the point of causing her medical conditions to worsen, as indicated by Supervisor Griffith's discussion with her this morning.

Examiner Whiting carries the highest workload of 9,200 Federal firearms licensees which is in some cases twice as much and for some, three times as much as other examiners. Because of the resistance and history of prior workload redistribution attempts by NTEU, several people like Ms. Whiting have unfairly carried more than their fair share, undoubtedly.

In accordance with ATF Order 2133.1, Violence in the Workplace:

POLICY. Every employee deserves a safe and secure workplace environment. The Bureau is committed to working with its employees to maintain a work environment free from violence, threats of violence, harassment, intimidation, and other disruptive behavior. The establishment of this Bureauwide program will provide managers, supervisors, and employees with guidelines on identifying violence, early intervention efforts as well as efforts for handling workplace violence. The program will also identify Bureau resources.

Supervisor Griffith and I view these incidents as harassment, intimidation and other disruptive behavior on the part of President Burton and must be discontinued immediately.

For now, the Supervisor and I are aware of President Burton's actions and he has informed Examiner Whiting this is unacceptable, has reported it to me, and now we are requesting your assistance with immediate discontinuance of this behavior and an apology to the Examiner, considering the specific allegations she made to the Examiner, as a minimum.

I also understand that Examiner Whiting is not the only person she has approached in this manner to gain support of the union positions, and that employees feel intimidated to the point of agreeing to the union position whether they do or do not agree.

I will out of the office this afternoon; however, Diana Moye is available to discuss this if you need to speak with us prior to addressing this issue with possibly her NTEU higher levels.

1

Thank you,Kevin

---

**From:** Griffith, Shaun M.
**Sent:** Friday, March 16, 2007 12:29 PM
**To:** Power, Patricia
**Subject:** Linda Whiting

Pat

Linda Whiting came to me this morning, 3-16-07 at 7:47 am. She indicated that she needed to complain to someone. She stated that Robin Barnwell-Burton had called a meeting on 3-15-07 to discuss the management issue of realigning the work load. Linda indicated that there were only 9 people present at this meeting and they all voted for a cease and desist letter to be given to management to refrain them from realigning the work. Linda indicated that since not every bargaining unit person was at that meeting Robin would speak with the others on an individual basis. From what was relayed to me by Linda is that Robin approached her this morning to get her opinion and Linda said she wanted the workload to change. Robin told her that it was unfair to rearrange the workload of everybody for one person, namely Linda. She also indicated that this whole issue was Linda's fault for not complaining to the union previously. Linda told Robin that the large workload was causing her health problems. Robin said she didn't care and that she should just continue to do the work since she would be retiring at the end of the year anyway. Linda also told me that Robin told some people, Gary Campbell's name was mentioned, to not think about anyone but themselves and not to worry about other people's issues.

The above instance is the 2nd such time Linda has approached me in approximately the last 2 weeks in regards to Robin Barnwell-Burton being overbearing and accusing Linda of being the problem to this whole issue.

When I asked Linda to write up a memo in regards to this incidence, she refused and was visibly upset. She seemed more upset at 11:45 am this morning than she did at 7:47 am. I asked her if something else had been said to her and she said no. She was concerned about her high blood pressure and therefore did not want to think anymore about the issue because she felt that nothing would be done about it. Linda is available to retire at any time; however, she has verbally agreed to stay as long as she can, considering her health and current ability to retire, which is a huge relief to this office. She is very instrumental to the functioning of this office due to her skills, experience, work ethic, etc.

On a personal note, I find this kind of behavior from a union president to be absolutely deplorable and possibly bordering on illegal/unethical activity. A union president should represent the ENTIRE bargaining unit, to ensure that all people within that group are given fair, just and equitable treatment.


**Shaun M. Griffith**   ><>
Section Supervisor
U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives
Federal Firearms Licensing Center
2600 Century Pkwy, 110
Atlanta, GA  30345
404-417-1298

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Tuesday, March 20, 2007 12:57 PM |
| **To:** | Randolph, Leslie; Russo, Rosanne F. |
| **Cc:** | Hannon, Ann Marie; Boykin, Lisa T. |
| **Subject:** | RE: Draft Charter with Waiver |
| **Sensitivity:** | Confidential |

| **Tracking:** | Recipient | Delivery | Read |
|---|---|---|---|
| | Randolph, Leslie | Delivered: 3/20/2007 12:58 PM | |
| | Russo, Rosanne F. | Delivered: 3/20/2007 12:58 PM | Read: 3/20/2007 1:00 PM |
| | Hannon, Ann Marie | Delivered: 3/20/2007 12:58 PM | Read: 3/20/2007 1:22 PM |
| | Boykin, Lisa T. | Delivered: 3/20/2007 12:58 PM | Read: 3/20/2007 3:44 PM |

I concur with Leslie's comments.

Thank you,

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Randolph, Leslie
**Sent:** Tuesday, March 20, 2007 12:36 PM
**To:** Hawkins, Kevin J.; Russo, Rosanne F.
**Cc:** Hannon, Ann Marie; Boykin, Lisa T.
**Subject:** RE: Draft Charter with Waiver
**Sensitivity:** Confidential

Why don't we rephrase to include both parties:

"The Telework Committee does not engage in negotiations with NTEU, and neither ATF or NTEU waives any bargaining rights under the ATF/NTEU Agreement by participating in this process."

I have a brief going out to an AUSA tomorrow, and then will depart from the office from 3/23/06 to 3/26/06. These are my final comments on this matter.

---

**From:** Hawkins, Kevin J.
**Sent:** Tuesday, March 20, 2007 10:11 AM
**To:** Russo, Rosanne F.; Randolph, Leslie
**Cc:** Hannon, Ann Marie; Boykin, Lisa T.
**Subject:** RE: Draft Charter with Waiver
**Importance:** High
**Sensitivity:** Confidential

Good Morning,

11/1/2007

The following:

- "The Telework Committee process does not constitute negotiations with NTEU, and NTEU does not waive any bargaining rights by participating in this process," could be interpreted as NTEU has a right to bargain with the Telework Committee.

vs.

The following:

- "The Telework Committee **does not engage in negotiations with NTEU**, and NTEU is not waiving any impact and implementation bargaining rights under the ATF/NTEU Agreement by participating in this process," this statement clearly states management's position.

Thank you,
*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Russo, Rosanne F.
**Sent:** Tuesday, March 20, 2007 7:57 AM
**To:** Hawkins, Kevin J.; Randolph, Leslie
**Cc:** Hannon, Ann Marie
**Subject:** FW: Draft Charter with Waiver

*Kevin / Leslie*

*Kevin – per our brief discussion last week can you please tell me what the difference in the wording is from what was presented to Steve and what he has proposed in response? FMS/FO concurs with his recommended suggestion, however, I want to be sure that we are not changing any meanings as we discussed.*

*Please let me know at the earliest convenience. As I said, I believe his wording reads better and if possible I think we should incorporate that as long as the overall understanding and meaning is not lost. So, again, if we can come up with something that works for everybody as a committee that would be the best solution. If we can't, we will have to meet to discuss because I can not make the changes without concurrence from the entire committee.*

*Thank you both for your assistance in this matter.*

*Roe*

**Rosanne F. Russo**

**Program Analyst**

## Hawkins, Kevin J.

**From:** Boykin, Lisa T.
**Sent:** Thursday, April 05, 2007 3:37 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Updated critical elements for NFA examiners
**Sensitivity:** Confidential

I am glad that we met and were able to clear up the misunderstanding, thanks alot Kevin!

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, April 05, 2007 3:01 PM
**To:** Boykin, Lisa T.
**Subject:** RE: Updated critical elements for NFA examiners
**Sensitivity:** Confidential

I think there was a misunderstanding; I am going to do all the union notices, Ken just wanted some assistance with the letter to the employees. Let me know when you are free.

Kevin J. Hawkins
Senior Negotiator, ATF
Human Resources Division
Management/Employee and Labor Relations Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

---

**From:** Boykin, Lisa T.
**Sent:** Thursday, April 05, 2007 2:49 PM
**To:** Hawkins, Kevin J.
**Subject:** FW: Updated critical elements for NFA examiners
**Sensitivity:** Confidential

Kevin. As part of the notification process regarding I&I bargaining. Let's talk. Thanks.

---

**From:** Boykin, Lisa T.
**Sent:** Wednesday, April 04, 2007 2:34 PM
**To:** Hall-Evans, Robin E.
**Subject:** RE: Updated critical elements for NFA examiners
**Sensitivity:** Confidential

Robin the attached is a copy of what was send to nationals once the employees received their letter that Ken is referring to. The "letter" is very simple and can be drafted quickly based on the language in the article which is what I did when I noticed them unfortunately I cannot find that sample in my files.

If Kevin gave notice to the union (either local or national) then he sends the letters to Ken.

---

**From:** Hall-Evans, Robin E.
**Sent:** Wednesday, April 04, 2007 2:21 PM
**To:** Boykin, Lisa T.

11/1/2007

**Cc:** Boykin, Lisa T.
**Subject:** FW: Updated critical elements for NFA examiners
**Sensitivity:** Confidential

Lisa,

Please see e-mail traffic below. What type of notification letter are they talking about?

Thanks
Robin

---

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, April 04, 2007 2:14 PM
**To:** Hall-Evans, Robin E.
**Subject:** RE: Updated critical elements for NFA examiners
**Sensitivity:** Confidential

I don't have employee notice information; I am addressing the union notice obligation and isn't WV your area?

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hall-Evans, Robin E.
**Sent:** Wednesday, April 04, 2007 2:11 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Updated critical elements for NFA examiners
**Sensitivity:** Confidential

So Kevin I am a little confused, why didn't you just provide this information to Ken?

---

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, April 04, 2007 2:08 PM
**To:** Hall-Evans, Robin E.
**Subject:** RE: Updated critical elements for NFA examiners
**Sensitivity:** Confidential

Ken needs to prepare a letter for the employees affected by the change to the standards of the Legal Instrument Examiners (LIEs). The emails below should fill you in; if not, I've copied the following:

"In accordance with Section 3B which says, Copies of the proposed critical elements and performance standards will be sent to affected employees for comments, and the employees will be granted two (2) hours of administrative time to prepare written comments. A notice of the right to request a meeting to explain the language in the new elements and standards will be attached. If a meeting is held employees shall have fifteen (15) days to submit written comments; therefore, **send me management's proposed letter to the affected employees for review prior to deliverance.**"

If you have anymore questions give me a call.

Thank you,

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hall-Evans, Robin E.
**Sent:** Wednesday, April 04, 2007 2:03 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Updated critical elements for NFA examiners
**Sensitivity:** Confidential

Kevin,

I have not idea what letter you are referring to.

Robin

---

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, April 04, 2007 1:59 PM
**To:** Houchens, Kenneth E.
**Cc:** Mendoza, B. Scott; Hall-Evans, Robin E.
**Subject:** RE: Updated critical elements for NFA examiners
**Sensitivity:** Confidential

Robin,

Can you assist Ken in the matter below?

Thank you,

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Houchens, Kenneth E.
**Sent:** Wednesday, April 04, 2007 1:35 PM
**To:** Hawkins, Kevin J.
**Cc:** Mendoza, B. Scott
**Subject:** RE: Updated critical elements for NFA examiners
**Sensitivity:** Confidential

Do you have a go-by regarding managements proposed letter?  I don't have any idea of the language that the letter should contain.

---

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, April 04, 2007 1:30 PM



**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Thursday, April 05, 2007 6:55 PM |
| **To:** | Hall-Evans, Robin E.; Camp, Nikki D.; Crawford, Dana D.; Hawkins, Kevin J.; Fowler, Audrey A. |
| **Cc:** | Gill, Wanda J. |
| **Subject:** | Acting April 6, 2007 |

Wanda is the acting chief in my absence.  Thanks and have a good holiday weekend!

*Lisa T. Boykin*
*Acting Chief*
*Management Employee and Labor Relations Branch*
*650 Massachusetts Avenue, NW*
*Washington, DC 20226*
*202-927-8539 (work)*
*202-927-8841 (fax)*
*Lisa.Boykin@atf.gov*

# Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Monday, April 09, 2007 5:17 PM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: PDs Working in Criminal LE Components |

Thanks Kevin. Bill wants to sit in on the meeting so just let me know what time and where....thanks ☺

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, April 09, 2007 4:32 PM
**To:** Boykin, Lisa T.
**Subject:** FW: PDs Working in Criminal LE Components

Second attempt to forward.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, April 09, 2007 4:13 PM
**To:** Lago, Kelly A.
**Cc:** Boykin, Lisa T.
**Subject:** RE: PDs Working in Criminal LE Components

We can chat on Tuesday.

*Kevin J. Hawkins*
*Senior Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Lago, Kelly A.
**Sent:** Monday, April 09, 2007 4:10 PM
**To:** Hawkins, Kevin J.
**Subject:** FW: PDs Working in Criminal LE Components

Kevin,
I think this will help you understand my "request" for assistance. Can we chat on Tuesday?

---

**From:** Randolph, Leslie
**Sent:** Monday, April 09, 2007 3:56 PM
**To:** Lago, Kelly A.

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Michalic, Vivian B. |
| **Sent:** | Thursday, April 19, 2007 12:30 PM |
| **To:** | Hawkins, Kevin J.; Ellison, William E.; Hannon, Ann Marie |
| **Cc:** | Filler, Diane E.; Boykin, Lisa T. |
| **Subject:** | RE: NTEU Negotiation Issues on Forced Leave and CTOT |
| **Sensitivity:** | Confidential |

The short answer to the original two questions below is no, we do not need to negotiate either item with the union

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, April 19, 2007 11:16 AM
**To:** Ellison, William E.; Hannon, Ann Marie
**Cc:** Filler, Diane E.; Boykin, Lisa T.; Michalic, Vivian B.
**Subject:** RE: NTEU Negotiation Issues on Forced Leave and CTOT
**Sensitivity:** Confidential

To my knowledge nothing in the contract addresses "COOP"; however, I assume this program would fall under OPRSO and with counsel's support management maybe able to argue that due to security/emergency situations/etc. a proposed COOP brief or order is non-negotiable.

FYI - Diane and I attended a COOP meeting several weeks ago chaired by Vivian and Everett. In addition, there was a 1-day COOP simulated exercise, maybe Diane can provide a more detailed response regarding management's position on COOP and NTEU's possible input?

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Ellison, William E.
**Sent:** Thursday, April 19, 2007 10:46 AM
**To:** Hawkins, Kevin J.; Hannon, Ann Marie
**Cc:** Filler, Diane E.; Boykin, Lisa T.; Michalic, Vivian B.
**Subject:** RE: NTEU Negotiation Issues on Forced Leave and CTOT
**Sensitivity:** Confidential

A broader question related to #1 below and forced leave...is there an emergency exclusion clause in the contract that would allow the contract to be overridden should an emergency occur such as pandemic?

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, April 19, 2007 10:34 AM
**To:** Hannon, Ann Marie
**Cc:** Ellison, William E.; Filler, Diane E.; Boykin, Lisa T.; Michalic, Vivian B.
**Subject:** RE: NTEU Negotiation Issues on Forced Leave and CTOT
**Sensitivity:** Confidential

Good Morning,

In response to:

#1 – No position on forced leave

#2 – OPM-Government Wide Rules would override any negotiated CTOT agreement; however, no contrary positions.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hannon, Ann Marie
**Sent:** Thursday, April 19, 2007 10:27 AM
**To:** Hawkins, Kevin J.
**Cc:** Ellison, William E.; Filler, Diane E.
**Subject:** NTEU Negotiation Issues on Forced Leave and CTOT

Hello Kevin:

Bill asked me to reach out to you on a couple of current questions.

It would be useful to know if the ATF/NTEU negotiations have taken any position with regard to:

- Forced Leave; and
- Compensatory Time Off For Travel.

With regard to Forced Leave the question is what authority/rights have been negotiated for situations where the agency is under a pandemic situation and an employee arrives at the office appearing to be sick and a supervisor believes the employee needs to be sent back home to prevent any spreading of infection.

With regard to Compensatory Time Off for Travel the main question here is whether any negotiations on CTOT that have been conducted so far have run counter to any of the new provisions of the OPM final rule (sent by email yesterday).

Please let me know at your earliest convenience.  I'm here at 202-648-9081 if you would like to discuss any of this by phone.

*Ann Marie Hannon*
*Chief, Policy and Human Capital Planning Branch*
*Human Resources Division, Office of Management*
*Bureau of Alcohol, Tobacco, Firearms and Explosives*
*U.S. Department of Justice*
*Phone: 202-648-9081*
*Fax: 202-648-9005*

11/1/2007

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Thursday, May 03, 2007 10:46 AM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: Meeting on directives |
| **Sensitivity:** | Confidential |

Not sure.  But if you did , thanks for putting us back

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, May 03, 2007 8:59 AM
**To:** Boykin, Lisa T.
**Subject:** FW: Meeting on directives
**Importance:** High
**Sensitivity:** Confidential

FYI – Why was Diane and you taken off of Bill's latest email?  Anyway, prior to responding to Bill I am waiting on Vivian's guidance.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, May 03, 2007 8:55 AM
**To:** Michalic, Vivian B.
**Subject:** FW: Meeting on directives
**Importance:** High
**Sensitivity:** Confidential

Good Morning,

How do you want me to address this inquiry?

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Ellison, William E.
**Sent:** Thursday, May 03, 2007 8:52 AM
**To:** Hannon, Ann Marie; Hawkins, Kevin J.
**Subject:** RE: Meeting on directives

Probably not but I defer to Kevin

---

**From:** Hannon, Ann Marie
**Sent:** Thursday, May 03, 2007 8:50 AM
**To:** Boykin, Lisa T.; Ellison, William E.; Hawkins, Kevin J.; Oates, Helen M.
**Cc:** Cunningham, J. Lorraine; Filler, Diane E.
**Subject:** RE: Meeting on directives

Monday PM and Friday PM are good for me.

Will we have an opportunity to preview the negotiated agreement,
or at least the articles that apply to the orders you've mentioned?

---

**From:** Boykin, Lisa T.
**Sent:** Thursday, May 03, 2007 8:33 AM
**To:** Ellison, William E.; Hannon, Ann Marie; Hawkins, Kevin J.; Oates, Helen M.
**Cc:** Cunningham, J. Lorraine; Filler, Diane E.
**Subject:** RE: Meeting on directives

I am available on those days.

---

**From:** Ellison, William E.
**Sent:** Thursday, May 03, 2007 8:21 AM
**To:** Hannon, Ann Marie; Hawkins, Kevin J.; Oates, Helen M.
**Cc:** Cunningham, J. Lorraine; Filler, Diane E.; Boykin, Lisa T.
**Subject:** Meeting on directives
**Importance:** High

Diane and I would like to meet with you to discuss proceeding on a number of directives including merit promotion, leave, pay and performance management in view of the conclusion of the national negotiations. I am looking at the afternoon of Monday, Thursday or Friday of next week. Let me know of date and time preference.



# Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Randolph, Leslie |
| **Sent:** | Friday, May 04, 2007 11:15 AM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: Contract Training Lesson Plans |
| **Sensitivity:** | Confidential |

THX Kevin. They seem very wedded to their approach. I called you, but lets talk later.

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, May 04, 2007 10:08 AM
**To:** Randolph, Leslie
**Subject:** FW: Contract Training Lesson Plans
**Sensitivity:** Confidential

Per my last email☺

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, May 04, 2007 9:45 AM
**To:** Klein, Thomas H.
**Cc:** Boykin, Lisa T.
**Subject:** Contract Training Lesson Plans
**Sensitivity:** Confidential

Tom-It appears that our pre-training approach/process/steps may be different, however; contract training is not like other training. I think my rough draft training points are enough in order for TPD to have at the minimum an idea how to address the second and third bullet of the email below. (Prepare Lesson Plans)

For the record, from a LR/Negotiator perspective the number one priority of contract training is to have a unified understanding of the contract; which starts with the person most familiar with the contract pointing out significant points of each article. On the other hand, TPD's priority/first step appears to be making sure the contract training follows TPD's training structure/module; which I have no problem with, as long as TPD is willing to spend the time transferring the contract training points to TPD's suggested Lesson Plans.

I have provided training on numerous contracts and pointing out the major points of each article is the first/most important/time consuming step in the process; which I am currently doing! All due respect, TPD and I going through each article together pointing out important points would only slow me down. In our last meeting, TPD asked what they could do while I drafted the training points; I've provided this information.

In conclusion, contract training is just the first step in contract administration; thus, the success of the contract is an on-going process and priority of the Office of Management/OHR/MELRB.

Feel free to give me a call, thanks.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Klein, Thomas H.
**Sent:** Friday, May 04, 2007 8:52 AM
**To:** Hawkins, Kevin J.
**Subject:** RE:
**Sensitivity:** Confidential

Kevin – what you sent me looks like just a copy of the contract. Let me say again, we will be glad to work with you to put lesson plans together but you are the subject matter expert (SME) on this. From our last meeting, the group decided that the training would be designed to go article by article through the contract. We are going to need you to work directly with us to at least develop outline points for each article that highlight:

- What you want the students to understand about the article?
- What points you will be briefing on when presenting the article?
- How you plan to present the briefing points (guided discussion, student exercise, etc.)

As I have stated before, my staff is prepared to sit down with you and go through this article by article. That said, we are not the SMEs and there is no way we are going to be able to go through the contract and complete the 3 bullets above on our own.

I know you are extremely busy, as we all are. However, this is our one shot to provide this training and we need to ensure we design a quality program that is thoroughly documented. The time invested here on the front end will save us much more time and cost on the back end if managers who attend do things proper and minimize errors and mistakes. Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, May 04, 2007 7:19 AM
**To:** Klein, Thomas H.
**Subject:**
**Sensitivity:** Confidential

Good Afternoon Tom,

I've attached a rough draft of my suggested Contract Training Points for a couple of articles. How about you taking a crack at putting them in your training module format you sent me?

If you have any questions give me a call.

Thanks,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*



## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Tuesday, May 08, 2007 10:16 AM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | FW: Individual Development Plans (IDPs) |

Hey Kevin.  Thanks for providing the IDP however I would like you to provide more detail regarding your developmental Objectives.  I will come see you.
Thanks.

---

**From:** Boykin, Lisa T.
**Sent:** Tuesday, May 08, 2007 8:53 AM
**To:** Hawkins, Kevin J.; Gill, Wanda J.; Hall-Evans, Robin E.; Fowler, Audrey A.; Camp, Nikki D.; Crawford, Dana D.
**Subject:** Individual Development Plans (IDPs)

Good morning to all, I will need these by COB today.  Thanks.

Lisa

*Lisa T. Boykin*
*Acting Chief*
*Management Employee and Labor Relations Branch*
*650 Massachusetts Avenue, NW*
*Washington, DC  20226*
*202-927-8539 (work)*
*202-927-8841 (fax)*
*Lisa.Boykin@atf.gov*

11/1/2007



**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Friday, May 18, 2007 10:00 AM |
| **To:** | Hawkins, Kevin J.; Filler, Diane E.; Michalic, Vivian B. |
| **Cc:** | Randolph, Leslie |
| **Subject:** | RE: Letter from Colleen Kelley |
| | |
| **Sensitivity:** | Confidential |

Thanks Diane.

Kevin and I reviewed the memo and have begun working with NTEU to address the two issues you raised as well as a few others to include National Field Representatives as well as who, if NTEU wants the current stewards handling the current grievances to change.

Thanks again!

-----Original Message-----
From: Hawkins, Kevin J.
Sent: Friday, May 18, 2007 7:06 AM
To: Filler, Diane E.; Michalic, Vivian B.
Cc: Boykin, Lisa T.; Randolph, Leslie
Subject: RE: Letter from Colleen Kelley
Sensitivity: Confidential

Diane,

I am already working on both items.

Kevin J. Hawkins
National Negotiator, ATF
Human Resources Division
Management/Employee and Labor Relations Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

-----Original Message-----
From: Filler, Diane E.
Sent: Thursday, May 17, 2007 3:05 PM
To: Hawkins, Kevin J.; Michalic, Vivian B.
Cc: Boykin, Lisa T.; Randolph, Leslie
Subject: RE: Letter from Colleen Kelley
Sensitivity: Confidential

Kevin,
Based on this restructure, you have two action items.  We will need to post the chapter presidents and his/her area of coverage on our web.  Also, there is a note to be sure we align the employees under the proper chapter.
Diane

-----Original Message-----
From: Hawkins, Kevin J.
Sent: Tuesday, May 15, 2007 10:33 AM
To: Michalic, Vivian B.
Cc: Filler, Diane E.; Boykin, Lisa T.; Randolph, Leslie
Subject: FW: Letter from Colleen Kelley
Importance: High
Sensitivity: Confidential

Good Morning,

Kevin J. Hawkins
National Negotiator, ATF
Human Resources Division
Management/Employee and Labor Relations Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov


-----Original Message-----
From: Marjorie Somers [mailto:marjorie.somers@NTEU.ORG]
Sent: Friday, May 11, 2007 2:52 PM
To: Hawkins, Kevin J.
Subject: Letter from Colleen Kelley

Please confirm receipt.   Thanks.

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Monday, May 21, 2007 12:01 PM |
| **To:** | Hawkins, Kevin J.; Zammillo, James A., Sr. |
| **Cc:** | Boykin, Lisa T. |
| **Subject:** | RE: Reconvening Contract Negotiations |

**Sensitivity:** Confidential

I am in agreement that communication on all levels is vitally important however, I am not so sure that e-mail in this case really is the best form as it relates to this issue.

I suggest we meet to discuss this further to gain a better and clearer understanding of the varying points of view.

Jim, I know that you are busy however would you have time to meet on this for maybe 30 minutes?  What is your availability?

-----Original Message-----
From: Hawkins, Kevin J.
Sent: Monday, May 21, 2007 10:42 AM
To: Zammillo, James A., Sr.
Cc: Boykin, Lisa T.
Subject: RE: Reconvening Contract Negotiations
Sensitivity: Confidential

Jim,

I think you are misinterpreting my email, however, Marcia & Russ as the FO rep. reviewed/cleared and provided management's input on the Reassignment article.  However, all due respect, Marcia sending emails 10 minutes prior to a meeting/conference call and bringing up a point without all the facts/knowledge of the issue on the last day of negotiations seem a little unfair to the rest of the team.  Also, I tried to address the issue as much as I could prior to the meeting and have replied several times to similar issues.

For the record, OM nor am I trying to resolve issues without getting input from managers that deal with the particular issue; however, when an issue deals with labor relations/contract/labor law, all due respect, we may differ but have to respect each others point of view.

I agree with your statement communication is key and I am more than willing to discuss the facts of this issue, feel free to give me a call if you wish.

Thanks,

Kevin J. Hawkins
National Negotiator, ATF
Human Resources Division
Management/Employee and Labor Relations Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

-----Original Message-----
From: Zammillo, James A., Sr.
Sent: Monday, May 21, 2007 10:20 AM
To: Hawkins, Kevin J.
Cc: Boykin, Lisa T.; Zammillo, James A., Sr.
Subject: RE: Reconvening Contract Negotiations
Sensitivity: Confidential

I am sure that I probably may be misinterpreting your e-mail but I need to reply. From a management perspective, ELRB and for that matter OM should not be resolving issues without getting input from the managers that deal with them. OMs lack of knowledge on our operations is at least as great as what may be our perceived lack of knowledge on labor law. When a DIO, GS-15, especially the lead for FO delegates to our contract negotiating team raises a concern regarding contract language that they have not been privy to AND it impacts our operations, they and I have a right to question it and be concerned. As you note, communication is critical and regardless of what any component believes they have the right answer, all parties should be consulted prior to any agreement outside management.


James A. Zammillo
Deputy Assistant Director (FO)
Office: 202-927-7953
Cell:   202-302-4607
Fax:    202-927-7756


-----Original Message-----
From: Hawkins, Kevin J.
Sent: Monday, May 21, 2007 8:30 AM
To: Zammillo, James A., Sr.
Cc: Boykin, Lisa T.
Subject: RE: Reconvening Contract Negotiations
Sensitivity: Confidential


Good Morning,


I'll be brief since Vivian has responded, for clarity, there are not many management initiatives (Including management rights) that are outright non-negotiable.


FYI — Whether or not management can exercise their management right is not the issue; labor law states the union can negotiate appropriate arrangements and/or procedures in management exercising their right.


I understand that if you are not a Labor Relations Specialist this may seem confusing; this is why matters such as this shall be addressed by MELRB prior to management taking actions.


Hopefully, the upcoming contract training will clarify issues like this and others.


Thanks for listening:)


Kevin J. Hawkins
National Negotiator, ATF
Human Resources Division
Management/Employee and Labor Relations Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

-----Original Message-----
From: Zammillo, James A., Sr.
Sent: Friday, May 18, 2007 7:42 PM
To: Hawkins, Kevin J.
Subject: Re: Reconvening Contract Negotiations
Sensitivity: Confidential


We reassigned and considered it our right to assign work as no PCS. Never negotiated or even came up. I would like to keep that right if we can. Thanks for getting back to me.
********
NOTICE: This electronic transmission is confidential and intended only for the person(s) to whom it is addressed. If you have received this transmission in error, please notify the sender by return e-mail and destroy this message in its entirety (including all attachments).


-----Original Message-----

From: Hawkins, Kevin J.
To: Zammillo, James A., Sr.; Michalic, Vivian B.
CC: Lambert, Marcia F.
Sent: Fri May 18 14:07:18 2007
Subject: RE: Reconvening Contract Negotiations

Hey Jim,


Before I respond, for clarity, details should be temporary and reassignments should be permanent; thus, have FO been detailing the employees or reassigning them?


As far as advertising, in accordance with the current contract – only reassignments that involve a PCS require polling employees.


FYI – If any personnel action last more than 30 days a SF-personnel action should be prepared and given to the employee.


As far as legality, CC is correct, it is not illegal to detail or reassign a bargaining-unit employee into a non-bargaining unit position, however, both are a change in an employees work conditions and are negotiable.



Kevin J. Hawkins

National Negotiator, ATF

Human Resources Division

Management/Employee and Labor Relations Branch

(W) 202-927-8542

(C) 202-441-1151

Kevin.Hawkins@ATF.gov <mailto:Kevin.Hawkins@ATF.gov>


_____


From: Zammillo, James A., Sr.
Sent: Friday, May 18, 2007 1:35 PM
To: Michalic, Vivian B.; Hawkins, Kevin J.
Cc: Lambert, Marcia F.; Zammillo, James A., Sr.
Subject: RE: Reconvening Contract Negotiations
Importance: High
Sensitivity: Confidential



We have a problem.  In FO, we have been reassigning a BU employee to a non-BU positioning the same city w/o advertising.  CC told us this was legal and we need this to fill SOO and SII positions from IOI ranks.  To my knowledge FO did not agree to give this up and it dramatically affects FO.  What are our options?

3

James A. Zammillo

Deputy Assistant Director (FO)

Office: 202-927-7953

Cell:   202-302-4607

Fax:    202-927-7756

---

From: Lambert, Marcia F.
Sent: Friday, May 18, 2007 9:38 AM
To: Zammillo, James A., Sr.; Vanderwerf, Russel M.
Subject: FW: Reconvening Contract Negotiations
Sensitivity: Confidential


Jim, have you seen this before?  Sorry to hook you in at the eleventh hour, but I feel strongly that this language is unacceptable and Kevin and company are attempting to nail it in the contract.

---

From: Lambert, Marcia F.
Sent: Friday, May 18, 2007 9:37 AM
To: Hawkins, Kevin J.; Michalic, Vivian B.; Vanderwerf, Russel M.
Subject: RE: Reconvening Contract Negotiations
Sensitivity: Confidential


Yes, I realize, but the BU is concerned about us "reassigning" or detailing, to, say, SOO positions in a division for several months, etc., which is sometimes necessary.  This language would prohibit the reassignment or detail – they will use this section to grieve any details as there are no time frames.  Who will be defining what a detail is versus a reassignment – the union has been very concerned about these details to division staff and we will now effectively have out hands tied, or be arguing and defending grievances on this.  Thjs will cause a lot of unhappiness in FO management.  I am going to talk to Zammillo about this, I do not think he will agree with this language, I surely do not.

---

From: Hawkins, Kevin J.
Sent: Friday, May 18, 2007 9:33 AM
To: Lambert, Marcia F.; Michalic, Vivian B.; Vanderwerf, Russel M.
Subject: RE: Reconvening Contract Negotiations
Sensitivity: Confidential


Marcia – This language refers to reassignments not details.  Also, it only applies in permanent reassignments, which would be rare.


Kevin J. Hawkins

4

National Negotiator, ATF

Human Resources Division

Management/Employee and Labor Relations Branch

(W) 202-927-8542

(C) 202-441-1151

Kevin.Hawkins@ATF.gov <mailto:Kevin.Hawkins@ATF.gov>

---

From: Lambert, Marcia F.
Sent: Friday, May 18, 2007 9:29 AM
To: Hawkins, Kevin J.; Michalic, Vivian B.; Vanderwerf, Russel M.
Subject: RE: Reconvening Contract Negotiations
Importance: High
Sensitivity: Confidential

I'm sorry, Kevin, but we cannot agree with that.  I thought we were very firm on management't right to reassign — what about an emergency?  To post, announce, etc., it would take weeks….This issue is much more important than the language on directed reassignments and will cause a tremendous issue for field operations.  We rarely use directed reassignments to fill IOI positions, but we do detail without posting, etc.

---

From: Hawkins, Kevin J.
Sent: Friday, May 18, 2007 9:24 AM
To: Lambert, Marcia F.
Subject: RE: Reconvening Contract Negotiations
Importance: High
Sensitivity: Confidential

Marcia,

That was discussed and agreed to at the last conference call.  FYI — your email went to NTEU!

Kevin J. Hawkins

National Negotiator, ATF

Human Resources Division

Management/Employee and Labor Relations Branch

(W) 202-927-8542

(C) 202-441-1151

Kevin.Hawkins@ATF.gov <mailto:Kevin.Hawkins@ATF.gov>

5



## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Thursday, May 24, 2007 2:45 PM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: Reassignment of IOI from BU Position to Non-BU Position |
| **Sensitivity:** | Confidential |

Agreed. Also, (I forgot to point this out) transfer as opposed to reassignment? Thanks. I will send the edits, once you respond!

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, May 24, 2007 2:25 PM
**To:** Boykin, Lisa T.
**Subject:** RE: Reassignment of IOI from BU Position to Non-BU Position
**Sensitivity:** Confidential

Several comments:

1)   "If there is no PCS" is irrelevant and should be removed;
2)   Why is he referencing CC they have not provided input on this subject?
3)   Also, not to sound possessive, however, negotiability is my responsibility not Eleanor Loos; thus, it should read "my name or MELRB, or I"

Thank you,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Thursday, May 24, 2007 2:18 PM
**To:** Hawkins, Kevin J.
**Subject:** FW: Reassignment of IOI from BU Position to Non-BU Position

Fyi, This what was agreed upon right?

---

**From:** Zammillo, James A., Sr.
**Sent:** Thursday, May 24, 2007 9:24 AM
**To:** Boykin, Lisa T.; Randolph, Leslie
**Cc:** Zammillo, James A., Sr.
**Subject:** Reassignment of IOI from BU Position to Non-BU Position

Is this okay to send to SACs and DIOs?

We have been advised by OM and CC that we can no longer simply transfer an IOI bargaining unit employee to a non-bargaining unit SOO or SII position if there is no PCS. NTEU has asserted and CC/OM concur that while this

is a management right the NTEU and the employee have the right to discuss impact and implementation on the employee.  If you have questions regarding this please do not hesitate to contact either Eleanor Loos, Lisa Boykin or me.

James A. Zammillo
Deputy Assistant Director (FO)
Office: 202-927-7953
Cell:   202-302-4607
Fax:   202-927-7756

11/1/2007


## Hawkins, Kevin J.

**From:** Boykin, Lisa T.
**Sent:** Friday, May 25, 2007 2:56 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Here is the FDA CBA Article on Reassignments which I believe indicates management's rights

Ok.

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, May 25, 2007 2:25 PM
**To:** Boykin, Lisa T.
**Subject:** RE: Here is the FDA CBA Article on Reassignments which I believe indicates management's rights

Hilarious, when someone lacks the knowledge why do they keep challenging someone that has been doing this for 10+ years?  Anyway, nicely let her know, this documentation supports my position that this particular management right is negotiable; thus, this is why another agency has negotiated an appropriate arrangement and procedure in their Collective Bargaining Agreement (CBA)!  Hence, we are doing the same in the upcoming CBA☺

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Friday, May 25, 2007 1:35 PM
**To:** Hawkins, Kevin J.
**Subject:** FW: Here is the FDA CBA Article on Reassignments which I believe indicates management's rights

Don't kill the messenger! ☺

Fyi

---

**From:** Ann Marie Hannon [mailto:annmariehannon@yahoo.com]
**Sent:** Wednesday, May 23, 2007 8:32 PM
**To:** Boykin, Lisa T.
**Subject:** Re: Here is the FDA CBA Article on Reassignments which I believe indicates management's rights

**Hello Lisa:**

**Kevin was concerned that I had an issue on whether "reassignments" were within management's rights or not.**

11/2/2007

Here is a weblink that I believe may support my view:
http://205.131.188.12/cyberdocs/Libraries/Default_Library/Common/frameset.aspl

I may be wrong, but at least I feel there is evidence to support my position in terms of the following from the FDA CBA, and if you agree I strongly hope you bring this to Vivian's attention:

# REASSIGNMENTS

## Section 1

The Employer has the right to reassign employees between positions or between work units to accomplish the Agency mission. The Employer's decision to reassign will be a bona fide determination based upon legitimate management considerations. The Employer will give reasonable consideration to assertions by the employee that the reassignment will cause undue personal hardship.

## Section 2

A.    When the Employer decides to fill a position through reassignment, the Employer will make the reassignment opportunity known to qualified employees via a three (3) day advanced notice on the e-mail system, unless it has otherwise announced the vacancy through a merit promotion announcement.

B.    Employees in identical positions, e.g., same title, series, grade, and qualifying experience, may swap positions with one another so long as they do not request moving expenses from the Employer and so long as the Employer does not otherwise have just cause to bar the swap.

## Section 3

The Employer agrees that when an employee has been reassigned due to the abolishment of his or her position, he or she will be given priority consideration if that position is reestablished within one (1) year. To receive priority consideration, the employee must make timely application for the position and clearly indicate that he or she held the position when it was abolished. Priority consideration means that the employee alone must be given bona fide consideration by the selecting official, based on legitimate job related criteria for the position to be filled, before any other candidates are referred for consideration.

## Section 4

Workload and time permitting, the Employer agrees to give the employee who is going to be reassigned advance notice of fourteen (14) calendar days. At the request of the employee to his/her current supervisor, the Employer will confirm the reassignment in writing. Also, the Employer agrees to give the employee a form SF-50 and a copy of the existing position description.

*Ann Marie Hannon*

11/2/2007

*Have a GREAT Day!*

*Ann Marie Hannon*
*Have a GREAT Day!*



**Department of Justice**
**Telecommuting Agreement Form**

*Employee/Supervisor Agreement*



The following constitutes an agreement on the terms and conditions of the telecommuting arrangement between:

Component/Division: _____OHR_____

Employee: _____Kevin Hawkins_____

1. Employee volunteers to telecommute and to adhere to the applicable guidelines and policies. Agency concurs with employee participation and agrees to adhere to the applicable guidelines and policies.

2. Employee agrees to participate for an initial period:

beginning _____N/A_____

and ending _____

This agreement may be extended beyond the initial period if agreeable to the agency and to the employee. In such a case, the terms of this agreement should be reviewed and updated as necessary.

3. Employee's official tour of duty will be

from: _____

to: _____

on the following days: _____

Employee will be working at the alternate worksite

from: _____

to: _____

on the following days: _____

4. Employee's official duty station is: ___ATF Headquarters_____

The alternate worksite is located at: ____Residence_____

Describe in detail the designated work area at the alternate worksite:

Home office

All pay, special salary rates, leave and travel entitlements will be based on the employee's official duty station.

5. Employee's timekeeper will have a copy of the employee's telecommuting schedule. Employee's time and attendance will be recorded as performing official duties at the official duty station.

6. Employees must obtain supervisory approval before taking leave in accordance with established office procedures. By signing this form, employee agrees to follow established procedures for requesting and obtaining approval of leave.

7. Employee will continue to work in pay status while working at alternate worksite. If employee works overtime that has been ordered and approved in advance, he/she will be compensated in accordance with applicable law and regulations. The employee understands that the supervisor will not accept the results of unapproved overtime work and will act vigorously to discourage it. By signing this form, employee agrees that failing to obtain proper approval for overtime work may result in her/his removal from telecommuting or other appropriate action.

8. If employee borrows Government equipment, employee will borrow and protect the Government equipment. Government owned equipment will be serviced and maintained by the Government. If employee provides own equipment, he/she is responsible for servicing and maintaining it.

9. Provided the employee is given at least 24 hours advance notice, the employee agrees to permit inspections by the Government of the employee alternate worksite at periodic intervals during the employee's normal working hours to ensure proper maintenance of Government owned property and worksite conformance with safety standards and other specifications in these guidelines.

Any accident or injury occurring at the alternate worksite must be brought to the immediate attention of the supervisor. Because an employment-related accident sustained by a telecommuting employee will occur outside the premises of the official duty station, the supervisor must investigate all reports immediately following notification.

10. The Government will not be liable for damages to an employee's personal or real property during the course of performance of official duties or while using Government equipment in the employee's residence, except to the extent the Government is held liable by Federal Tort Claims Act claims or claims arising under the Military Personnel and Civilian Employees Claims Act.

11. The Government will not be responsible for operating costs, home maintenance, or any other incidental costs (e.g., utilities) whatsoever, associated with the use of the employee's residence. While telecommuting, the employee does not relinquish any entitlement to reimbursement for authorized expenses incurred while conducting business for the Government, as provided for by

statute and implementing regulations.

12. Employee is covered under Federal Employee's Compensation Act if injured in the course of actually performing official duties at the official duty station or the alternate worksite.

13. Employee will meet with the supervisor to receive assignments and to review completed work as necessary or appropriate.

14. Employee will complete all assigned work according to work procedures mutually agreed upon by the employee and the supervisor and according to guidelines and standards stated in the employee's performance plan.

15. Employee's job performance will be evaluated on criteria and milestones determined by the supervisor and will be consistent with those of non-telecommuting co-workers.

16. The evaluation of the employee's job performance will be based on norms or other criteria derived from past performance, occupational standards, and/or other standards consistent with these guidelines.

17. Employee's most recent performance rating of record must be fully successful or higher.

18. Employee's current performance plan contains performance standards covering work completed at the official duty station as well as work completed at the employee's alternate worksite.

19. Employee will apply approved safeguards to protect Government/agency records from unauthorized disclosure or damage and will comply with the Privacy Act requirements set forth in the Privacy Act of 1974, P.L. 93-579, codified at section 552a, title 5 U.S.C.

20. Employee may terminate participation in telecommuting at any time. Management has the right to remove the employee from a telecommuting arrangement if the employee's performance declines or if the arrangement fails to support organizational needs; such removal must be accomplished in accord with established administrative procedures and union negotiated agreements.

21. Employee agrees to limit her/his performance of her/his officially assigned duties to her/his official duty station or to agency approved alternative worksites. Failure to comply with this provision may result in loss of pay, termination of the telecommuting arrangement, and/or other appropriate disciplinary action.

Supervisor: _____     Date: _5/16/2006_

Employee: _Kevin Hawkins_     Date: _05/15/06_



**Department of Justice
Telecommuting Program**

*Safety Checklist and Employee Certification*

Name: _Kevin Hawkins_

Agency: _ATF_

Location: _____

Phone: _____

The following checklist is designed to assess the overall safety of the alternate worksite. Each participant should read and complete the self-certification safety checklist. Upon completion, the checklist should be signed and dated by the participating employee and immediate supervisor.

The alternate worksite is located at: _____

Describe the designed work area: _____

_____

1.   Is the space free of asbestos containing materials? (YES) NO

2.   If asbestos containing material is present, is it undamaged and in good condition?
     YES  NO

3.   Is the space free of indoor air quality problems? (YES) NO

4.   Is there adequate ventilation for the desired occupancy? (YES) NO

5.   Is the space free of noise hazards (noises in excess of 85 decibels)? (YES) NO

6.   Is there a potable (drinkable) water supply? (YES) NO

7.   Are lavatories available with hot and cold running water? (YES) NO

8.   Are all stairs with four or more steps equipped with handrails? (YES) NO

9.   Are all circuit breakers and/or fuses in the electrical panel labeled as to intended service?
     (YES) NO

10.  Do circuit breakers clearly indicate if they are in the open or closed position? (YES) NO

11.  Is all electrical equipment free of recognized hazards that would cause physical harm
     (frayed wires, bare conductors, loose wires, flexible wires running through walls, exposed

wires fixed to the ceiling)? YES NO

12. Will the building's electrical system permit the grounding of electrical equipment?
YES NO

13. Are aisles, doorways, and corners free of obstructions to permit visibility and movement?
YES NO

14. Are file cabinets and storage closets arranged so drawers and doors do not open into
walkways? YES NO

15. Do chairs have any loose casters (wheels)? Are the rungs and legs of chairs sturdy?
YES NO

16. Is the work area overly furnished? YES NO

17. Are the phone lines, electrical cords, and extension wires secured under a desk or
alongside a baseboard? YES NO

18. Is the office space neat, clean and free of excessive amounts of combustibles? YES NO

19. Are floor surfaces clean, dry, level, and free of worn or frayed seams? YES NO

20. Are carpets well-secured to the floor and free of frayed or worn seams? YES NO

Employee signature: _Kevin Hawkins_          Date: _05/16/06_

Supervisor signature: _Daniel Clark_          Date: _5/16/2006_

*SPECIAL NOTE: Supervisors are encouraged to conduct an onsite inspection for any employee
giving five or more "No" answers. Employees are responsible for informing their supervisors of
any significant change.*

**Department of Justice**
**Telecommuting Program**

*Employee/Supervisor Checklist*



Name of Employee:  _Kevin Hawkins_

Name of Supervisor:  _____

The following checklist is designed to ensure that your employee is properly oriented to the policies and procedures for telecommuting. *NOTE: Questions 2, 3, and 4 may not be applicable. If this is the case, write non-applicable or N/A next to the statement.*

1.  Employee has been provided with a schedule for hours/days at remote work site.

2.  Equipment has been issued to the employee and has been documented by the agency.

|  | Issued | Documented Date |
|---|---|---|
| Computer | _____ | _____ |
| Modem | _____ | _____ |
| Fax machine | _____ | _____ |
| Telephone | _____ | _____ |
| Desk | _____ | _____ |
| Chair | _____ | _____ |
| Other | _____ | _____ |

3.  Policies and procedures for care of equipment issued by the agency have been explained and are clearly understood.

4.  Policies and procedures covering classified, secure, or privacy act data have been discussed and are clearly understood.

5.  Requirements for an adequate and safe office space and/or area have been discussed, and the employee certifies those requirements are met.

6.  Performance expectations have been discussed and are clearly understood.

7.  Employee understands that the supervisor may terminate employee participation at any time, in accordance with negotiated agreement, if applicable.

Employee signature: _Kevin Hawkins_   Date: 05/15/06

Supervisor signature: _Daniel Clark_   Date: 05/16/2006

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Friday, June 01, 2007 2:34 PM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: Telework |
| **Sensitivity:** | Confidential |

Indicate that in webTA.

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, June 01, 2007 2:31 PM
**To:** Boykin, Lisa T.
**Subject:** RE: Telework
**Sensitivity:** Confidential

Per your statement below, "I am approving you to work from an alternate work site today," thus, that is my choice.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Friday, June 01, 2007 12:59 PM
**To:** Boykin, Lisa T.; Hawkins, Kevin J.
**Subject:** RE: Telework
**Sensitivity:** Confidential

Kevin based on our conversation today currently you are teleworking without an approved telework agreement. Based on what appears to be miscommunication between you and Wanda, I am approving you to work from an alternate work site today. You mentioned that you are sick and asked to take sick leave. If you would like to take sick leave that is still an option, just let me know which you would like (either telework or sick leave).

Lisa

---

**From:** Boykin, Lisa T.
**Sent:** Friday, June 01, 2007 11:41 AM
**To:** Hawkins, Kevin J.
**Subject:** RE: Telework
**Sensitivity:** Confidential

I just spoke with Wanda, call me.

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, June 01, 2007 11:09 AM

11/2/2007

**To:** Boykin, Lisa T.
**Subject:** FW: Telework
**Importance:** High
**Sensitivity:** Confidential

In response to your email this morning, I didn't Telework yesterday; a last minute MEO Meeting and other issues had me being the sole survivor in the office☺.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, May 31, 2007 11:40 AM
**To:** Gill, Wanda J.
**Cc:** Boykin, Lisa T.
**Subject:** Telework
**Sensitivity:** Confidential

Good Morning,

I have been experiencing problems with my foot and now my leg as well; I am waiting on a call from my doctor and would like to Telework the rest of the day if I get an appointment today.

In addition, I like to Telework tomorrow in order to finalize the contract for DOJ submission and work on Contract Training Points for the upcoming contract training.

Thank you,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

# Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Monday, June 04, 2007 9:05 AM |
| **To:** | Ferguson-Russ, Robynn F. |
| **Subject:** | FW: Informal EEO Mixed Complaint |
| **Importance:** | High |
| **Sensitivity:** | Private |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | Ferguson-Russ, Robynn F. Delivered: 6/4/2007 9:05 AM Read: 6/5/2007 7:59 AM | | |

I was informed by my EEO Counselor to forward this email to your attention.  In turn, you would accept the claims as an addition to my current EEO complaint or assign a counselor for a separate EEO complaint.

Thank you,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, June 01, 2007 1:31 PM
**To:** Torres, Anthony N.
**Subject:** RE: Informal EEO Mixed Complaint
**Importance:** High
**Sensitivity:** Private

I hereby add the following charges to my EEO Complaint:

1) Escalated Harassment due to my EEO filing (Hostile Work Environment);
2) Being held to a higher standard regarding Leave and Telework;
3) Being assigned tasks that are not in my PD *or Critical Elements & Standards;*
4) Not receiving a PWP for this rating cycle; *however, given a mid-year;*
5) Performing work of a GS-14 while being paid as a GS-13;
   *6) Employees being paid Pay-Demo while minorities are misclassified in terms of grade; (Will be requesting an OPM audit of all GS-13-15 and Pay Demo positions within OHR)*
   *7) Only females given an opportunity to be Acting Chief, Employee & Labor Relations Branch and Chief, Employee & Labor Relations Branch;*
   *8) Pre-Selection of a female into the 120-Day Detail of Acting Chief, Employee & Labor Relations Branch;*
   *9) Setting up an unfair advantage in the Supervisory Human Resources Specialist (Employee Relations) Announcement # M07-086-EW, by detailing one female GS-13 into a 120-Day Detail of Acting Chief, instead of giving all MELRB GS-14 eligible's an equal detail prior to the announcement; (Will be filing a MSPB Complaint); and*
   *10) Setting up an unfair advantage in the Supervisory Human Resources Specialist (Employee Relations) Announcement #M07-086-EW, by gearing the KSAs to an Employee Relations Series while the Branch is an  Employee & Labor Relations Branch. (Will be included in the MSPB filing)*

In addition, add to my EEO remedy, an immediate reassignment from under OM's current chain of command, due

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Friday, June 01, 2007 4:47 PM |
| **To:** | Filler, Diane E.; Hawkins, Kevin J. |
| **Subject:** | RE: WV UPDATE & VERBAL AGREEMENT BETWEEN ATF & NTEU |
| **Sensitivity:** | Confidential |

Ok, based on Kevin's latest status report, he has been working with counsel and has spoken with the FLRA representative and he stated that the representative believes that the filing to be frivolous.

Kevin, please provide a copy of the ULP to Diane.

Thanks.

---

**From:** Filler, Diane E.
**Sent:** Friday, June 01, 2007 4:34 PM
**To:** Hawkins, Kevin J.; Boykin, Lisa T.
**Subject:** FW: WV UPDATE & VERBAL AGREEMENT BETWEEN ATF & NTEU
**Importance:** High
**Sensitivity:** Confidential

Kevin and Lisa:
I will need more information on this topic. Kevin began to brief me but we had a meeting to attend and the time and information was limited. First -- I understand there has been a ULP filed. I would like to see a copy and be able to share it with the AD and DAD. Second -- I would like to have some idea exactly where we are with this issue , please provide some background (have we formally noticed the union, what conversations have been conducted, what precipitated the ULP, who is involved, what has happened).

thanks
diane

---

**From:** Oates, Helen M.
**Sent:** Thursday, May 31, 2007 12:17 PM
**To:** Filler, Diane E.
**Subject:** FW: WV UPDATE & VERBAL AGREEMENT BETWEEN ATF & NTEU
**Importance:** High
**Sensitivity:** Confidential

fyi

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, May 31, 2007 11:27 AM
**To:** Stucko, Audrey M.
**Cc:** Mendoza, B. Scott; Power, Patricia; Randolph, Leslie; Boykin, Lisa T.; Oates, Helen M.; Gill, Wanda J.
**Subject:** FW: WV UPDATE & VERBAL AGREEMENT BETWEEN ATF & NTEU
**Importance:** High
**Sensitivity:** Confidential

Good Morning,

11/2/2007

NTEU's emails demonstrates an unwillingness to resolve these matters; I advise management to allow Impact & Implementation bargaining scheduled for June 11th-12th to be the next management action in regards to the Transfer of Function. (No Field Trip Email Updates, Updates Regarding the Bldg., etc.)

Thank you,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Sims, Alfred C.
**Sent:** Thursday, May 31, 2007 11:09 AM
**To:** Hawkins, Kevin J.
**Cc:** Alexander, Sylvia R.; Stucko, Audrey M.; Mendoza, B. Scott; Power, Patricia; Barnwell-Burton, Robin G.; Alicia Payne; Meggs, Yolanda G.
**Subject:** RE: WV UPDATE & VERBAL AGREEMENT BETWEEN ATF & NTEU
**Importance:** High
**Sensitivity:** Confidential

Mr. Hawkins,
During our 05/30/2007 conversation, I gave no response indicating that the ULP should be canceled, delayed, or placed in abeyance. Furthermore, I gave no response indicating that the below e-mail should be distributed to Bargaining Unit Employees. During the conversation, I attempted to obtained information and understand about the reasoning for the below e-mail. My conversation with you on 05/30/2007 was in "Good Faith" as prescribed in the B-ATF/NTEU Agreement.

On 05/30/2007, I only agreed to return a call to clarify that no one with NTEU (Ms. Alexander or I) advised you to proceed with the matter causing the ULP to be filed (See the attached). Furthermore, I stated that NTEU should not give a verbal agreement during negotiations, but rather, have written conformation with signatures of all parties involved, before finalizing an agreement.

**Thank you**

---

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, May 30, 2007 4:59 PM
**To:** Sims, Alfred C.
**Cc:** Alexander, Sylvia R.; Stucko, Audrey M.; Mendoza, B. Scott; Power, Patricia
**Subject:** RE: WV UPDATE & VERBAL AGREEMENT BETWEEN ATF & NTEU
**Importance:** High
**Sensitivity:** Confidential

Alfred, per our conversation this evening, Ms. Alexander and you will call me tomorrow in order to attempt to resolve this matter and move forward.

I look forward to the call.

Thank you,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*

11/2/2007

(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

---

**From:** Sims, Alfred C.
**Sent:** Wednesday, May 30, 2007 4:03 PM
**To:** Hawkins, Kevin J.
**Cc:** Sims, Alfred C.
**Subject:** FW: WV UPDATE & VERBAL AGREEMENT BETWEEN ATF & NTEU
**Importance:** High
**Sensitivity:** Confidential

Good afternoon Mr. Hawkins,
After studying your e-mail, I developed four questions. These questions are as follows: 1.) Since a ULP was filed, should we discuss this matter? 2.) Should we wait for a decision form the FLRA before discussing this matter? 3.) Would there be a conflict in interest discussing this matter? 4.) Should the FLRA Investigator be apart of this discussions? Please, Mr. Hawkins, it is not my intent to do anything unethical. I am not stating or implying that you are requesting anything unethical. I am in a query, and I am only inquiring as to whether we should discuss this matter. In addition, I am trying to understand the purpose of your focus on the ULP. Please advise, I am reasonable and willing to listen.

If you would like to discuss this matter by phone, contact me at 404-417-2761.

Thank you

---

**From:** Sims, Alfred C.
**Sent:** Wednesday, May 30, 2007 10:28 AM
**To:** Hawkins, Kevin J.; Alexander, Sylvia R.
**Cc:** Barnwell-Burton, Robin G.; 'Alicia Payne'; Meggs, Yolanda G.; Sims, Alfred C.
**Subject:** RE: WV UPDATE & VERBAL AGREEMENT BETWEEN ATF & NTEU
**Importance:** High
**Sensitivity:** Confidential

Good Morning Mr. Hawkins,
I hope that your morning is going well. I am in receipt of this e-mail. Please allow me a few days to read and analyze the content of this e-mail. **No action should be taken on this issue until I provide a response.** I will provide a response no later than COB, Tuesday, June 4, 2007. I will follow up my e-mail response with a telephone Call, to verbally confirm my response.

Thank you and God bless.

---

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, May 30, 2007 10:17 AM
**To:** Alexander, Sylvia R.; Sims, Alfred C.
**Subject:** WV UPDATE & VERBAL AGREEMENT BETWEEN ATF & NTEU
**Importance:** High
**Sensitivity:** Confidential

Good Morning Sylvia/Alfred,

Per your request and our conversations, ATF would like to disseminate the email below to the employees who voluntarily elected to participate in the West Virginia Field Trips, and **in accordance with our verbal agreement the last paragraph was added:**

    1) EMAIL UPDATE - This email will only go to those employees who have signed up for the tour, with a

11/2/2007

copy to the supervisors.

### WEST VIRGINIA TOUR ASSIGNMENTS

You indicated that you are interested in official travel to Martinsburg, West Virginia for a tour of the ATF Martinsburg facility and a familiarization visit of the local real estate market. Your request to participate in this tour is approved, and preliminary instructions are being provided below. Final travel instructions, to include the name of the airline contract carrier, flight numbers and times, lodging contact information, and an agenda for the day and half in Martinsburg will be forthcoming once accommodations are booked.

Travel Dates.  Your travel dates will be **June 26-28, 2007.** FFLC Chief Power and Assistant Chief Mitchell are the trip coordinators.

Spouse Travel.  If your spouse will accompany you he/she will be responsible for his/her own travel expenses, except for lodging and ground transportation in West Virginia, which are being paid for by ATF for the entire tour group.

Travel Expenses.  Airfare, lodging, and West Virginia ground transportation costs will be paid directly by ATF; travelers will not be claiming reimbursement of these expenses. Your out of pocket costs during the trip are meals and transportation to and from the Atlanta airport, which will be reimbursed via travel voucher.  The daily per diem rate in Martinsburg is $60 on Wednesday and $45 daily on Tuesday and Thursday, which are the travel days.  Upon completion of travel, employees must submit travel vouchers within 5 business days.

Should you require further information or need to change/cancel your participation for any reason, please contact Assistant Chief Diana Mitchell as soon as possible.

**In agreement between NTEU and ATF management, we wish to clarify the following point:  Attending the tour will not bind BARGAINING UNIT EMPLOYEES (BUEs) to transfer to West Virginia and BUE tour participants who opt not to transfer to West Virginia will not have to repay the cost of the tour.**

## 2) Twelve (12) BUE employees tour participants:

Lee Brown
Elaine Childs
Gary Campbell
Robin Coleman
Belinda Crutcher
Jackie Gay
Willie Geter
Kathy Johnson
Yolanda Meggs
Sybil Ownbey
Yolanda Pitters
Alfred Sims

**As soon as you receive this email give me a call so we can discuss this matter and the ULP; management would like to forward this information to the employees ASAP.**

**Thank you,**

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

11/2/2007

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Thursday, June 14, 2007 5:08 PM |
| **To:** | Oates, Helen M. |
| **Cc:** | Hawkins, Kevin J. |
| **Subject:** | RE: contract |

Yes, by way of this e-mail reply, I will ask Kevin to provide you and Diane a copy in the morning. I know that there is a confidentiality agreement that has to be signed, so I will ask him to provide a copy of that as well.

Thanks.

Thanks Kevin!

---

**From:** Oates, Helen M.
**Sent:** Thursday, June 14, 2007 3:05 PM
**To:** Boykin, Lisa T.
**Subject:** contract

Would it be appropriate for me to have a copy of the entire proposed contract so that I can check a couple of things against the CFR?

**Helen M. Oates**

**Assistant HR Officer**

**(202)927-7946**

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Friday, June 15, 2007 3:16 PM |
| **To:** | Filler, Diane E. |
| **Cc:** | Oates, Helen M.; Hawkins, Kevin J. |
| **Subject:** | FW: Online SF-50 Communication |
| **Sensitivity:** | Confidential |
| **Attachments:** | SF50 Distribution DRAFT.doc; SF-50 View and Print.doc; SF 50 Brochure MR4_ATFE.doc |

Diane, this is what I received from Ann Marie. Only a notification to Treasury was made, not to DOJ, I am wrong about the party to whom the notice should have gone?

I will ask Kevin to respond to the questions below.

Thank you;

---

**From:** Hannon, Ann Marie
**Sent:** Friday, June 15, 2007 3:02 PM
**To:** Boykin, Lisa T.
**Cc:** Clark, Daniel J.
**Subject:** FW: Online SF-50 Communication
**Sensitivity:** Confidential

Diane only recently approved it. So, based on the rollout date and since it's approved, would you be able to estimate of when we will know what, if anything, Kevin needs to do with regard to NTEU?

Yes, Daniel and I agree that Kevin does not have to notify the National NTEU as that was done by Treasury.

However, our concern is if Kevin can determine quickly whether he needs to do anything at all in terms of notifying the local NTEU (s).

If he does, and even if it would be simply a courtesy notice we don't want to publish a Broadcast without that being done.

So, again, it would be very helpful to know as soon as possible whether we need to wait for anything may be done for the local setting, or whether we can still move forward with the broadcast regardless.

Your response will be eagerly awaited.

*Ann Marie Hannon*
*Chief, Policy and Human Capital Planning Branch*
*Human Resources Division, Office of Management*
*Phone: 202-648-9081*
*Fax: 202-648-9005*

---

**From:** Clark, Daniel J.
**Sent:** Friday, June 15, 2007 2:52 PM
**To:** Hawkins, Kevin J.
**Cc:** Boykin, Lisa T.; Hannon, Ann Marie
**Subject:** RE: Online SF-50 Communication
**Sensitivity:** Confidential

FYI...

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, June 15, 2007 2:49 PM
**To:** Clark, Daniel J.
**Cc:** Boykin, Lisa T.
**Subject:** RE: Online SF-50 Communication
**Sensitivity:** Confidential

Daniel,

If you don't mind, can you send me the one page fact sheet on the upcoming MR4 Online SF-50 functionality and the longer version which contains additional information that Ms. Ann Martin is referencing in here email at the bottom of this chain?

Thank you,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Clark, Daniel J.
**Sent:** Thursday, May 17, 2007 11:20 AM
**To:** Hawkins, Kevin J.; Boykin, Lisa T.; Hannon, Ann Marie
**Subject:** RE: Online SF-50 Communication
**Sensitivity:** Confidential

I am the "technical lead". I am not sure who Judy would name as the functional lead from her office. The dates etc should be in the packet of information. If you have specific questions beyond that, I'll be glad to call. When is a good time to talk? Also, please note that Diane has not been finally briefed on this yet, so we need to wait on her final "go ahead". I expect that to come at the meeting on Monday.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, May 17, 2007 11:16 AM
**To:** Boykin, Lisa T.; Hannon, Ann Marie
**Cc:** Clark, Daniel J.
**Subject:** RE: Online SF-50 Communication
**Sensitivity:** Confidential

I have no problem noticing NTEU; however, I am going to need some information. For example, the contact person, effective dates of this initiative, etc.

Daniel if you are the lead on this give me a call.

Thank you,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*

11/2/2007

(C) 202-441-1151
Kevin.Hawkins@ATF.gov

**From:** Boykin, Lisa T.
**Sent:** Thursday, May 17, 2007 10:52 AM
**To:** Hannon, Ann Marie
**Cc:** Clark, Daniel J.; Hawkins, Kevin J.
**Subject:** RE: Online SF-50 Communication

Thanks again Ann Marie. I will also forward this to Kevin for handling. Lisa

---

**From:** Hannon, Ann Marie
**Sent:** Monday, May 14, 2007 11:02 AM
**To:** Boykin, Lisa T.
**Cc:** Clark, Daniel J.
**Subject:** FW: Online SF-50 Communication
**Importance:** High

Hello Lisa:

The reason why the attachment Daniel sent may be useful is that it provided some sample communications to use for ATF advising NTEU about the SF-50 employee notification changes, as well as some suggested communications to employees.

---

**From:** Clark, Daniel J.
**Sent:** Monday, May 14, 2007 10:59 AM
**To:** Boykin, Lisa T.
**Cc:** Hannon, Ann Marie
**Subject:** FW: Online SF-50 Communication
**Importance:** High

You may also find this document helpful in understanding the SF-50 online process.

---

**From:** Anne.Martin@do.treas.gov [mailto:Anne.Martin@do.treas.gov]
**Sent:** Thursday, May 10, 2007 4:59 PM
**To:** MingoK@oig.treas.gov; Pat.Hoffman@usmint.treas.gov; MaryD.Clark@irs.gov; Debbie.A.Decaigney@irs.gov; Jackie.M.Smith@irs.gov; Jennifer.A.Johnson@irs.gov; Kimberly.S.Maupin@irs.gov; Rhonda.Wilkins@fms.treas.gov; Tracy.Amarillas@do.treas.gov; richard.anto@occ.treas.gov; Beverly.Boykin@do.treas.gov; Brian.Brady@do.treas.gov; Denise.Brown@do.treas.gov; Kathleen.Caton@do.treas.gov; Patty.Hemrock@do.treas.gov; Frances.Kassinger@do.treas.gov; dianna.kave@bpd.treas.gov; Jacqueline.T.Lawson@irscounsel.treas.gov; Donna.Leach@tigta.treas.gov; Jade.Mariano@do.treas.gov; Anne.Martin@do.treas.gov; Konnie.K.Melia@irscounsel.treas.gov; kim.moreland@bpd.treas.gov; Peter.Pallesen@do.treas.gov; Cynthia.Parker@fms.treas.gov; Kim.Pridgen@do.treas.gov; Barbara.Richburg@do.treas.gov; Schmitt, Grace M. (TTB); nancy.smith@bpd.treas.gov; carolyn.Swinson@bep.treas.gov; Pat.Thomas@do.treas.gov; rena.lane@usss.dhs.gov; charlene_paige@hud.gov; denis_m._mcgurin@hud.gov; Hannon, Ann Marie; charles.tozier@usss.dhs.gov; Clark, Daniel J.
**Cc:** Peter.Pallesen@do.treas.gov; Kim.Pridgen@do.treas.gov
**Subject:** Online SF-50 Communication

Earlier, we provided you a one page fact sheet on the upcoming MR4 Online SF-50 functionality. I have attached a longer version which contains additional information for your use, including a sample of communication to your

employees.

If you have any questions, or need additional information, please contact me.

Anne

*Elizabeth Anne Martin*
**Department of Treasury**
**Office of the Chief Information Office**
**HR Connect Program Office**
**202-622-1908 (phone)**
**202-622-0149 (fax)**
**"HR Connect: Connecting people, performance and technology"**

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Monday, June 18, 2007 9:55 AM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | FW: Online SF-50 and local NTEU courtesy note |

Kevin, your comments before you send to all.

---

**From:** Filler, Diane E.
**Sent:** Monday, June 18, 2007 8:46 AM
**To:** Hannon, Ann Marie; Boykin, Lisa T.
**Cc:** Hannon, Ann Marie
**Subject:** FW: Online SF-50 and local NTEU courtesy note

---

**From:** Hannon, Ann Marie
**Sent:** Monday, June 18, 2007 8:39 AM
**To:** Filler, Diane E.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

Here is the information I received from Anne Martin that shows how Treasury notified the NTEU and this language may be useful since NTEU had no comment to Treasury on this:

"In accordance with 5 U.S.C. § 7113, I would like to advise you of the Department of the Treasury's plan to make online SF-50s available to employees throughout the Department effective June 25, 20 07. This is an interim step toward the adoption of the eOPF, and will produce some cost saving benefits.

In lieu of mailing SF-50s to employees' home addresses, employees will receive an email notice advising that a personnel action has been taken. Employees will be able to access HR Connect to view and print a copy of the SF-50. Employees who do not have an email address will continue to have copies of their SF-50s mailed to their home address.

This interim measure will begin building a data base that will be easily converted to the eOPF format when the Department moves to full implementation of the eOPF. The Department will additionally realize some cost reductions due to decreased mailing expenses."

"The rest of the memo was standard text used in the notification process. "

*Ann Marie Hannon*
*Chief, Policy and Human Capital Planning Branch*
*Human Resources Division, Office of Management*
*Phone: 202-648-9081*
*Fax: 202-648-9005*

---

**From:** Filler, Diane E.
**Sent:** Monday, June 18, 2007 7:48 AM
**To:** Hannon, Ann Marie

11/2/2007

## Hawkins, Kevin J.

**From:**   Boykin, Lisa T.
**Sent:**   Monday, June 18, 2007 2:30 PM
**To:**   Hawkins, Kevin J.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

Thanks Kevin.

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, June 18, 2007 1:50 PM
**To:** Boykin, Lisa T.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

The notice has already been done and sent.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Monday, June 18, 2007 1:21 PM
**To:** Hawkins, Kevin J.
**Subject:** FW: Online SF-50 and local NTEU courtesy note

Fyi and necessary action.

---

**From:** Hannon, Ann Marie
**Sent:** Monday, June 18, 2007 12:56 PM
**To:** Boykin, Lisa T.; Clark, Daniel J.; Filler, Diane E.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

Thanks, Lisa....PHCPB appreciates whatever you can do.

*Ann Marie Hannon*
*Chief, Policy and Human Capital Planning Branch*
*Human Resources Division, Office of Management*
*Phone:  202-648-9081*
*Fax:  202-648-9005*

---

**From:** Boykin, Lisa T.
**Sent:** Monday, June 18, 2007 12:48 PM
**To:** Hannon, Ann Marie; Clark, Daniel J.; Filler, Diane E.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

It depends on how NTEU see's this "change" as affecting their employees as to whether or not they see it as a benefit and will move on this right away.  We will be sure to monitor this notice closely.

**From:** Hannon, Ann Marie
**Sent:** Monday, June 18, 2007 11:33 AM
**To:** Clark, Daniel J.; Filler, Diane E.; Boykin, Lisa T.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

Then my other suggestion…i.e., giving a suggestion to NTEU about the imperativeness of this.

*Ann Marie Hannon*
*Chief, Policy and Human Capital Planning Branch*
*Human Resources Division, Office of Management*
*Phone:  202-648-9081*
*Fax:  202-648-9005*

**From:** Clark, Daniel J.
**Sent:** Monday, June 18, 2007 11:31 AM
**To:** Filler, Diane E.; Hannon, Ann Marie; Boykin, Lisa T.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

Correct – It is all or nothing.  We check a box to turn to it on for ALL or we do not turn it on.

**From:** Filler, Diane E.
**Sent:** Monday, June 18, 2007 11:27 AM
**To:** Hannon, Ann Marie; Boykin, Lisa T.
**Cc:** Clark, Daniel J.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

I am not sure we can implement for NBU vs.BU -- itsn't it an all or nothing -- Daniel?

**From:** Hannon, Ann Marie
**Sent:** Monday, June 18, 2007 11:25 AM
**To:** Filler, Diane E.; Boykin, Lisa T.
**Cc:** Hawkins, Kevin J.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

I personally agree, particularly with regard to your comment about referencing their no comment to Treasury.

Also, it may be useful to add that it would benefit their members to provide an approval prior to simply allowing the 21 days to elapse.

Technically, I believe nothing is keeping us from implementing this right away for NBUE since only individual employees are involved, and by not implementing now we are holding up implementation for 4000 employees on the basis of noticing the union for only 1000 (approx).

Realistically though the rationale in the notice to entice earlier approval might be that, i.e., it would be beneficial to union members who are ATF employees as well as all other ATF employees.

*Ann Marie Hannon*
*Chief, Policy and Human Capital Planning Branch*
*Human Resources Division, Office of Management*
*Phone:  202-648-9081*
*Fax:  202-648-9005*

**From:** Filler, Diane E.
**Sent:** Monday, June 18, 2007 11:16 AM

**To:** Boykin, Lisa T.; Hannon, Ann Marie
**Cc:** Hannon, Ann Marie; Hawkins, Kevin J.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

Now that I've seen the actual language...what jumps out at me is the statement "Making it available to employees throughout the department of Treasury"..we are not treasury. I think under any circumstance we will be required to provide similar notice. Perhaps we can reference the treasury notice and reference their non-reesponse in some way. it would appear a ;notice is necessary. Kevin will need to move on this quickly as the feautre is fast approaching.

---

**From:** Boykin, Lisa T.
**Sent:** Monday, June 18, 2007 10:43 AM
**To:** Filler, Diane E.; Hannon, Ann Marie
**Cc:** Hannon, Ann Marie; Hawkins, Kevin J.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

The 5 U.S.C reference speaks to any agency wherein no labor organization has been accorded exclusive recognition. In our case, NTEU is the exclusive representative and therefore in accordance with this regulation inform the union.

Let's see what the union has to say....

---

**From:** Filler, Diane E.
**Sent:** Monday, June 18, 2007 8:46 AM
**To:** Hannon, Ann Marie; Boykin, Lisa T.
**Cc:** Hannon, Ann Marie
**Subject:** FW: Online SF-50 and local NTEU courtesy note

---

**From:** Hannon, Ann Marie
**Sent:** Monday, June 18, 2007 8:39 AM
**To:** Filler, Diane E.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

Here is the information I received from Anne Martin that shows how Treasury notified the NTEU and this language may be useful since NTEU had no comment to Treasury on this:

"In accordance with 5 U.S.C. § 7113, I would like to advise you of the Department of the Treasury's plan to make online SF-50s available to employees throughout the Department effective June 25, 20 07. This is an interim step toward the adoption of the eOPF, and will produce some cost saving benefits.

In lieu of mailing SF-50s to employees' home addresses, employees will receive an email notice advising that a personnel action has been taken. Employees will be able to access HR Connect to view and print a copy of the SF-50. Employees who do not have an email address will continue to have copies of their SF-50s mailed to their home address.

This interim measure will begin building a data base that will be easily converted to the eOPF format when the Department moves to full implementation of the eOPF. The Department will additionally realize some cost reductions due to decreased mailing expenses."

11/2/2007

"The rest of the memo was standard text used in the notification process. "

*Ann Marie Hannon*
*Chief, Policy and Human Capital Planning Branch*
*Human Resources Division, Office of Management*
*Phone: 202-648-9081*
*Fax: 202-648-9005*

---

**From:** Filler, Diane E.
**Sent:** Monday, June 18, 2007 7:48 AM
**To:** Hannon, Ann Marie
**Subject:** RE: Online SF-50 and local NTEU courtesy note

Thanks, let me know what you get.

---

**From:** Hannon, Ann Marie
**Sent:** Friday, June 15, 2007 5:56 PM
**To:** Filler, Diane E.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

Hello Diane:

I've sent an email to Anne Martin at Treasury asking that same question (per your email below).

If she can I'm sure she'll do everything she can to provide a copy of the notice which Treasury sent to NTEU, so, in that way, we can determine whether a notice from ATF to National would be redundant.

I'll let you know as soon as I hear further from Anne Martin.  Hope you have a nice weekend.

Ann Marie

---

**From:** Filler, Diane E.
**Sent:** Friday, June 15, 2007 5:08 PM
**To:** Boykin, Lisa T.; Oates, Helen M.
**Cc:** Hannon, Ann Marie; Clark, Daniel J.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

Lisa -- why would we give National courtesy notice?  theyv'e beennoticed?  I would think the only courtesy would be the chap presidents

---

**From:** Boykin, Lisa T.
**Sent:** Friday, June 15, 2007 2:13 PM
**To:** Oates, Helen M.
**Cc:** Hannon, Ann Marie; Clark, Daniel J.; Filler, Diane E.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

Based on the information provided to Kevin from Policy, it appears that this functionality is an OPM mandate and not an ATF initiative.  Once Kevin verifies that, I will let you know if any notice [courtesy or required] is necessary.

Thanks.

---

11/2/2007

**From:** Oates, Helen M.
**Sent:** Friday, June 15, 2007 1:58 PM
**To:** Boykin, Lisa T.
**Cc:** Hannon, Ann Marie; Clark, Daniel J.; Filler, Diane E.
**Subject:** FW: Online SF-50 and local NTEU courtesy note

Can you give us an update please?

**From:** Clark, Daniel J.
**Sent:** Friday, June 15, 2007 1:57 PM
**To:** Hannon, Ann Marie
**Cc:** Oates, Helen M.
**Subject:** RE: Online SF-50 and local NTEU courtesy note

They have not informed me of their plans.

**From:** Hannon, Ann Marie
**Sent:** Friday, June 15, 2007 1:56 PM
**To:** Clark, Daniel J.
**Cc:** Oates, Helen M.
**Subject:** Online SF-50 and local NTEU courtesy note

Hello Daniel:

Just wanted to follow up on this...I believe Lisa and
Kevin are aware of the online SF-50 functionality and
plan to provide the local NTEU with a courtesy notice. However, I wanted to check with you to be sure.

*Ann Marie Hannon*
*Chief, Policy and Human Capital Planning Branch*
*Human Resources Division, Office of Management*
*Phone: 202-648-9081*
*Fax: 202-648-9005*

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Monday, June 25, 2007 10:28 AM |
| **To:** | Hawkins, Kevin J. |
| **Cc:** | Hall-Evans, Robin E. |
| **Subject:** | RE: Initialed Off Articles |

Thanks for the reply, but not sure I completely understand, let's talk this morning.   Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, June 25, 2007 9:36 AM
**To:** Boykin, Lisa T.
**Cc:** Hall-Evans, Robin E.
**Subject:** RE: Initialed Off Articles

Good Morning,

Vivian is having Bernadette Smith finish formatting the remaining articles (Timeline should be completed mid-week?).  As far as the notes, I would like to compare the bargaining book to the electronic contract and input/review all of the team's notes. (Timeline for notes ASAP)  I will complete a final review of the electronic contact that will be sent to DOJ after the above is completed. (Internal timeline, probably a day, external – another meeting or conference call with NTEU)

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Monday, June 25, 2007 9:27 AM
**To:** Hall-Evans, Robin E.; Hawkins, Kevin J.
**Subject:** RE: Initialed Off Articles

Kevin, what is the timeline to forward the articles to DOJ and what significance are the notes with regards to sending the articles to DOJ, what is the time line to complete the notes?

Thanks

---

**From:** Hall-Evans, Robin E.
**Sent:** Monday, June 25, 2007 9:21 AM
**To:** Hawkins, Kevin J.
**Cc:** Boykin, Lisa T.
**Subject:** RE: Initialed Off Articles

OK, I just need to know how much time I have to get my notes typed.

---

11/2/2007

**From:** Hawkins, Kevin J.
**Sent:** Monday, June 25, 2007 8:30 AM
**To:** Hall-Evans, Robin E.
**Cc:** Boykin, Lisa T.
**Subject:** RE: Initialed Off Articles

As soon as the remaining articles are formatted and added to the latest electronic contract.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hall-Evans, Robin E.
**Sent:** Monday, June 25, 2007 8:18 AM
**To:** Hawkins, Kevin J.
**Cc:** Boykin, Lisa T.
**Subject:** RE: Initialed Off Articles

I still have notes to type.  When are you sending the contract to DOJ?

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, June 22, 2007 7:46 AM
**To:** Hall-Evans, Robin E.
**Cc:** Boykin, Lisa T.
**Subject:** RE: Initialed Off Articles
**Importance:** High

Good Morning,

Just checking on the status, I would like to incorporate the articles into the e-contract.  FYI – I will be requesting from all of the team members their negotiation session notes for the bargaining book.

In closing, I will need a completed bargaining book before the contract is sent to DOJ.

Thank you for your assistance in the process.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, June 21, 2007 7:50 AM
**To:** Hall-Evans, Robin E.
**Subject:** Initialed Off Articles
**Importance:** High

Good Morning,

11/2/2007



Please make a copy of the signed-off articles yesterday for the bargaining book and send me the originals.

Thank you,

Kevin J. Hawkins
National Negotiator, ATF
Human Resources Division
Management/Employee and Labor Relations Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

Ex HiBi T #5

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Tuesday, June 26, 2007 12:00 PM |
| **To:** | Hawkins, Kevin J. |
| **Cc:** | Oates, Helen M. |
| **Subject:** | FW: revised broadcast |
| **Importance:** | High |

Kevin, please draft a reply to the union based on our discussion and send it to me before we send it to them. I need to ask Ann Marie if we have captured all of the lingo necessary as it relates to the MR4-HR Connect upgrade, that e-SF-50 and e-performance e-mails to employees were inadvertent.

Thanks.

Lisa

---

**From:** Clark, Daniel J.
**Sent:** Tuesday, June 26, 2007 9:56 AM
**To:** Boykin, Lisa T.
**Subject:** FW: revised broadcast
**Importance:** High

Revised broadcast per Vivian wanting to make the announcement more upbeat and positive.

---

**From:** Clark, Daniel J.
**Sent:** Monday, June 25, 2007 1:43 PM
**To:** Hannon, Ann Marie
**Subject:** revised broadcast
**Importance:** High

Vivian felt the broadcast was too negative. She felt we should be playing up the benefits of the MR4 release. So I have recast the message to make it more upbeat. See below:

The HRConnect system was upgraded over the past weekend, June 24, 2007, to provide additional functionality to the Bureau. Much of new the functionality is provided in the HR Division itself and will not be visible to you, the employee. However, a couple of significant changes should be noted.

1) It is the stated goal of the agency to move to a paperless performance evaluation system. Much progress was made in making that a reality with this recent upgrade of functionality. You may have received an automated message from HR Connect over the weekend stating: "You have been assigned the ePerformance-Employee role," or similar message. This is part of that development process. It means we are rapidly moving forward. It does not, however, change any processes or procedures for the current cycle. Except for GS/GS-1811 employees who already have used the HR Connect system for their last year's and current evaluations you should continue to use your existing paper evaluation.

2) Mangers and their proxies will now see a new feature for all actions involving position changes, such as reassignments, details, and promotions. With this new functionality, the manager or

11/2/2007

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Tuesday, June 26, 2007 2:09 PM |
| **To:** | Boykin, Lisa T. |
| **Subject:** | RE: hr connect |

**Tracking:** | **Recipient** | **Delivery** | **Read** |

Boykin, Lisa T. Delivered: 6/26/2007 2:09 PM Read: 6/26/2007 2:17 PM

Lisa- I made a minor revision because we didn't notice NTEU on ePerformance it is in the upcoming contract; however, I understand your intent as it relates to the SF-50 on-line initiative.

Kevin J. Hawkins
National Negotiator, ATF
Human Resources Division
Management/Employee and Labor Relations Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

---

**From:** Boykin, Lisa T.
**Sent:** Tuesday, June 26, 2007 2:03 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: hr connect

Hi Kevin and again thanks.  See my edits in red.  What do you think?

---

**From:** Hawkins, Kevin J.
**Sent:** Tuesday, June 26, 2007 1:35 PM
**To:** Boykin, Lisa T.
**Subject:** FW: hr connect

Lisa – Below is the email which captures my discussion with NTEU:

Ms. Scalare,

Per our phone conversation, HRConnect was upgraded to the new MR4 system over the past weekend.  As a result, many employees received an automated message from HR Connect stating: "You have been assigned the ePerformance-Employee role," and or may have received a similar messages regarding the SF-50 on-line initiative.

The HR Connect upgrade relates to on-going development efforts with regard to eInitiatives in ATF which is preparing ATF to eventually have a paperless system.  It does not change any processes or procedures for the current cycle.  Employees should continue to receive paper evaluations and SF-50's as usual.

The e-mail messages were inadvertent and in no way circumvents the notice*[Hawkins, Kevin J.]* NTEU received *[Hawkins, Kevin J.]* nor implements ePerformance.

We apologize for any confusion the e-mails may have caused.

11/2/2007

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Tuesday, June 26, 2007 12:00 PM
**To:** Hawkins, Kevin J.
**Subject:** FW: hr connect

Fyi only

---

**From:** Clark, Daniel J.
**Sent:** Tuesday, June 26, 2007 9:55 AM
**To:** Boykin, Lisa T.
**Subject:** FW: hr connect

Broadcast 1 for e-performance...

---

**From:** Hannon, Ann Marie
**Sent:** Monday, June 25, 2007 9:15 AM
**To:** Oates, Helen M.; Filler, Diane E.
**Cc:** Clark, Daniel J.
**Subject:** FW: hr connect

Hello Helen, Hello Diane:

Per Daniel's email below, HR Connect has been upgraded to the new MR4. However, as you will see it resulted in emails being sent out that may cause confusion. Daniel is suggesting a Broadcast announcement that I've edited somewhat as follows:

ANNOUNCEMENT

HRConnect has been upgraded to the new MR4 system over the past weekend. As a result, however, many employees received an automated message from HR Connect stating: "You have been assigned the ePerformance-Employee role," or similar message.

This relates to on-going development efforts with regard to ePerformance in ATF which is preparing ATF to eventually have a paperless evaluation system. It does not change any processes or procedures for the current cycle. You should continue to use your existing paper evaluation.

We apologize for any confusion this e-mail may have caused.

*Ann Marie Hannon*
*Chief, Policy and Human Capital Planning Branch*
*Human Resources Division, Office of Management*
*Phone:  202-648-9081*
*Fax:  202-648-9005*

---

11/2/2007

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Monday, July 02, 2007 1:54 PM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: Need topics please |

Also, on the two ULP's, what additional information do you have?  I know that Leslie is working on these but do you have any further update?

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, July 02, 2007 12:41 PM
**To:** Boykin, Lisa T.
**Subject:** RE: Need topics please

Telework Pilot (EPS ATF Specialists & Legal Instrument Examiners):

- Mediation was completed without reaching a settlement; thus, Chief counsel will be referring the matter to the Federal Impasses Panel (FSIP).
- On May 18, 2007, the Federal Mediation & Conciliation Service (FMCS) released the parties to FSIP.

*Kevin J. Hawkins*

*National Negotiator, ATF*

*Human Resources Division*

*Management/Employee and Labor Relations Branch*

*(W) 202-927-8542*

*(C) 202-441-1151*

*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Monday, July 02, 2007 12:06 PM

11/2/2007

**To:** Hawkins, Kevin J.
**Subject:** RE: Need topics please

It is a topic you handled and should be reported.

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, July 02, 2007 12:04 PM
**To:** Boykin, Lisa T.
**Subject:** RE: Need topics please

The Telework Pilot is not bureau wide.  Also, I thought only subjects that MELRB are responsible for?  If so, the Pilot is in Chief Counsel's realm.

*Kevin J. Hawkins*

*National Negotiator, ATF*

*Human Resources Division*

*Management/Employee and Labor Relations Branch*

*(W) 202-927-8542*

*(C) 202-441-1151*

*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Monday, July 02, 2007 12:00 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Need topics please

How about Telework Pilot!

---

11/2/2007

**From:** Hawkins, Kevin J.
**Sent:** Monday, July 02, 2007 11:55 AM
**To:** Boykin, Lisa T.; Gill, Wanda J.; Crawford, Dana D.; Hall-Evans, Robin E.
**Cc:** Fowler, Audrey A.; Camp, Nikki D.
**Subject:** RE: Need topics please

Contract Negotiations:

- On July 2, 2007, DOJ received the first twelve proposed articles of the new ATF contract (Pre-agency head review);
- On July 2, 2007, I received an email from Steve Keller, National Negotiator, NTEU on his proposed two stages for the signing of the contract (Signing ceremony);
- As soon as the contract is signed by both parties it will be sent to DOJ for official Agency head review (Estimate July 16, 2007);
- Currently, working on finalizing contract training points/training scenarios for the up-coming four manager training sessions.

Federal Firearms Licensing Center (FFLC) Transfer of Function: (Not a bureau-wide impact)

- Impact & Implementation bargaining attempted; however, after no success, the agency took the position that the transfer of function was covered by the collective bargaining agreement. (Issue closed – no response from NTEU)
- On June 26-28, 2007, the Martinsburg, West Virginia tour was held.


*Kevin J. Hawkins*

*National Negotiator, ATF*

*Human Resources Division*

*Management/Employee and Labor Relations Branch*

*(W) 202-927-8542*

*(C) 202-441-1151*

*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Monday, July 02, 2007 9:46 AM
**To:** Hawkins, Kevin J.; Gill, Wanda J.; Crawford, Dana D.; Hall-Evans, Robin E.
**Cc:** Fowler, Audrey A.; Camp, Nikki D.
**Subject:** FW: Need topics please

11/2/2007

Please see the message below.  Please forward at least 2 topics that may have or has bureau wide impact.
Please give this to me by 11 today.   If you have any questions regarding the content of any of your "cases"
projects, etc.  Let's talk.  Thanks.

---

**From:** Oates, Helen M.
**Sent:** Monday, July 02, 2007 8:09 AM
**To:** Paul, Alex; Kamerer, Judy E.; Sanchez, Kimberly T.; Watson, Debbie T.; McEnerney, Charles; Hannon,
Ann Marie; Greene, Kathryn A. (HR); Boykin, Lisa T.; Dottin, David A.; Webb, Leslie R.; King, Michelle Davis
**Subject:** Need topics please

Diane called and left me a voice message to get a list of topics that she and Mel might use to brief
Ronnie next week on Tuesday.  These are to be issues that he might have the need to know about, be
involved in on some level, might be on the 8th floor's "radar screen", etc.  I know that Diane and I
brainstormed these issues several weeks ago but she didn't indicate if they were used so I will try to
locate her notes.  Please have these topics to me by noon today if possible.  Thanks so much.

**Helen M. Oates**

**Deputy Human Resource Officer**

**(202)927-7946**

11/2/2007

## Hawkins, Kevin J.

**From:**   Boykin, Lisa T.

**Sent:**   Tuesday, July 03, 2007 10:00 AM

**To:**   Oates, Helen M.; Hawkins, Kevin J.

**Subject:** RE: signing agreement

Yes we should. When the current agreement was signed, unfortunately, many of the "parties" from both sides either had left the agency or were otherwise unavailable. This time, I would like to capture this event to memorialize the hard work performed by all!

Kevin, when appropriate, can you contact VIB and ask them what the protocol for staging such an event is?

Thanks.

---

**From:** Oates, Helen M.
**Sent:** Tuesday, July 03, 2007 9:56 AM
**To:** Hawkins, Kevin J.
**Cc:** Boykin, Lisa T.
**Subject:** RE: signing agreement

Should we arrange for pictures and an Inside ATF article to cover the event?

---

**From:** Hawkins, Kevin J.
**Sent:** Tuesday, July 03, 2007 9:50 AM
**To:** Oates, Helen M.
**Cc:** Boykin, Lisa T.
**Subject:** FW: signing agreement

FYI

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, July 02, 2007 11:41 AM
**To:** 'Steve Keller'
**Cc:** Michalic, Vivian B.
**Subject:** RE: signing agreement

I am in agreement with the stages.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*

(C).202-441-1151
Kevin.Hawkins@ATF.gov

---

**From:** Steve Keller [mailto:steve.keller@NTEU.ORG]
**Sent:** Monday, July 02, 2007 11:32 AM
**To:** Hawkins, Kevin J.
**Cc:** Michalic, Vivian B.
**Subject:** signing agreement

Kevin -

Regarding your message form the other day, on signing the agreement (once the document has been finalized): we normally do this in two stages. The first stage is to have the agreement signed by representatives of the bargaining team (the chief spokespersons), so that we have a final formal document with signatures that bind the parties. This can then be used for purposes of seeking ratification from union members, and agency head review from DOJ. Once these approvals have been secured, the contract can be signed by the National President of NTEU and the Director of ATF.

I'll work on putting together a signature page. We typically list all members of the bargaining team (and sometimes provide a place for each to sign, although perhaps we may forego that in this case because of the difficulty in getting everyone's signatures). I believe that's what we did with the current agreement.

Let me know if you have any questions.

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Tuesday, July 03, 2007 10:20 AM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | Follow up question on the informaiton you provided yesterday. |

When you get back to your office, please see me.

Thanks.

*Lisa T. Boykin*
*Chief*
*Management/Employee and Labor Relations Branch*
*650 Massachusetts Avenue, NW*
*Washington, DC 20226*
*202-927-8539 (work)*
*202-927-8841 (fax)*
*Lisa.Boykin@atf.gov*

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Wednesday, July 11, 2007 11:53 AM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | Acting Designation |

Kevin:

Per our conversation this morning, in addition to next Friday, July 20, 2007 when you were originally scheduled to act for me, you may now have to act for me this Friday, July 13, 2007 – Friday July 20, 2007.  As discussed, Wanda has had a family emergency and may not be available. I mentioned a few things to you to include Audrey's trip to Georgia [FLETC] tomorrow in Wanda's place.

Let's plan to meet tomorrow morning so that I give you a briefing.

*Lisa T. Boykin*
*Chief*
*Management/Employee and Labor Relations Branch*
*650 Massachusetts Avenue, NW*
*Washington, DC  20226*
*202-927-8539 (work)*
*202-927-8841 (fax)*
*Lisa.Boykin@atf.gov*

11/2/2007.

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Filler, Diane E. |
| **Sent:** | Friday, July 13, 2007 10:29 AM |
| **To:** | Hawkins, Kevin J.; Boykin, Lisa T. |
| **Cc:** | Oates, Helen M.; Cunningham, J. Lorraine |
| **Subject:** | FW: signing agreement |

Kevin,
This is your tasking.  How long will preparing such an outline take?  Please let lorraine
know so we can track date.  Keep in mind, he will need to be briefed before the agency
head review process ends so he is in position to sign the agreement when approved.

-----Original Message-----
From: Michalic, Vivian B.
Sent: Friday, July 13, 2007 8:39 AM
To: Filler, Diane E.; Hawkins, Kevin J.
Cc: Stinnett, Melanie S.
Subject: Re: signing agreement

OK, please prepare a briefing paper that outlines the highlights of the agreement and we
will schedule a briefing with the director.
Viivian Baran Michalic

*********
NOTICE: This electronic transmission is confidential and intended only for the person(s)
to whom it is addressed.  If you have received this transmission in error, please notify
the sender by return e-mail and destroy this message in its entirety (including all
attachments).

----- Original Message -----
From: Filler, Diane E.
To: Hawkins, Kevin J.
Cc: Michalic, Vivian B.
Sent: Thu Jul 12 16:57:20 2007
Subject: RE: signing agreement

At first it didn't make sense to me.  However, in reading it more carefully -- I agree
with what Steve has outlined below.  It would make sense to have the "negotiators" sign,
then allow NTEU to ratify, and DOJ to perform agency head review prior to the top
officials (Director and National NTEU PResident) to sign.  I would recommend we proceed
with the first round of signatures.  I would still recomend we proceed with "briefing" the
director and move that along simultaneous to agency head review.

From: Hawkins, Kevin J.
Sent: Wednesday, July 11, 2007 4:00 PM
To: Filler, Diane E.
Cc: Michalic, Vivian B.
Subject: FW: signing agreement

Clearly states a two stage process.

Kevin J. Hawkins

National Negotiator, ATF

Human Resources Division

Management/Employee and Lab   Relations Branch

(W) 202-927-8542

(C) 202-441-1151

Kevin.Hawkins@ATF.gov <mailto:Kevin.Hawkins@ATF.gov>

_____

From: Steve Keller [mailto:steve.keller@NTEU.ORG]
Sent: Monday, July 02, 2007 11:32 AM
To: Hawkins, Kevin J.
Cc: Michalic, Vivian B.
Subject: signing agreement


Kevin -


Regarding your message form the other day, on signing the agreement (once the document has been finalized): we normally do this in two stages.  The first stage is to have the agreement signed by representatives of the bargaining team (the chief spokespersons), so that we have a final formal document with signatures that bind the parties.  This can then be used for purposes of seeking ratification from union members, and agency head review from DOJ.  Once these approvals have been secured, the contract can be signed by the National President of NTEU and the Director of ATF.


I'll work on putting together a signature page.  We typically list all members of the bargaining team (and sometimes provide a place for each to sign, although perhaps we may forego that in this case because of the difficulty in getting everyone's signatures).  I believe that's what we did with the current agreement.


Let me know if you have any questions.


2

EXHIBIT M

## Hawkins, Kevin J.

**From:** Oates, Helen M.
**Sent:** Friday, July 20, 2007 3:27 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: articles

Just need it for a dry run briefing for Mel on Monday – don't need them again.  Thanks.  You did a good job this week.

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, July 20, 2007 3:22 PM
**To:** Oates, Helen M.
**Cc:** Boykin, Lisa T.
**Subject:** RE: articles

Yes, forty-eight (48), I cc'd you on the email.  I'll forward to you anyway.

*Kevin J. Hawkins*

*National Negotiator, ATF*

*Human Resources Division*

*Management/Employee and Labor Relations Branch*

*(W) 202-927-8542*

*(C) 202-441-1151*

*Kevin.Hawkins@ATF.gov*

---

**From:** Oates, Helen M.
**Sent:** Friday, July 20, 2007 3:13 PM
**To:** Hawkins, Kevin J.
**Subject:** articles

11/2/2007

Have all articles gone over to DOJ unofficially?  How many?


**Helen M. Oates**

**Deputy Human Resources Officer**

**(202)927-7946**

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Thursday, July 26, 2007 1:48 PM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: Space/Office Moves |

Ok, thanks Kevin. Who were the contacts and did the contact for bu have documentation of the notice? Did they say who sent the notice form this office? If the notice was not done correctly, we need to look into that as well.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, July 26, 2007 1:46 PM
**To:** Boykin, Lisa T.
**Subject:** RE: Space/Office Moves

Lisa –

I've spoken to both contacts on the memos; one contact said NTEU was contacted over a year ago and they did not respond, the other one said it involves non-bargaining (Agents, etc.)

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Wednesday, July 25, 2007 7:12 PM
**To:** Hawkins, Kevin J.
**Subject:** Space/Office Moves

Kevin, I put in your mail box, to space and office moves, one for the Baltimore Field Division, Field Office Hyattsville II and the other is for the Washington Field Division, Richmond I & II Field Offices.

Thanks!

*Lisa T. Boykin*
*Chief*
*Management/Employee and Labor Relations Branch*
*650 Massachusetts Avenue, NW*
*Washington, DC 20226*
*202-927-8539 (work)*
*202-927-8841 (fax)*
*Lisa.Boykin@atf.gov*

11/2/2007

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Friday, July 27, 2007 6:32 PM |
| **To:** | Hannon, Ann Marie; Paige, Dalores A.; Oates, Helen M.; Greene, Kathryn A. (HR) |
| **Cc:** | Hawkins, Kevin J. |
| **Subject:** | RE: Federal Times - General Schedule must go, HR execs say |

A courtesy copy.

---

**From:** Hannon, Ann Marie
**Sent:** Thursday, July 26, 2007 12:42 PM
**To:** Paige, Dalores A.; Boykin, Lisa T.; Oates, Helen M.; Greene, Kathryn A. (HR)
**Subject:** RE: Federal Times - General Schedule must go, HR execs say

That's good to know......so if it's is voluntary again do we still notice the union and request comments, or do we provide them with a "courtesy notice". I hope it's only a courtesy, but will wait until Lisa can respond.

*Ann Marie Hannon*
*Chief, Policy and Human Capital Planning Branch*
*Human Resources Division, Office of Management*
*Phone: 202-648-9081*
*Fax: 202-648-9005*

---

**From:** Paige, Dalores A.
**Sent:** Thursday, July 26, 2007 11:54 AM
**To:** Hannon, Ann Marie; Boykin, Lisa T.; Oates, Helen M.; Greene, Kathryn A. (HR)
**Subject:** RE: Federal Times - General Schedule must go, HR execs say

In the past, the survey was totally voluntary. Also, the BAB Chair sent an email in advance to request participation.

---

**From:** Hannon, Ann Marie
**Sent:** Thursday, July 26, 2007 11:51 AM
**To:** Boykin, Lisa T.; Oates, Helen M.; Paige, Dalores A.; Greene, Kathryn A. (HR)
**Subject:** RE: Federal Times - General Schedule must go, HR execs say

Hello Lisa:

Can you tell us how soon before the survey must the NTEU receive notice, and how long do they have to comment on this? Also, can you briefly describe the two types of notice so we'll have that for future reference as well? Thanks in advance.

*Ann Marie Hannon*
*Chief, Policy and Human Capital Planning Branch*
*Human Resources Division, Office of Management*
*Phone: 202-648-9081*
*Fax: 202-648-9005*

---

**From:** Boykin, Lisa T.
**Sent:** Wednesday, July 25, 2007 7:23 PM
**To:** Oates, Helen M.; Paige, Dalores A.; Hannon, Ann Marie; Greene, Kathryn A. (HR)

11/2/2007

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Monday, July 30, 2007 12:01 PM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: And yet another question |

What was said?  Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Tuesday, July 17, 2007 2:22 PM
**To:** Greene, Amy J.
**Cc:** Boykin, Lisa T.
**Subject:** RE: And yet another question

Addressed via a phone call☺

Kevin J. Hawkins
National Negotiator, ATF
Human Resources Division
Management/Employee and Labor Relations Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

---

**From:** Greene, Amy J.
**Sent:** Tuesday, July 17, 2007 12:24 PM
**To:** Hawkins, Kevin J.
**Subject:** FW: And yet another question
**Importance:** High

Hi Kevin, please see below, thanks!

---

**From:** Greene, Amy J.
**Sent:** Tuesday, July 17, 2007 12:22 PM
**To:** Boykin, Lisa T.
**Subject:** And yet another question
**Importance:** High

Hi Tina,

Quick question:

One of the NFA Examiners, Dan Pinckney selected for an analyst position in Crime Gun leaving another vacant position.  An active DEU certificate had selectees awaiting an EOD for the same position just in a different branch.  Instead of announcing outside for one vacancy to backfill Pinckney, we would like to select from the active cert and make an offer for a GS-963-6 in FELC.  Then in 90 days reassign the individual to the same position in NFA.

I was reading Article 27 of the contract and I want to make sure I understand.  We can poll other individuals of the same series to see if they are interested in the reassignment if no one volunteers the supervisor can reassign the individual with the least ATF experience to NFA.  However if more than one person volunteers the person with the most ATF experience should be reassigned, Correct?

11/2/2007

# Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Monday, July 30, 2007 9:38 AM |
| **To:** | Boykin, Lisa T.; Filler, Diane E.; Oates, Helen M. |
| **Subject:** | RE: signing agreement |

**Tracking:**

| Recipient | Delivery | Read |
|---|---|---|
| Boykin, Lisa T. | Delivered: 7/30/2007 9:38 AM | Read: 7/30/2007 9:39 AM |
| Filler, Diane E. | Delivered: 7/30/2007 9:38 AM | |
| Oates, Helen M. | Delivered: 7/30/2007 9:38 AM | Read: 7/30/2007 9:44 AM |

Good Morning,

As I recall, Vivian's position was that even though some team members may have participated more than others, she did not want to have to address why some team members signed and others did not; therefore, no team members would sign. Also, the signed off articles only have the negotiator's signatures who have authority to bind the parties/agreement.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Friday, July 27, 2007 3:49 PM
**To:** Filler, Diane E.; Oates, Helen M.; Hawkins, Kevin J.
**Subject:** FW: signing agreement

---

I had a chance to review the attached page and suggest that Leslie should also sign, any thoughts...?

---

**From:** Steve Keller [mailto:steve.keller@NTEU.ORG]
**Sent:** Friday, July 27, 2007 3:44 PM
**To:** Hawkins, Kevin J.
**Cc:** Michalic, Vivian B.; Oates, Helen M.; Boykin, Lisa T.; Barnwell-Burton, Robin G.; Reilly, Michael T.; Schiller, Gregory J.; Betzler, Brian W.
**Subject:** RE: signing agreement

Kevin:

I have completed my review of the agreement. The only problem I saw was in Article 36 (Expedited Arbitration), Section 3B, which does not read as a complete sentence. I suggest we add, at the beginning of this provision, "The official grievance file shall consist of . . . . " The language would then conform to the corresponding provision in Article 35 (Arbitration).

I have also attached a draft of a signature page for your review. Although I had all the names of the management team members, I had to guess a little on how they should be identified; note that with the Union team members, I identified them only by chapter, and not by organizational component or location.

11/2/2007

# Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Monday, July 30, 2007 9:44 AM |
| **To:** | Oates, Helen M. |
| **Subject:** | Meeting Request |
| **Importance:** | High |
| **Sensitivity:** | Confidential |

**Tracking:**

| Recipient | Delivery | Read |
|---|---|---|
| Oates, Helen M. | Delivered: 7/30/2007 9:44 AM | Read: 7/30/2007 9:57 AM |

Good Morning,

Helen, I like to request a meeting with you first and then you, Lisa, and I to discuss my duties and responsibilities ASAP.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Monday, July 30, 2007 11:06 AM |
| **To:** | Boykin, Lisa T. |
| **Cc:** | Oates, Helen M. |
| **Subject:** | RE: signing agreement |
| | |
| **Sensitivity:** | Confidential |

Lisa, I've reviewed your edits; however, my first draft Diane stated it was too much; thus, I provided a condensed summary/version.  All due respect, your comments/suggested edits appear to be leaning towards even more than my first draft. I've conducted four briefings on the contract and they are usually scheduled for 30 minutes; however, the verbal briefing usually last 15 minutes.

In other words, as the originator/drafter/speaker of the brief I subscribe to the philosophy that less written is better.  Also, the briefing paper combined several previously approved contract briefings held for Diane, Vivian, Melanie, and finally Edgar. More importantly, any questions the Director would ask I should be able to verbally respond to.

Kevin J. Hawkins
National Negotiator, ATF
Human Resources Division
Management/Employee and Labor Relations Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

-----Original Message-----
From: Boykin, Lisa T.
Sent: Friday, July 27, 2007 6:13 PM
To: Hawkins, Kevin J.
Cc: Oates, Helen M.
Subject: FW: signing agreement
Sensitivity: Confidential

Kevin, attached are my edits to your draft document.  Let's discuss when you get a chance. As you will see, I added some information and made other changes.  Thanks.

-----Original Message-----
From: Hawkins, Kevin J.
Sent: Wednesday, July 18, 2007 4:46 PM
To: Filler, Diane E.
Cc: Boykin, Lisa T.; Oates, Helen M.
Subject: RE: signing agreement
Sensitivity: Confidential


Kevin J. Hawkins
National Negotiator, ATF
Human Resources Division
Management/Employee and Labor Relations Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

-----Original Message-----
From: Filler, Diane E.
Sent: Wednesday, July 18, 2007 11:40 AM
To: Hawkins, Kevin J.
Cc: Boykin, Lisa T.; Oates, Helen M.

Subject: FW: signing agreement
Sensitivity: Confidential

Kevin I have the following comments regarding the briefing paper:

I wouldn't give all the background as stated, rather, I would note why we have a new agreement, who was on the team; and, how the team operated to identify, resolve and have issues approved both internally/ATF and with NTEU.

I would assign an article number to each of the areas you call "highlights" and expand more on what is covered in those articles, perhaps highlighting what has changed from the last agreement.

I would leave out the summary of Issues/concerns submitted by the contract team.  The fact that some issues were accomplished and other "compromised" begs the question why, how, at what price.

Please make these changes and let me see another draft.   Thanks


-----Original Message-----
From: Hawkins, Kevin J.
Sent: Monday, July 16, 2007 9:59 AM
To: Filler, Diane E.
Cc: Oates, Helen M.; Boykin, Lisa T.; Cunningham, J. Lorraine
Subject: RE: signing agreement
Sensitivity: Confidential

Good Morning,

The Director's Contract Signing Briefing Memorandum and the ATF Electronic Contract are attached.

Kevin J. Hawkins
National Negotiator, ATF
Human Resources Division
Management/Employee and Labor Relations Branch
(W) 202-927-8542
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

-----Original Message-----
From: Filler, Diane E.
Sent: Friday, July 13, 2007 10:29 AM
To: Hawkins, Kevin J.; Boykin, Lisa T.
Cc: Oates, Helen M.; Cunningham, J. Lorraine
Subject: FW: signing agreement

Kevin,
This is your tasking.  How long will preparing such an outline take?  Please let lorraine know so we can track date.  Keep in mind, he will need to be briefed before the agency head review process ends so he is in position to sign the agreement when approved.

-----Original Message-----
From: Michalic, Vivian B.
Sent: Friday, July 13, 2007 8:39 AM
To: Filler, Diane E.; Hawkins, Kevin J.
Cc: Stinnett, Melanie S.
Subject: Re: signing agreement

OK, please prepare a briefing paper that outlines the highlights of the agreement and we will schedule a briefing with the director.
Viivian Baran Michalic

*********
NOTICE: This electronic transmission is confidential and intended only for the person(s) to whom it is addressed.  If you have received this transmission in error, please notify the sender by return e-mail and destroy this message in its entirety (including all attachments).

2

----- Original Message -----
From: Filler, Diane E.
To: Hawkins, Kevin J.
Cc: Michalic, Vivian B.
Sent: Thu Jul 12 16:57:20 2007
Subject: RE: signing agreement

At first it didn't make sense to me.  However, in reading it more carefully -- I agree
with what Steve has outlined below.  It would make sense to have the "negotiators" sign,
then allow NTEU to ratify, and DOJ to perform agency head review prior to the top
officials (Director and National NTEU PResident) to sign.  I would recommend we proceed
with the first round of signatures.  I would still recomend we proceed with "briefing" the
director and move that along simultaneous to agency head review.

--------------------------------

From: Hawkins, Kevin J.
Sent: Wednesday, July 11, 2007 4:00 PM
To: Filler, Diane E.
Cc: Michalic, Vivian B.
Subject: FW: signing agreement


Clearly states a two stage process.


Kevin J. Hawkins

National Negotiator, ATF

Human Resources Division

Management/Employee and Labor Relations Branch

(W) 202-927-8542

(C) 202-441-1151

Kevin.Hawkins@ATF.gov <mailto:Kevin.Hawkins@ATF.gov>



--------------------------------

From: Steve Keller [mailto:steve.keller@NTEU.ORG]
Sent: Monday, July 02, 2007 11:32 AM
To: Hawkins, Kevin J.
Cc: Michalic, Vivian B.
Subject: signing agreement


Kevin -


Regarding your message form the other day, on signing the agreement (once the document has
been finalized): we normally do this in two stages.  The first stage is to have the
agreement signed by representatives of the bargaining team (the chief spokespersons), so
that we have a final formal document with signatures that bind the parties.  This can then
be used for purposes of seeking ratification from union members, and agency head review
from DOJ.  Once these approvals have been secured, the contract can be signed by the
National President of NTEU and the Director of ATF.

I'll work on putting together a signature page.  We typically list all members of the bargaining team (and sometimes provide a place for each to sign, although perhaps we may forego that in this case because of the difficulty in getting everyone's signatures).  I believe that's what we did with the current agreement.


Let me know if you have any questions.

**Tracking:**

| Recipient | Delivery | Read |
|---|---|---|
| Boykin, Lisa T. | Delivered: 7/30/2007 11:06 AM | Read: 7/30/2007 12:09 PM |
| Oates, Helen M. | Delivered: 7/30/2007 11:06 AM | Read: 7/30/2007 11:09 AM |

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Thursday, August 02, 2007 11:26 AM |
| **To:** | Boykin, Lisa T. |
| **Cc:** | Oates, Helen M. |
| **Subject:** | RE: Director's Contract Signing Briefing Memorandum |
| **Sensitivity:** | Confidential |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | Boykin, Lisa T. | Delivered: 8/2/2007 11:26 AM | Read: 8/2/2007 11:27 AM |
| | Oates, Helen M. | Delivered: 8/2/2007 11:26 AM | Read: 8/2/2007 11:30 AM |

On my way over.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Thursday, August 02, 2007 11:25 AM
**To:** Hawkins, Kevin J.
**Cc:** Oates, Helen M.
**Subject:** RE: Director's Contract Signing Briefing Memorandum
**Sensitivity:** Confidential

Kevin:

I reviewed the document and I see wherein you incorporated some of the suggestion I made (thanks). I do have a few questions and feel that those questions can be best address if we have a brief conversation. Can you meet with me now?

Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, August 02, 2007 10:20 AM
**To:** Oates, Helen M.
**Cc:** Boykin, Lisa T.
**Subject:** RE: Director's Contract Signing Briefing Memorandum
**Sensitivity:** Confidential

Good Morning,

After reviewing the memo again, in my opinion, if the third bullet under background has to be included, it should be the first bullet under background (Better flow/sequence).

FYI – I just received a call from the Visual Arts branch and they have to send the Tabs/Dividers outside of ATF. I expressed the urgent need for completion and they said it would be sent as a rush job.

11/2/2007

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

**From:** Hawkins, Kevin J.
**Sent:** Thursday, August 02, 2007 9:13 AM
**To:** Oates, Helen M.
**Cc:** Boykin, Lisa T.
**Subject:** Director's Contract Signing Briefing Memorandum
**Sensitivity:** Confidential

Per your email request☺.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

## Hawkins, Kevin J.

**From:** Boykin, Lisa T.
**Sent:** Tuesday, August 21, 2007 11:48 AM
**To:** Hawkins, Kevin J.
**Subject:** RE: e-Performance

No e-mails, can you just summarize for me? Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Tuesday, August 21, 2007 11:47 AM
**To:** Boykin, Lisa T.
**Subject:** RE: e-Performance

There is no change in status. I will forward the last emails I have on the subject.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Tuesday, August 21, 2007 11:38 AM
**To:** Hawkins, Kevin J.
**Subject:** FW: e-Performance

Good morning Kevin. Please update me on the status. Thanks.

---

**From:** Oates, Helen M.
**Sent:** Tuesday, August 21, 2007 11:23 AM
**To:** Boykin, Lisa T.
**Subject:** FW: e-Performance

?

---

**From:** Clark, Daniel J.
**Sent:** Tuesday, August 21, 2007 9:21 AM
**To:** Oates, Helen M.; Filler, Diane E.; Hannon, Ann Marie
**Subject:** e-Performance

I am going to send out another meeting date for next week for the e-performance work group. Do we need Kevin to notice the union or did the negotiations cover it sufficiently. I don't want to get caught napping on this. Do we need to do a demo for him? For the union reps?

*Daniel J. Clark*
Work: 202 648-9123
Cell:  202 744-7243

11/2/2007

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Tuesday, August 21, 2007 12:03 PM |
| **To:** | Oates, Helen M. |
| **Cc:** | Hawkins, Kevin J. |
| **Subject:** | RE: e-Performance |

This issue was negotiated in the new contract so it has already been discussed. The bargaining unit employees are not under e-performance until the contract is finalized (DOJ approval/Director's signature).

---

**From:** Oates, Helen M.
**Sent:** Tuesday, August 21, 2007 11:23 AM
**To:** Boykin, Lisa T.
**Subject:** FW: e-Performance

?

---

**From:** Clark, Daniel J.
**Sent:** Tuesday, August 21, 2007 9:21 AM
**To:** Oates, Helen M.; Filler, Diane E.; Hannon, Ann Marie
**Subject:** e-Performance

I am going to send out another meeting date for next week for the e-performance work group. Do we need Kevin to notice the union or did the negotiations cover it sufficiently. I don't want to get caught napping on this. Do we need to do a demo for him?  For the union reps?

*Daniel J. Clark*
Work: 202 648-9123
Cell:  202 744-7243

# Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Tuesday, August 21, 2007 3:01 PM |
| **To:** | Oates, Helen M. |
| **Cc:** | Boykin, Lisa T. |
| **Subject:** | FW: Materially changed performance plan elements |
| **Sensitivity:** | Confidential |

| Tracking: | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | Oates, Helen M. | Delivered: 8/21/2007 3:01 PM | Read: 8/21/2007 3:34 PM |
| | Boykin, Lisa T. | Delivered: 8/21/2007 3:01 PM | Read: 8/21/2007 6:18 PM |

Good Afternoon,

For the record, the eperformance issue presented by Daniel Clark numerous times today has been addressed a couple of times before. (Emails are below)  In addition, I have personally called him the last time and today to further explain what bargaining in good faith means!

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, May 17, 2007 1:47 PM
**To:** Clark, Daniel J.
**Subject:** RE: Materially changed performance plan elements
**Sensitivity:** Confidential

My pleasure to assist☺

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Clark, Daniel J.
**Sent:** Thursday, May 17, 2007 1:46 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Materially changed performance plan elements
**Sensitivity:** Confidential

Thanks a ton.  I just want to make sure I am hit with a major new requirement "out of the blue".  I'll keep it confidential.

11/2/2007

**From:** Hawkins, Kevin J.
**Sent:** Thursday, May 17, 2007 1:45 PM
**To:** Clark, Daniel J.
**Subject:** RE: Materially changed performance plan elements
**Sensitivity:** Confidential

Daniel,

I'll send you the entire Article, keep in mind, this should not be shared or discussed with others!

Article 7 – Evaluations of Performance    **(CONFIDENTIAL SHALL NOT BE CIRCULATED)**


## ARTICLE 7      EVALUATIONS OF PERFORMANCE

### Section 1 - Purpose

The purpose of this article is to set forth the policies and processes for employee performance management for all bargaining unit employees, including those working in the ATF Pay Demonstration Project, to the extent that this agreement is not inconsistent with the other agreements covering Pay Demo employees. Performance management is the systematic process of planning work and setting expectations for a specified period of time, monitoring all resulting performance and providing feedback, developing the capacity to perform, periodically rating performance in summary fashion, and, when appropriate, recognizing and rewarding good performance. Employee performance evaluation matters not covered in this article will be conducted pursuant to ATF O. 2400.8, Performance Management Program Order.

### Section 2 – Definitions

A.    **Appraisal or Performance Appraisal**. The process of reviewing, and evaluating or rating, the performance of an employee against previously written and communicated performance standards of the Performance Work Plan for his/her position. This appraisal of employee performance usually occurs on an annual basis.

B.    **Appraisal Period.**  The specified period of time, normally one year, for which an employee's job performance is appraised or rated. ATF's official performance appraisal period shall be October 1 through September 30; unless it is extended or reduced for authorized reasons, or an alternative appraisal period has been established and approved.

C.    **Performance Work Plan (PWP).**  A written record or any approved automated document, of the established and communicated critical elements and performance standards for the employee's position, which addresses a clear linkage between strategic goals of the organization and individual performance. PWPs must contain critical elements and performance standards. A PWP may also contain non-critical or additional elements, if the employee's performance appraisal system provides for such use.

D.    **Critical Element**. Duties and responsibilities of a position, which contribute to accomplishing organizational goals and objectives. A critical element is of such importance that any unacceptable performance in this would result in the overall or summary rating of record determination of Unacceptable. Each employee must have at least two critical elements, but normally there are between three to five critical elements in an employee's PWP. Individual employee performance can only be

evaluated based upon critical elements.

E. **Performance Standards.** Management-approved expressions of the performance thresholds, requirements, or expectations that employees must meet, in order to be appraised at particular levels of performance. Performance standards tell employees how
well they have to do their jobs, and shall be objective, measurable, understandable, attainable, and challenging (to stimulate and identify potential for growth).

F. **Performance Monitoring.** An ongoing observation and feedback process throughout the appraisal year. To monitor effectively, the rater should observe and document performance while maintaining frequent communication with the employee.

G. **Progress Review.** A formal meeting between rating official and employee to review and discuss the employee's progress toward meeting the performance standards in his or her performance work plan. ATF requires at least one progress review, normally
midway through the appraisal period. No ratings shall be assigned for the mandatory, midway performance progress review. Employees cannot grieve the results of a progress review meeting.

H. **Summary Rating.** The written record of the appraisal of performance under the critical elements of the PWP for the employee's position, which is also referred to
as the overall rating of record

## Section 3 – Appraisal Period

A.    ATF's official performance appraisal period shall be October 1 through September 30. Management reserves the right to change the dates of the appraisal period, subject to the requirement to provide the Union with advance notice and the opportunity to bargain, if applicable. Any change shall be made in conformance with DOJ agency-wide uniform appraisal periods.

B.    Normally, employees will get their PWPs within thirty (30) calendar days of the beginning of the rating period, being hired, or entering into a new position, this includes details.

C. The minimum appraisal period is ninety (90) calendar days.

D.    Employees shall at the minimum receive an individual performance progress review, approximately midway through the appraisal cycle.

E.    Employees shall receive a final copy of his or her completed appraisal no later than thirty (30) workdays after the end of the annual performance appraisal period.

## Section 4 – Developing Elements and Standards

A.    Elements and Standards shall be written in clear and simple language; be attainable and permit the accurate evaluation of job performance on the basis of objective criteria related to the job in question for each position under the system.

B.    Rating officials shall develop relevant job elements from position descriptions, strategic plans, mission, function and vision statements, management initiatives, and budgets.  Rating officials shall also seek employee's ideas and opinions, but are ultimately responsible for the contents of PWPs.  Job elements shall generally be the same for positions in the same occupational series and grade.

C.    Performance standards shall be developed for each job element in the PWPs, and may be identified from the same sources used to develop job elements, and based on knowledge of organizational goals, problems, critical gaps, improvement initiatives, intended outcomes and results, and resources availability.

D.    Performance standards shall be expressed in terms of quality, quantity,    timeliness, manner of performance, and impact of results, as well as other appropriate measurement criteria.  Performance standards shall be realistic (in terms of what can be achieved, yet challenging to stimulate growth), unambiguous, meaningful (being linked to the organization's strategic plan), measurable and/or observable, objective, within the employee's control and consistent with the requirements of the position.

## Section 5 – Performance Work Plans (PWPs)

A.    Normally, employees will get their PWPs within thirty (30) calendar days of the beginning of the rating period, being hired or entering into a new position, this includes details; and employees shall sign for the receipt of their Performance Work Plans (PWPs).  The employee's signature on the PWP does not necessarily indicate concurrence, but documents that the PWP was received, and the specific work requirements and the performance expectations were communicated on each critical element.

B.    The employee shall have five (5) workdays to comment on their PWP.

C.    If a rating official and an employee disagree over the application of any PWP items, the rating official and the employee should attempt to resolve the disagreement through discussion.  If discussion fails to resolve the dispute, either party may ask for a review of the dispute by the approving official.  If the dispute remains unresolved, the approving official shall make the final decision regarding the content of the PWP.

D.    Material changes in a supervisor's performance expectations (including those established by a new supervisor) must be communicated to the employee prior to the employee's being held accountable for the new responsibilities.

## Section 6    - Changes to Performance Work Plans (PWP)

A. Local Changes: The Employer shall notify the appropriate Chapter President(s) of material changes in the employee's PWP, before employees are notified.

B. National Changes: The Employer shall notify the NTEU National President (or his/her designee) if employees in the same position and multiple jurisdictions are affected by the change(s).

**Hawkins, Kevin J.**

---

**From:**    Boykin, Lisa T.
**Sent:**    Friday, August 31, 2007 8:05 AM
**To:**      Hawkins, Kevin J.
**Subject:** RE:

Good morning Kevin.  As per our conversation, I needed to speak with you regarding the meeting in EPS that we had as 3 pm and again, I mentioned that you had been gone for a significant period of time and know one knew where you were and that concerned me.  I realize you have a cell phone and you have often said that I could call you if I really wanted to reach you but that certainly can work both ways.

I will be sure to put out a reminder regarding office coverage to everyone.  Thanks.

Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, August 30, 2007 2:39 PM
**To:** Boykin, Lisa T.
**Subject:** RE:

No, I've been in and out the office, discussing the upcoming training, lunch, and HIP time.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Thursday, August 30, 2007 2:23 PM
**To:** Hawkins, Kevin J.
**Subject:**

Hi Kevin, I have been trying to catch up with you since 12:30 today, are you gone for the day?  Thanks.

*Lisa T. Boykin*
*Chief*
*Management/Employee and Labor Relations Branch*
*650 Massachusetts Avenue, NW*
*Washington, DC  20226*
*202-927-8539 (work)*
*202-927-8841 (fax)*
*Lisa.Boykin@atf.gov*

11/2/2007



**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Friday, August 31, 2007 8:18 AM |
| **To:** | Gill, Wanda J.; Fowler, Audrey A.; Hawkins, Kevin J.; Hall-Evans, Robin E.; Camp, Nikki D.; Crawford, Dana D. |
| **Subject:** | Reminder - Office coverage 650 Mass and 99 New York |

To all:

I know that we are in the process of moving and we all are really, really, really busy trying to tie up loose ends just about ever where☺.  so I am just sending this reminder regarding office coverage [here and 99 Mass]

If you are going to be out of the office for more than 15 minutes (i.e., lunch, HIP, "coffee break") tell someone on our staff.  Not only is this a professional courtesy, it helps to ensure accountability should I need to reach you.  If you have been invited to meetings or have scheduled one of your own (even if they are last minute) let me know (I may want to attend).

Thank you!

*Lisa T. Boykin*
*Chief*
*Management/Employee and Labor Relations Branch*
*650 Massachusetts Avenue, NW*
*Washington, DC  20226*
*202-927-8539 (work)*
*202-927-8841 (fax)*
*Lisa.Boykin@atf.gov*



## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Friday, August 31, 2007 8:38 AM |
| **To:** | Hawkins, Kevin J.; 'Daniels, Eric S' |
| **Cc:** | 'Emerson, Catherine V' |
| **Subject:** | RE: DOJ AGENCY HEAD REVIEW |
| **Sensitivity:** | Confidential |

Thanks for the update!

Eric, thank you and we are anxiously awaiting you response to the review!

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, August 31, 2007 8:23 AM
**To:** Daniels, Eric S
**Cc:** Emerson, Catherine V; Boykin, Lisa T.
**Subject:** RE: DOJ AGENCY HEAD REVIEW
**Sensitivity:** Confidential

Good Morning Eric,

ATF Contact:

Kevin Hawkins
National Negotiator
ATF
Room 4320
650 Massachusetts Avenue, NW
Washington, DC 20226

NTEU Contact:

Steve Keller
National Negotiator
NTEU
1750 H St., NW
Washington, DC  20006

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Daniels, Eric S [mailto:Eric.S.Daniels@usdoj.gov]
**Sent:** Thursday, August 30, 2007 2:56 PM
**To:** Hawkins, Kevin J.
**Cc:** Emerson, Catherine V
**Subject:** RE: DOJ AGENCY HEAD REVIEW

11/2/2007

**Sensitivity:** Confidential

We've almost finished the agency-head review process. Once we're done, our office will send a letter addressed to one representative for each party. We'd really appreciate it if you could identify that person for each party and provide that person's mailing address. Thanks for your assistance!

---

**From:** Hawkins, Kevin J. [mailto:Kevin.J.Hawkins@usdoj.gov]
**Sent:** Thursday, August 16, 2007 8:04 AM
**To:** Hawkins, Kevin J.; Daniels, Eric S
**Subject:** RE: DOJ AGENCY HEAD REVIEW
**Sensitivity:** Confidential

Eric,

Catching up on emails, I received the address already.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, August 16, 2007 8:00 AM
**To:** Daniels, Eric S
**Subject:** RE: DOJ AGENCY HEAD REVIEW
**Sensitivity:** Confidential

Good Morning,

I have just returned to the office from vacation. Please email me the address and the document should be FedEX by the end of the week.

Thank you,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Daniels, Eric S [mailto:Eric.S.Daniels@usdoj.gov]
**Sent:** Tuesday, August 14, 2007 1:48 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: DOJ AGENCY HEAD REVIEW
**Sensitivity:** Confidential

Hi! Just wanted to check with you on this as I mentioned in my voice-mails. We haven't received the contract yet and, given the 30-day time frame for review, were interested in seeing where things stand, i.e., have both parties signed off on it, when did they do so, and has it been sent to us. Thanks for your help!

11/2/2007

**From:** Hawkins, Kevin J. [mailto:Kevin.J.Hawkins@usdoj.gov]
**Sent:** Friday, August 10, 2007 3:13 PM
**To:** Emerson, Catherine V
**Cc:** Daniels, Eric S; Crawford, Dana D.
**Subject:** DOJ AGENCY HEAD REVIEW
**Importance:** High
**Sensitivity:** Confidential

Good Evening,

Eric, I received your voicemail. Management has signed the signature page and I am in the process of getting NTEU's signature.

If you don't mind, can you email me the address and I will FedEx the contract to you?

Thank you,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

EXHIBIT #055

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Thursday, September 13, 2007 3:10 PM |
| **To:** | Hawkins, Kevin J. |
| **Subject:** | RE: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract |

Thanks for the information Kevin and well said by Everett.

In the future, if you have any requests of this nature, please let me know before responding to Everett or anyone else making such a request  This is the type of information that I am sure both Helen and Diane would want to know about.

Thanks in advance.

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 13, 2007 3:00 PM
**To:** Tabourn, Everett M.
**Subject:** RE: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract

This is what I do, the pleasure was all mine☺

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

**From:** Tabourn, Everett M.
**Sent:** Thursday, September 13, 2007 2:58 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract

Super!!!   Thanks Kevin.   ET

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 13, 2007 2:37 PM
**To:** Tabourn, Everett M.
**Subject:** RE: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract

Hey Everett,

CFO/AD (M) Stinnett's Contribution:

1)    Informally resolved the Pay Demo pay out matter which allowed the bargaining team to sign the Pay Demo Article; and
2)    Briefed Edgar Domenech, the former Deputy Director on the bargaining process and acquired delegation authority for negotiators and the team.

DAD Michalic's Contribution:

1)    Brought to the table an Executive manager's point of view in regards to the Union and negotiation process (Senior manager);
2)    She was the Chief management spokesperson and demonstrated tremendous patience during the entire negotiation process;
3)    Knew the bureau's position, fallback, and final position;
4)    Attempted to explain ATF's rationale for positions and disagreement with NTEU's proposals;
5)    Offered alternatives to impasse issues during the negotiation process; and most importantly
6)    Performed the role as Good cop while I acted as the Bad cop through the process which often distracted NTEU from the issue in question.

If you have any questions, let me know.

Thanks,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Tabourn, Everett M.
**Sent:** Thursday, September 13, 2007 1:58 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract

Good Afternoon Kevin,

Thanks for the quick turnaround and feedback.  Do you have anything related to DAD Vivian Michalic's accomplishments as Lead Negotiator or anything that CFO/AD(M) Stinnett may have done to bring the process to closure in the best interest of ATF.  Just a few bulleted statements would work for their **SES appraisals.**  (In other words, were there any important highlights/contributions besides appointing you and dedicating additional resources to help you?  Please advise.  Thanks!

*Everett M. Tabourn*
*Chief, MAS/OM*
*4-N-624*
*202.648.7734*

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 13, 2007 1:46 PM
**To:** Tabourn, Everett M.
**Subject:** Ms. Smith's Contribution to the ATF/NTEU 2007 Contract
**Importance:** High

Good Afternoon Everett,

Per our discussion, Ms. Smith has been an invaluable asset to the completion of the ATF/NTEU 2007 Contract. Ms. Smith has formatted the contract for consistency and readability.  In addition, she has been a pleasure to work with and prior to her Telework day off she made sure we touched bases and assisted with anything that needed to be completed in order to get the contract ready for Agency Head Review.

I like to thank you for allowing me the opportunity to have her assistance and giving me the opportunity to comment on her contribution to the ATF/NTEU 2007 Contract.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, July 09, 2007 7:32 AM
**To:** Smith, Bernadette M.
**Cc:** Tabourn, Everett M.; Boykin, Lisa T.
**Subject:** Finalizing the ATF/NTEU Electronic Contract
**Importance:** High

Good Morning Bernadette,

You have done a wonderful job. If you don't mind, can you finalize the page bookmarks and if it is not too much trouble, square the paragraphs? I have done all the lists with numbers, the lists with alphabets needs to be done.

For example:

A.  In the administration of all matters covered by this Agreement,
    the Union and the Employer are governed by the following:

Thank you, if you have any questions drop me a line or call.

Everett – Ms. Smith has done a wonderful job and thank you for the support.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-927-8542*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

## Hawkins, Kevin J.

**From:**  Filler, Diane E.

**Sent:**  Thursday, September 13, 2007 3:28 PM

**To:**  Hawkins, Kevin J.

**Subject:** RE: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract

Kevin, I am not sure what your question is.  I think it would have been appropriate to let Lisa know that Everett has asked you for this type of information so that Lisa could assess if she wanted to provide input or not.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 13, 2007 3:22 PM
**To:** Filler, Diane E.
**Subject:** FW: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract

I am not sure if I am suppose to respond directly to you?

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 13, 2007 3:18 PM
**To:** Boykin, Lisa T.
**Cc:** Oates, Helen M.
**Subject:** RE: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract

Lisa,

I am not trying to make a big deal about this; however, I was asked to respond as soon as possible.  If the front office asks me to respond as soon as possible you don't want me respond before sending it through you, Helen, and Diane?

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Thursday, September 13, 2007 3:10 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract

Thanks for the information Kevin and well said by Everett.

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Thursday, September 13, 2007 3:45 PM |
| **To:** | Hawkins, Kevin J. |
| **Cc:** | Oates, Helen M. |

**Subject:** RE: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract

Kevin,

I asked that you merely let me know and in doing so. If you have time constraints associated with that request, then I expect you to tell me that as well.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 13, 2007 3:18 PM
**To:** Boykin, Lisa T.
**Cc:** Oates, Helen M.
**Subject:** RE: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract

Lisa,

I am not trying to make a big deal about this; however, I was asked to respond as soon as possible. If the front office asks me to respond as soon as possible you don't want me respond before sending it through you, Helen, and Diane?

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Thursday, September 13, 2007 3:10 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract

Thanks for the information Kevin and well said by Everett.

In the future, if you have any requests of this nature, please let me know before responding to Everett or anyone else making such a request  This is the type of information that I am sure both Helen and Diane would want to know about.

Thanks in advance.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 13, 2007 3:00 PM
**To:** Tabourn, Everett M.
**Subject:** RE: Ms. Smith's Contribution to the ATF/NTEU 2007 Contract

11/2/2007



# Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Thursday, September 13, 2007 3:32 PM |
| **To:** | Filler, Diane E.; Boykin, Lisa T. |
| **Cc:** | Oates, Helen M.; Randolph, Leslie |
| **Subject:** | RE: Agency Head Review |
| **Sensitivity:** | Confidential |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | Filler, Diane E. | Delivered: 9/13/2007 3:32 PM | |
| | Boykin, Lisa T. | Delivered: 9/13/2007 3:32 PM | Read: 9/13/2007 3:32 PM |
| | Oates, Helen M. | Delivered: 9/13/2007 3:32 PM | Read: 9/14/2007 8:26 AM |
| | Randolph, Leslie | Delivered: 9/13/2007 3:32 PM | |

In the future, how I am going to know when to respond to all at the same time or send emails through Lisa, wait for her response, then send it to Helen, etc.?

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Filler, Diane E.
**Sent:** Thursday, September 13, 2007 3:29 PM
**To:** Hawkins, Kevin J.; Boykin, Lisa T.
**Cc:** Oates, Helen M.; Randolph, Leslie
**Subject:** RE: Agency Head Review
**Sensitivity:** Confidential

You can respond to all.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 13, 2007 3:20 PM
**To:** Filler, Diane E.; Boykin, Lisa T.; Michalic, Vivian B.
**Cc:** Oates, Helen M.; Randolph, Leslie
**Subject:** RE: Agency Head Review
**Sensitivity:** Confidential

Diane,

Should I send my response to Lisa, then Helen, prior to responding to your email?

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*

11/2/2007

*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Filler, Diane E.
**Sent:** Thursday, September 13, 2007 3:01 PM
**To:** Boykin, Lisa T.; Hawkins, Kevin J.; Michalic, Vivian B.
**Cc:** Oates, Helen M.; Randolph, Leslie
**Subject:** RE: Agency Head Review
**Sensitivity:** Confidential

Kevin,
Can you also tell me where we stand in the ground rules regarding a severability clause?

---

**From:** Boykin, Lisa T.
**Sent:** Thursday, September 13, 2007 9:40 AM
**To:** Hawkins, Kevin J.; Michalic, Vivian B.
**Cc:** Filler, Diane E.; Oates, Helen M.; Randolph, Leslie
**Subject:** RE: Agency Head Review
**Sensitivity:** Confidential

Thank you Kevin for sending this e-mail and based on our discussion this morning, I briefed Helen and Diane and would like to review the response with you before sending it forward for comment.

Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 13, 2007 8:43 AM
**To:** Michalic, Vivian B.
**Cc:** Filler, Diane E.; Oates, Helen M.; Boykin, Lisa T.; Randolph, Leslie
**Subject:** Agency Head Review
**Importance:** High
**Sensitivity:** Confidential

Good Morning,

I just received DOJ's agency head review response. In summary, DOJ was concerned with some of the arrangements. In other words, the review focused on whether or not the arrangements appeared to be "appropriate" or "inappropriate," which is often a matter of opinion. Instead of debating the arrangements, minor word changes/additions would address DOJ's concerns.

Overall, DOJ commented on 11 of the 48 articles (23%); however, at this time the other articles are technically approved. In my opinion, the best approach is addressing DOJ's comments and conferring with NTEU on their proposed approach/response prior to submitting ATF's official response to DOJ. I will be preparing a response to address DOJ's comments/concerns and will forward the response ASAP.

Thank you,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Friday, September 14, 2007 9:41 AM |
| **To:** | Boykin, Lisa T. |
| **Subject:** | RE: Agency Head Review |
| **Sensitivity:** | Confidential |

**Tracking:**

| **Recipient** | **Delivery** | **Read** |
|---|---|---|
| Boykin, Lisa T. | Delivered: 9/14/2007 9:41 AM | Read: 9/14/2007 10:03 AM |

The severability clause is in the ground rules.  No, however, once our ducks are in a row, in regards to DOJ's comments I plan on talking to NTEU.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Friday, September 14, 2007 9:16 AM
**To:** Hawkins, Kevin J.
**Subject:** RE: Agency Head Review
**Sensitivity:** Confidential

Kevin, I reviewed 7114 c and did not see the language you referenced below.  Can you tell me where you found this language and otherwise providing guidance?  Also, since I did not find the language in the statute, is this language in the ground rules that were agreed upon?

Also, did the union provide any feedback regarding their ratification process and where they are?

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, September 14, 2007 7:31 AM
**To:** Filler, Diane E.
**Cc:** Oates, Helen M.; Randolph, Leslie; Boykin, Lisa T.; Michalic, Vivian B.
**Subject:** RE: Agency Head Review
**Sensitivity:** Confidential

Good Morning,

Per our conversation yesterday and in response to a severability clause, **the ground rules state the following:**

1.    **AUTHORITY**

The head of the Agency reserves the right, pursuant to Section 7114(c) of the Statute, to disapprove any reopened articles in whole or in part.  Should the head of the Agency disapprove a discrete article or portion thereof; by mutual agreement the parties will determine whether to

11/2/2007

implement those portions of the article(s) which were not disapproved or reopen and/or
renegotiate the disputed article as a whole or the specific provisions which were disapproved.

The Union retains the right to subject the contract to ratification. If the agreement is not ratified,
by mutual agreement the parties will resume negotiations on issues identified by the Union in a
manner consistent with the procedures established in this MOU.

Therefore, as soon as I've completed a response to DOJ's comments they will be sent up the chain prior to
discussing the matter with NTEU.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Filler, Diane E.
**Sent:** Thursday, September 13, 2007 3:01 PM
**To:** Boykin, Lisa T.; Hawkins, Kevin J.; Michalic, Vivian B.
**Cc:** Oates, Helen M.; Randolph, Leslie
**Subject:** RE: Agency Head Review
**Sensitivity:** Confidential

Kevin,
Can you also tell me where we stand in the ground rules regarding a severability clause?

---

**From:** Boykin, Lisa T.
**Sent:** Thursday, September 13, 2007 9:40 AM
**To:** Hawkins, Kevin J.; Michalic, Vivian B.
**Cc:** Filler, Diane E.; Oates, Helen M.; Randolph, Leslie
**Subject:** RE: Agency Head Review
**Sensitivity:** Confidential

Thank you Kevin for sending this e-mail and based on our discussion this morning, I briefed Helen and Diane and
would like to review the response with you before sending it forward for comment.

Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 13, 2007 8:43 AM
**To:** Michalic, Vivian B.
**Cc:** Filler, Diane E.; Oates, Helen M.; Boykin, Lisa T.; Randolph, Leslie
**Subject:** Agency Head Review
**Importance:** High
**Sensitivity:** Confidential

Good Morning,

I just received DOJ's agency head review response. In summary, DOJ was concerned with some of the
arrangements. In other words, the review focused on whether or not the arrangements appeared to be
"appropriate" or "inappropriate," which is often a matter of opinion. Instead of debating the arrangements, minor
word changes/additions would address DOJ's concerns.

Overall, DOJ commented on 11 of the 48 articles (23%); however, at this time the other articles are technically approved. In my opinion, the best approach is addressing DOJ's comments and conferring with NTEU on their proposed approach/response prior to submitting ATF's official response to DOJ. I will be preparing a response to address DOJ's comments/concerns and will forward the response ASAP.

Thank you,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

## Hawkins, Kevin J.

**From:**     Boykin, Lisa T.
**Sent:**     Friday, September 14, 2007 10:04 AM
**To:**       Hawkins, Kevin J.
**Subject:**  RE: Agency Head Review
**Sensitivity:** Confidential

Not sure I understand your reply entirely...I will stop by.

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, September 14, 2007 9:41 AM
**To:** Boykin, Lisa T.
**Subject:** RE: Agency Head Review
**Sensitivity:** Confidential

The severability clause is in the ground rules.  No, however, once our ducks are in a row, in regards to DOJ's comments I plan on talking to NTEU.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Friday, September 14, 2007 9:16 AM
**To:** Hawkins, Kevin J.
**Subject:** RE: Agency Head Review
**Sensitivity:** Confidential

Kevin, I reviewed 7114 c and did not see the language you referenced below.  Can you tell me where you found this language and otherwise providing guidance?  Also, since I did not find the language in the statute, is this language in the ground rules that were agreed upon?

Also, did the union provide any feedback regarding their ratification process and where they are?

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, September 14, 2007 7:31 AM
**To:** Filler, Diane E.
**Cc:** Oates, Helen M.; Randolph, Leslie; Boykin, Lisa T.; Michalic, Vivian B.
**Subject:** RE: Agency Head Review
**Sensitivity:** Confidential

Good Morning,

Per our conversation yesterday and in response to a severability clause, **the ground rules state the following:**

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Friday, September 14, 2007 8:57 AM |
| **To:** | Oates, Helen M. |
| **Subject:** | RE: Agency Head Review |
| **Sensitivity:** | Confidential |

**Tracking:** **Recipient**    **Delivery**    **Read**

Oates, Helen M. Delivered: 9/14/2007 8:57 AM Read: 9/14/2007 8:58 AM

Good Morning Helen,

It is Friday, and I am not trying to have the issue blown out of proportion; thus, I am just responding to you. The protocol you suggested is fine for hot button issues; however, this protocol for simple request or questions/emails which I receive all day will definitely affect my customer service. I was merely asked to respond to a question which I could only answer. Based on my response I was requested to give my input in an email. I saw no harm in responding and the simplicity of the issue, in my opinion, did not warrant going through my immediate supervisor first; however, I did inform Lisa afterwards about the matter.

I was told to keep my immediate supervisor abreast of hot button issues not my daily communication/responses to customers. Am I being asked to send everything I do through Lisa (i.e. email responses, verbal advice, etc.) prior to interacting with a customer? No offense intended, but, the higher your grade the less supervision is required, in fact, this standard justifies my grade level. I just want to come to work, do what's asked of me, do my eight hours, and go home; however, these types of issues which have been going on since negotiations concluded are frustrating, and confusion would be making light of the severity of the issue.

Sorry, for the long response☺

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Oates, Helen M.
**Sent:** Friday, September 14, 2007 8:27 AM
**To:** Hawkins, Kevin J.; Filler, Diane E.; Boykin, Lisa T.
**Cc:** Randolph, Leslie
**Subject:** RE: Agency Head Review
**Sensitivity:** Confidential

I can understand your confusion! Maybe this would work. You send your response to Lisa and she sends to me and Diane. Would that work?

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 13, 2007 3:32 PM
**To:** Filler, Diane E.; Boykin, Lisa T.
**Cc:** Oates, Helen M.; Randolph, Leslie
**Subject:** RE: Agency Head Review

**Hawkins, Kevin J.**

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Monday, September 17, 2007 1:49 PM |
| **To:** | Camp, Nikki D.; Hawkins, Kevin J.; Hall-Evans, Robin E.; Gill, Wanda J.; Fowler, Audrey A.; Crawford, Dana D.; Siler, Tanika A. |
| **Subject:** | Sign in/out log is located in Room 2E-341! |

To all:

Last week I informed you that the sign in/out log would begin again. It is now located in room 2E-341.

Thanks.

*Lisa T. Boykin, Chief*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Washington, DC 20226*
*202-648-7489 (work)*
*Lisa.Boykin@atf.gov*

## Hawkins, Kevin J.

**From:** Boykin, Lisa T.

**Sent:** Tuesday, September 18, 2007 4:01 PM

**To:** Hawkins, Kevin J.

**Subject:** Question regarding bu employees and training status

Kevin:

I was asked if bu employees in training status who, as part of the course have to be in training also on Saturdays and some Sundays are entitled to overtime pay. I could not find anything in the cba can you look into this for me.

Thanks.

*Lisa T. Boykin, Chief*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Washington, DC 20226*
*202-648-7489 (work)*
*Lisa.Boykin@atf.gov*

11/2/2007

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Wednesday, September 19, 2007 3:08 PM |
| **To:** | Hawkins, Kevin J.; Michalic, Vivian B. |
| **Cc:** | Filler, Diane E.; Oates, Helen M.; Randolph, Leslie |
| **Subject:** | RE: Agency Head Review Response |
| **Sensitivity:** | Confidential |

Thanks Kevin.

Leslie, once you have had an opportunity to review DOJ's comments as well as the most recent agency reply, based on our earlier conversation, I would like to sit down with you and Kevin on the call to Cathy Emerson.

Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, September 19, 2007 1:44 PM
**To:** Michalic, Vivian B.
**Cc:** Filler, Diane E.; Oates, Helen M.; Boykin, Lisa T.; Randolph, Leslie
**Subject:** Agency Head Review Response
**Sensitivity:** Confidential

I have attached the revised document in accordance with the agreed upon changes per this morning's meeting.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC 20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*



## Hawkins, Kevin J.

**From:**  Michalic, Vivian B.
**Sent:**  Monday, September 24, 2007 1:37 PM
**To:**  Boykin, Lisa T.; Hawkins, Kevin J.
**Cc:**  Oates, Helen M.
**Subject:** RE: Upcoming Contract Training Sessions

Keep in mind that the OST bargaining employees are also auditors.

---

**From:** Boykin, Lisa T.
**Sent:** Monday, September 24, 2007 1:07 PM
**To:** Michalic, Vivian B.; Hawkins, Kevin J.
**Cc:** Oates, Helen M.
**Subject:** RE: Upcoming Contract Training Sessions

Kevin:

In speaking to Vivian's point regarding EPS and OST management, since each Directorate had a representative on the negotiating team, is there an opportunity to reach out to them and include them in on the planning for contract training?  Once decided by each directorate, what level of management would benefit most, then maybe the managers from the San Francisco Lab for instance can attend the Dallas training, and those from the Atlanta Lab location can attend Tampa and those from the new Lab in Maryland can attend HQ training etc.

Thanks.

---

**From:** Michalic, Vivian B.
**Sent:** Monday, September 24, 2007 12:54 PM
**To:** Hawkins, Kevin J.
**Cc:** Boykin, Lisa T.; Oates, Helen M.
**Subject:** RE: Upcoming Contract Training Sessions

I thought that we discussed having someone else in your office be able to do the training I think that we need to ensure that the proper managers are trained so I am not sure if it should be the SAC's or DIO's for FO and what the level of attendance should be for the other directorates.  As an example where do we plan to instruct EPS and OST managers?  As you mentioned the last time we discussed this was several months ago so I really can't remember how we left things.

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, September 24, 2007 11:58 AM
**To:** Michalic, Vivian B.
**Subject:** RE: Upcoming Contract Training Sessions

Vivian,

We all met after the negotiations concluded (Melanie, You, Diane, Marcia, Russ, & Leslie).  At this meeting the training team was appointed which consist of: Marcia & Russ (Field Ops.), Leslie (Counsel), myself (OM), and TPD is the coordinator.

TPD has not scheduled the sessions yet.  The proposed sites per TPD are: Tampa, New Orleans, Dallas, Headquarters, and the DC Field office.  TPD will be having a Contract training workshop with the team all day

tomorrow. In reply to who will be instructing, I have prepared slides based on normal contract training; however, the contract training team and TPD will go over the slides and TPD's proposed training plans tomorrow at the workshop.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC 20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Michalic, Vivian B.
**Sent:** Monday, September 24, 2007 11:40 AM
**To:** Hawkins, Kevin J.
**Subject:** RE: Upcoming Contract Training Sessions
**Sensitivity:** Confidential

Kevin,
I haven't been in discussion with TPD about the training at all. When are the sessions scheduled, where, who is instructing?

Vivian

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, September 24, 2007 11:33 AM
**To:** Michalic, Vivian B.
**Subject:** Upcoming Contract Training Sessions
**Sensitivity:** Confidential

Good Morning Vivian,

TPD is inquiring on the estimated attendance at the five (5) upcoming contract training sessions. Will SACS and ASACS be present?

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC 20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*



## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Tuesday, October 02, 2007 9:12 AM |
| **To:** | Boykin, Lisa T. |
| **Cc:** | Oates, Helen M.; Filler, Diane E.; Michalic, Vivian B. |
| **Subject:** | RE: Meeting on the Contract Training Points |
| **Sensitivity:** | Confidential |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | Boykin, Lisa T. | Delivered: 10/2/2007 9:12 AM | Read: 10/2/2007 10:47 AM |
| | Oates, Helen M. | Delivered: 10/2/2007 9:12 AM | Read: 10/2/2007 2:53 PM |
| | Filler, Diane E. | Delivered: 10/2/2007 9:12 AM | |
| | Michalic, Vivian B. | Delivered: 10/2/2007 9:12 AM | Read: 10/2/2007 9:23 AM |

Prior to your response, I already came to your office and discussed the matter.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC 20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Monday, October 01, 2007 4:56 PM
**To:** Hawkins, Kevin J.
**Cc:** Oates, Helen M.; Filler, Diane E.; Michalic, Vivian B.
**Subject:** RE: Meeting on the Contract Training Points
**Sensitivity:** Confidential

We can talk tomorrow – busy with PRB all day today.

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, October 01, 2007 10:56 AM
**To:** Boykin, Lisa T.
**Cc:** Oates, Helen M.; Filler, Diane E.; Michalic, Vivian B.
**Subject:** RE: Meeting on the Contract Training Points
**Sensitivity:** Confidential

I'm coming down to your office.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*

*Room 2E327*
*Washington, DC 20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Monday, October 01, 2007 10:55 AM
**To:** Hawkins, Kevin J.
**Cc:** Oates, Helen M.; Filler, Diane E.; Michalic, Vivian B.
**Subject:** RE: Meeting on the Contract Training Points
**Sensitivity:** Confidential

Yes, I did see it on your report thanks, but I still wanted to discuss the matter. Also, I would like to discuss the offer Robin made so that I can have a chance to determine what and how I would like to move the issue forward to management. Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, October 01, 2007 10:53 AM
**To:** Boykin, Lisa T.
**Cc:** Oates, Helen M.; Filler, Diane E.; Michalic, Vivian B.
**Subject:** RE: Meeting on the Contract Training Points
**Sensitivity:** Confidential

Good Morning Lisa-The DOJ issue is in my weekly report submitted on Friday; however, we can still discuss (Waiting on Leslie's written comments).

Vivian requested that I meet with her last week; however, due to scheduling conflicts the meeting was postponed, this is why I have not discussed this matter with you. Once again, if you still like to meet and discuss, no problem☺.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC 20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Monday, October 01, 2007 10:46 AM
**To:** Hawkins, Kevin J.
**Cc:** Oates, Helen M.; Filler, Diane E.; Michalic, Vivian B.
**Subject:** RE: Meeting on the Contract Training Points
**Sensitivity:** Confidential

Good morning Kevin. I know that Leslie was in this meeting last week so I am wondering if you had a chance to speak with about her review of DOJ's comments on the contract. If you have I would like to discuss this briefly and if not can you follow up with her? Thanks.

Also, I spoke with Robin McBeth this morning and she told me that during the meeting, she offered to MELRB to

attend the training sessions, can we discuss this as well?  Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Friday, September 28, 2007 10:06 AM
**To:** Boykin, Lisa T.
**Cc:** Oates, Helen M.; Filler, Diane E.; Michalic, Vivian B.
**Subject:** RE: Meeting on the Contract Training Points
**Sensitivity:** Confidential

The only decisions which we already discussed are:

1)      First, OM will do internal training;
2)      Second, Exec. Staff Training/Briefing (Don't know when).

What's new is:

   1)   Headquarters training will be first (Projected early Dec);
   2)   Field Training last (Projected Jan-Early Feb).

Do we have any tasks to complete as a result?  No, slides have been updated/finalized

When is the next meeting?  If one is needed, it would depend on the date of DOJ's agency head approval and the completion of the Director's signing/ceremony.


*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC  20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Friday, September 28, 2007 9:42 AM
**To:** Hawkins, Kevin J.
**Cc:** Oates, Helen M.
**Subject:** RE: Meeting on the Contract Training Points

Thanks for the feedback.  What decisions if any were made during the meeting?  Do we have any tasks to complete as a result?  When is the next meeting?  Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 27, 2007 7:29 AM
**To:** Boykin, Lisa T.
**Cc:** Oates, Helen M.
**Subject:** RE: Meeting on the Contract Training Points

Good Morning,

Yes, TPD did not feel they needed to, at least at this point.  In my opinion, Robin McBeth & Tom Klein was not on the same page.  Nonetheless, per my previous emails I will communicate the updates to OM.

11/2/2007

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC  20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Wednesday, September 26, 2007 4:05 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Meeting on the Contract Training Points

I am glad to hear that it went well today, was there any discussion as to who would communicate t his to Vivian? Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, September 26, 2007 3:38 PM
**To:** Boykin, Lisa T.
**Subject:** RE: Meeting on the Contract Training Points

Lisa, the workshop went well.  The training team thought the slides clearly broke down the articles and sections. As far as required attendees, that issue will be addressed by TPD's upper-management and FO.  In summary, Billy Hoover may have to make the call, not OM.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC  20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Wednesday, September 26, 2007 2:07 PM
**To:** Hawkins, Kevin J.
**Subject:** Meeting on the Contract Training Points

Kevin, can you give me an idea of how the meeting is going today?  Thanks.

*Lisa T. Boykin, Chief*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Washington, DC  20226*
*202-648-7489 (work)*

11/2/2007

*Lisa.Boykin@atf.gov*

## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Tuesday, October 02, 2007 10:48 AM |
| **To:** | Hawkins, Kevin J. |
| **Cc:** | Oates, Helen M.; Filler, Diane E.; Michalic, Vivian B. |
| **Subject:** | RE: Meeting on the Contract Training Points |
| **Sensitivity:** | Confidential |

I had to go and we did not discuss it in full.  Please come to my office to meet now.  Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Tuesday, October 02, 2007 9:12 AM
**To:** Boykin, Lisa T.
**Cc:** Oates, Helen M.; Filler, Diane E.; Michalic, Vivian B.
**Subject:** RE: Meeting on the Contract Training Points
**Sensitivity:** Confidential

Prior to your response, I already came to your office and discussed the matter.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC  20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Monday, October 01, 2007 4:56 PM
**To:** Hawkins, Kevin J.
**Cc:** Oates, Helen M.; Filler, Diane E.; Michalic, Vivian B.
**Subject:** RE: Meeting on the Contract Training Points
**Sensitivity:** Confidential

We can talk tomorrow – busy with PRB all day today.

---

**From:** Hawkins, Kevin J.
**Sent:** Monday, October 01, 2007 10:56 AM
**To:** Boykin, Lisa T.
**Cc:** Oates, Helen M.; Filler, Diane E.; Michalic, Vivian B.
**Subject:** RE: Meeting on the Contract Training Points
**Sensitivity:** Confidential

I'm coming down to your office.

*Kevin J. Hawkins*
*National Negotiator, ATF*

11/2/2007

# Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Boykin, Lisa T. |
| **Sent:** | Friday, September 28, 2007 9:42 AM |
| **To:** | Hawkins, Kevin J. |
| **Cc:** | Oates, Helen M. |

**Subject:** RE: Meeting on the Contract Training Points

Thanks for the feedback. What decisions if any were made during the meeting? Do we have any tasks to complete as a result? When is the next meeting? Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, September 27, 2007 7:29 AM
**To:** Boykin, Lisa T.
**Cc:** Oates, Helen M.
**Subject:** RE: Meeting on the Contract Training Points

Good Morning,

Yes, TPD did not feel they needed to, at least at this point. In my opinion, Robin McBeth & Tom Klein was not on the same page. Nonetheless, per my previous emails I will communicate the updates to OM.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC 20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Wednesday, September 26, 2007 4:05 PM
**To:** Hawkins, Kevin J.
**Subject:** RE: Meeting on the Contract Training Points

I am glad to hear that it went well today, was there any discussion as to who would communicate t his to Vivian? Thanks.

---

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, September 26, 2007 3:38 PM
**To:** Boykin, Lisa T.
**Subject:** RE: Meeting on the Contract Training Points

Lisa, the workshop went well. The training team thought the slides clearly broke down the articles and sections. As far as required attendees, that issue will be addressed by TPD's upper-management and FO. In summary, Billy Hoover may have to make the call, not OM.

*Kevin J. Hawkins*
*National Negotiator, ATF*

11/2/2007

Human Resources Division
Management/Employee and Labor Relations Branch
99 New York Avenue, NE
Room 2E327
Washington, DC 20226
(W) 202-648-7484
(C) 202-441-1151
Kevin.Hawkins@ATF.gov

---

**From:** Boykin, Lisa T.
**Sent:** Wednesday, September 26, 2007 2:07 PM
**To:** Hawkins, Kevin J.
**Subject:** Meeting on the Contract Training Points

Kevin, can you give me an idea of how the meeting is going today?  Thanks.

*Lisa T. Boykin, Chief*
Management/Employee and Labor Relations Branch
99 New York Avenue, NE
Washington, DC 20226
202-648-7489 (work)
*Lisa.Boykin@atf.gov*

**Hawkins, Kevin J.**

---

| | |
|---|---|
| **Subject:** | Union Notification Regarding New Field Divisions |
| **Location:** | Vivian's Office 5N530 |
| **Start:** | Wed 10/17/2007 2:00 PM |
| **End:** | Wed 10/17/2007 3:00 PM |
| **Recurrence:** | (none) |
| **Meeting Status:** | Accepted |
| **Required Attendees:** | Jones, Charlotte Y.; Michalic, Vivian B.; Boykin, Lisa T.; Hawkins, Kevin J. |
| **Importance:** | High |


## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Filler, Diane E. |
| **Sent:** | Thursday, October 18, 2007 1:16 PM |
| **To:** | Hawkins, Kevin J.; Michalic, Vivian B. |
| **Cc:** | Oates, Helen M.; Boykin, Lisa T.; Randolph, Leslie |
| **Subject:** | RE: EPS Last Final Ofr |
| **Sensitivity:** | Confidential |

I guess I am surprised the the term "final offer". These don't hit me as offers, but as positions. The first "offer" basically states -- we are not agreeing to any telework for these employees. The second "offer" states under C, that they can participate in situational telework -- but further outlines what the LIE's Can't do while teleworking. If we really want to propose some sort of offer, I would think we would want to outline what kinds of work they do perform may be suitable for telework. Additionally, do we enough support for our position(s), sufficient to convince the panel?

I know I haven't been directly involved in this issue, but from the 30,000 foot view, these are my reactions for what it is worth.

---

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, October 17, 2007 3:23 PM
**To:** Michalic, Vivian B.
**Cc:** Filler, Diane E.; Oates, Helen M.; Boykin, Lisa T.
**Subject:** FW: EPS Last Final Ofr
**Sensitivity:** Confidential

Vivian,

Per your request, I have attached ATF's final offer; of course, depending on Audrey's selection of the two offers.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC 20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Wednesday, October 17, 2007 10:19 AM
**To:** Stucko, Audrey M.
**Cc:** Randolph, Leslie; Boykin, Lisa T.
**Subject:** FW: EPS Last Final Ofr
**Sensitivity:** Confidential

Good Morning Audrey,

Leslie, Lisa, and I met this morning and concurred on ATF's Proposed Final Offer. Of course, which offer

proposed to the panel is your call; thus, please inform the parties of your position.

Thank you,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC  20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Randolph, Leslie
**Sent:** Wednesday, October 17, 2007 9:50 AM
**To:** Hawkins, Kevin J.
**Subject:** EPS Last Final Ofr

Please see the attached proposed draft offers that we can review and submit to Audrey.


## Hawkins, Kevin J.

| | |
|---|---|
| **From:** | Hawkins, Kevin J. |
| **Sent:** | Thursday, October 04, 2007 10:47 AM |
| **To:** | Carter, Ronnie A. |
| **Cc:** | Torres, Anthony N.; Silas, Dora; Ferguson-Russ, Robynn F. |
| **Subject:** | FW: Close of 2006-2007 Evaluation Period - Submit your self evaluation and accomplishments |
| **Importance:** | High |
| **Sensitivity:** | Confidential |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | Carter, Ronnie A. | Delivered: 10/4/2007 10:47 AM | Read: 10/4/2007 4:31 PM |
| | Torres, Anthony N. | Delivered: 10/4/2007 10:47 AM | Read: 10/5/2007 7:09 PM |
| | Silas, Dora | Delivered: 10/4/2007 10:47 AM | |
| | Ferguson-Russ, Robynn F. | Delivered: 10/4/2007 10:47 AM | Read: 10/4/2007 11:03 AM |

Good Morning Mr. Carter,

First, I want to thank you for taking the time out of your busy schedule to speak to me last Friday. In addition, for reviewing the information I provided.

I do not want to seem impatient; however, the harassment/hostile work environment I am in is escalating every day. The migraine headaches, upset stomachs, and rise in blood pressure are becoming a daily torture I must endure to make it through the day. Per my doctor's analysis I am really concerned with me having high cholesterol, a high risk of diabetes (Family history) and varied blood pressure levels which are a result of stress. I went to the EEO office this morning and will be requesting mediation, I am willing to do my part to resolve this situation; however, an immediate resolution from you would be highly appreciated (State of mind & health).

Thank you for your time,

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC  20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, October 04, 2007 9:30 AM
**To:** Boykin, Lisa T.
**Cc:** Oates, Helen M.; Hannon, Ann Marie; Randolph, Leslie
**Subject:** RE: Close of 2006-2007 Evaluation Period - Submit your self evaluation and accomplishments
**Sensitivity:** Confidential

Lisa, my response was not sent to the staff; thus, my email was not intended to question your knowledge of the process; I merely provided my advice/opinion as I would on any subject sent to me. Your statement which states, "While I received supporting information, to include e-mails, stats, etc. **If you have not done so,** I also need you to submit your self evaluation in the form of a narrative, using your PWP/critical elements and standards to

11/2/2007

describe your performance in each, I need this information no later than Tuesday, October 9, 2007," could be interpreted as the self-evaluation is "needed" in other words "mandatory" in order for the ratings to be completed.

In conclusion, if my advice/opinion is not wanted when you send emails to me, just say so, and I will comply.


*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC  20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Thursday, October 04, 2007 8:51 AM
**To:** Hawkins, Kevin J.
**Cc:** Oates, Helen M.; Hannon, Ann Marie; Randolph, Leslie
**Subject:** RE: Close of 2006-2007 Evaluation Period - Submit your self evaluation and accomplishments
**Sensitivity:** Confidential

Good morning,

I appreciate you providing me with an excerpt from the order as that helps me to appreciate that you are as familiar with the process **as I am**.  Providing feedback is certainly *your option* and not a requirement nor did I make it mandatory.  I wanted to afford everyone on my staff the opportunity to describe their performance for this rating period before receiving an evaluation from me.


---

**From:** Hawkins, Kevin J.
**Sent:** Thursday, October 04, 2007 8:30 AM
**To:** Boykin, Lisa T.
**Cc:** Oates, Helen M.; Hannon, Ann Marie; Randolph, Leslie
**Subject:** RE: Close of 2006-2007 Evaluation Period - Submit your self evaluation and accomplishments
**Sensitivity:** Confidential

Good Morning,

**I submitted my accomplishments and some supporting documents**; however, employees are not required to submit self-evaluations (Narratives) describing their
performance.  Employees have two responsibilities in accordance with the current ATF O. 2400.6 order:

AUTHORITY AND RESPONSIBILITY.  Responsibility is hereby delegated as follows:

    a.    The Chief, Personnel Division, is responsible for:

        (1)    Developing and implementing the ATF Performance Management System plans which ensure that employees and senior executives are periodically informed about their on-the-job performance.

        (2)    Administering the ATF Performance Management System and ensuring that the provisions of the ATF Performance Management System are followed throughout the

Bureau in accordance with the objectives of the program.

    (3)    Providing information to supervisors, senior executives and employees on the basic principles of the ATF Performance Management System.

    (4)    Ensuring that performance appraisals are timely prepared and that records of those appraisals are appropriately established and maintained.

b.    <u>Supervisors are responsible for</u>:

    (1)    Establishing critical elements and performance standards for positions they supervise which are not classified on standard position descriptions (SPD's).

    (2)    Approving critical elements and performance standards established by subordinate supervisors provided that the supervisor is at least at the division level in Bureau Headquarters or the Regional Director (Compliance) level in the field.

    (3)    Communicating to their subordinates their critical elements and performance standards and the expectations and consequences of performance at the various levels at the beginning of each appraisal period.

    (4)    Appraising the performance of their employees in accordance with procedures and time frames set forth in this order.

    (5)    Keeping abreast of performance evaluation responsibilities and procedures.

**c.** <u>**Employees are responsible for:**</u>

    **(1)** **Familiarizing themselves with the provisions of the ATF Performance Appraisal System.**

    **(2)** **Becoming fully cognizant of the standards of performance and critical elements of their positions.**

More importantly, there is no OPM requirement; thus, employees should not be directed to submit a self-evaluation or accomplishments. I have cc'd various parties in case the matter needs to be discussed.

*Kevin J. Hawkins*
*National Negotiator, ATF*
*Human Resources Division*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Room 2E327*
*Washington, DC 20226*
*(W) 202-648-7484*
*(C) 202-441-1151*
*Kevin.Hawkins@ATF.gov*

---

**From:** Boykin, Lisa T.
**Sent:** Wednesday, October 03, 2007 5:06 PM
**To:** Hawkins, Kevin J.; Hall-Evans, Robin E.; Crawford, Dana D.; Camp, Nikki D.; Fowler, Audrey A.; Gill, Wanda J.
**Subject:** FW: Close of 2006-2007 Evaluation Period - Submit your self evaluation and accomplishments

To all:

To date, have received some responses based on my request below, but not all.  While I received supporting information, to include e-mails, stats, ect. If you have not done so, I also need you to submit your self evaluation in the form of a narrative, using your PWP/critical elements and standards to describe your performance in each. I need this information no later than Tuesday, October 9, 2007.l

Thank you.

---

**From:** Boykin, Lisa T.
**Sent:** Monday, September 24, 2007 4:56 PM
**To:** Hall-Evans, Robin E.; Camp, Nikki D.; Crawford, Dana D.; Hawkins, Kevin J.; Gill, Wanda J.; Fowler, Audrey A.
**Subject:** Close of 2006-2007 Evaluation Period - Submit your self evaluation and accomplishments

We are coming to a close on this year's evaluation period and using your critical elements and standards, please submit a self evaluation and accomplishments to me no later than Monday October 1, 2007.  Thank you!

*Lisa T. Boykin, Chief*
*Management/Employee and Labor Relations Branch*
*99 New York Avenue, NE*
*Washington, DC 20226*
*202-648-7489 (work)*

11/2/2007

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Comparison (*Appraisal*) of Employee Performance

*(Against Identified Job Elements and Performance Standards)*

Organizational Assignment  Office of Management, Human Resources Division, Management/Employee and Labor Relations

Page 1 of 1

| Employee's Name *(Last, first, middle initial)* | | Supervisor's Name |
| --- | --- | --- |
| Hawkins, Kevin | | Lisa Boykin |

Position *(Series/Grade, Title)*

Appraisal Period
From  October 1, 2006    To    September 30, 2007

Employee's Social Security Number

| I. Job Elements *(Duties, Responsibilities and/or Objectives)* and Performance Standards *(Quantity, Quality, and Timeliness)* | II. Actual Performance | Rating *(O, EFS, FS, LTFS, or U)* |
| --- | --- | --- |
| See attached. | | |

| | | Overall Rating |
| --- | --- | --- |
| | | E FS |

**Employee Certification of Receipt and Understanding of Performance Standards and Critical Elements**

I have received these performance standards and critical elements consisting of __4__ pages this date. My supervisor has communicated performance standards and critical elements to me and I fully understand my supervisor's expectations in order for me to meet acceptable levels of performance.

Employee's Signature and Date  Kevin J. Hawkins    July 2, 2007  (Rec'd elements + standards)

**Progress Review**

Signatures and dates certify that the progress review has been conducted, and a copy of any documented comments have been provided to the employee.

Rating Official's Signature and Date

Employee's Signature and Date    April 24, 2007

**Certification of Receipt and Performance Evaluation**

Supervisor's Signature and Date    04/24/07

Employee's Signature and Date

Second Level Supervisor's Signature and Date    10/29/07

ATF Form 2410.31
Revised September 2006

Copy 1 (original) - Human Resource Division copy    Copy 2 -Employee copy    Copy 3-Supervisor copy

403021: LB
2410

MEMORANDUM TO: Kevin Hawkins
Senior Labor Negotiator
Management/Employee and Labor Relations Branch (MELRB)
Human Resources Division

FROM: Chief, Management/Employee and Labor Relations Branch

SUBJECT: Addendum to Performance Standards & Critical Elements
October 1, 2006 – September 30, 2007

As required by the Department of Justice (DOJ), and in support of the President's
Management Agenda (PMA), the Bureau is continuing to provide Performance Work
Plans (PWPs) for employees that link organizational missions, visions, core values, goals
and objectives.

As part of this implementation, I have reviewed all of the performance standards and
elements associated with your position and have identified the alignment of each to key
organizational missions and goals. Each of your elements ties to the following:

*Accountability for People/Workforce* – Definition: Addresses Human Capital
management, employee performance, skill enhancement, training and knowledge
management, hiring, family friendly program, diversity, etc.

1. Provide needed information and consultation to supervisors, managers and employees
   on labor/employee relations. Ensure that Office of Personnel Management, DOJ and
   ATF policies and procedures are understood and that resolutions balance the needs of
   management with guideline compliance.
2. Ensures security, appropriate use and timely submission of written and data responses
   to customer requests. Ensure M/ELRB's responses to requests are provided in a
   timely, reliable and relevant manner to be of greatest use to ATF managers and
   supervisors in making strategic and tactical decisions.
3. Lead, develop and monitor M/ELRB programs to further the Department's goal of
   "strengthening hiring, training, and diversity policies'.

Any within grade increases (WIGI's) or career ladder promotions for which you may be
eligible will be implemented based on a review of your performance prior to the
WIGI/Career Ladder eligibility dates.

_____    _____

Employee Signature          Date  July 2 2007 (Rec'd addendum)

Mid-Year Review For

Kevin Hawkins
Senior Labor Negotiator
Management/Employee and Labor Relations Branch (MELRB)

This memorandum serves to document our discussion of your mid-year review for the 2007 rating period wherein your performance was considered to be at or above the fully successful level. Specifically we discussed program initiatives in the area of labor relations. We also discussed the current contract negotiations and what programmatic areas of labor relations were being focused on thus far. We discussed the completion of contract negotiations as well as other local negotiations you are currently working on in meeting management's initiatives.

Further, we discussed the customer service aspects of your position and the importance of maintaining consistent communication with internal customers such as the Office of Chief Counsel and management in your Division as well as external customers regarding the status of local and national negotiations and labor initiatives that have bureau wide impact.

As discussed, based on input from the former Chief of MELRB [Adrienne Moore] and my own observations, I was pleased to note that your accomplishment with regards to the current contract negotiations is significant and has benefited the bureau greatly. You are a valuable member of this Branch.

_____           _____
Lisa T. Boykin                                                  Date of Mid-year review
Acting Chief
Management/Employee and Labor Relations Branch


My signature certifies that I have been issued my mid-year performance assessment.

_____           _____
Employee's Signature                                    Date of Mid-year review

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Comparison (Appraisal) of Employee Performance

*(Against Identified Job Elements and Performance Standards)*

Organizational Assignment    Office of Management, Human Resources Division, Management/Employee and Labor Relations

Page 1 of 1

Employee's Name *(Last, first, middle initial)*

Hawkins, Kevin

Supervisor's Name

Lisa Boykin

Position *(Series/Grade, Title)*

Appraisal Period

From   October 1, 2006     To     September 30, 2007

Employee's Social Security Number

| I. Job Elements *(Duties, Responsibilities and/or Objectives)* and Performance Standards *(Quantity, Quality, and Timeliness)* | II. Actual Performance | Rating *(O, EFS, FS, LTFS, or U)* | Overall Rating |
|---|---|---|---|
| See attached. | | | |

**Employee Certification of Receipt and Understanding of Performance Standards and Critical Elements**

I have received these performance standards and critical elements consisting of  4  pages this date. My supervisor has communicated performance standards and critical elements to me and I fully understand my supervisor's expectations in order for me to meet acceptable levels of performance.

Employee's Signature and Date   *Kevin J. Hawkins   July 2, 2007*   (Rec'll elements + standards)

**Progress Review**

Signatures and dates certify that the progress review has been conducted, and a copy of any documented comments have been provided to the employee.

Rating Official's Signature and Date

Employee's Signature and Date

**Certification of Receipt and Performance Evaluation**

Supervisor's Signature and Date

Employee's Signature and Date   04/24/07

Second Level Supervisor's Signature and Date

Copy 1 (original) - Human Resource Division copy    Copy 2 - Employee copy    Copy 3 - Supervisor copy

ATF Form 2410.31
Revised September 2006

*CRITICAL ELEMENTS AND PERFORMANCE STANDARDS*
*HUMAN RESOURCES SPECIALIST*
*(SENIOR NEGOTIATOR) GS-201-13*

### 1. Customer Service. (10%)

<u>Outstanding</u>:  In addition to the Fully Successful standard, provides independent, accurate and timely advice on the most complex and unprecedented labor relations issues.  Advice reflects expert labor relations and negotiations knowledge and creativity.  In most instances, identifies volatile and/or critical issues, anticipates management's requests in regard to them, and initiates appropriate contact to achieve resolution.  Incumbent is relied upon to resolve serious problems in order to meet management's objectives while maintaining the integrity of the labor relations program and comporting with Federal or other requirements.

<u>Fully Successful</u>:  Independently provides timely and accurate technical advice and guidance on labor relations issues to Bureau supervisors and managers, officials of other Government agencies/bureaus, other employees, and the public.  Written and oral advice is sound, well researched, and thoroughly analyzed.  Guidance is clear and unambiguous; the method of presentation is straightforward.  Oral advice is given by telephone, cell phone and at conferences, meetings and training sessions; written advice is given via E-mail or other documents.  If there is feedback it is usually positive.  Requests from management for information are addressed in a timely fashion.

<u>Unacceptable</u>:  Usually fails to independently provide accurate or timely advice.  Issues and concerns are not appropriately researched.  Presentations and written documents are disorganized and management's questions and concerns have not been resolved appropriately.

### 2. Workload Management. (10%)

<u>Outstanding</u>:  Independently manages negotiations/labor relations projects covering a diverse mix of human resource management functions.  Management initiatives are frequently completed before mandated timeframes; however, managerial/contractual impediments are taken into consideration.

Office of Management/Human Resources Division receives frequent positive feedback from customers on the efficiency of service and timeliness of assistance provided by the specialist.  Provides regular written updates on negotiations/labor relations projects as required by management, without frequent need for a reminder.

*Branch chief receives frequent positive feedback from customers on the efficiency of service and timeliness of assistance provided by the Senior Negotiator.  Provides regular written status reports on workload as required by branch chief, without need for reminder.*

· Critical Elements and Standards    2
Senior Negotiator
GS-201-13

Fully Successful:  Independently manages negotiations/labor relations projects and a diverse mix of human resource management functions.  Ensures that management initiatives are completed in accordance within established time frames.

Advises appropriate managers of situations where time frames cannot be met and the reasons for the delay.  Managers rarely receive inappropriate complaints of delays. Provides regular written updates on negotiations/labor relations projects as required by management, with few reminders necessary.

*Branch chief rarely receives legitimate complaints of delays.  Provides regular written status reports on workload as required by branch chief, with few reminders necessary.*

Unacceptable:  Requires assistance from branch chief in prioritizing work.  Assignments are rarely completed on time.  Management actions are completed and leave the branch well beyond established time frames. Branch chief frequently received valid complaints of untimely service and poor and untimely work products.

*Branch chief frequently receives valid complaints of untimely service and work products. Usually fails to provide written status reports on workload, despite repeated reminders by branch chief.*

## 3. Labor Relations Technical Support. (15%)

Outstanding:  In addition to the fully successful standard, on a continuing basis, independently provides timely and accurate technical advice and guidance on negotiations/labor relations issues to management and less senior employees.  Managers are consulted only regarding extremely complex, unique or sensitive situations.  Inquiries from entities within and outside the Bureau are prepared in a timely manner.  Draft materials are prepared with a conscious effort to minimize confusion and understanding. Written work contains clarity to address the customer's intent.  Oral presentations are given based on knowledge and the ability to interact appropriately with the recipients. Provides information to all inquiries and is able to diffuse potentially explosive situations, with little or no need for supervisory involvement.  Can be relied upon with confidence to express thoughts and issues effectively.  Makes proactive, practical recommendations to improve service delivery.

Fully Successful:  With occasional assistance from management, provides timely and accurate technical advice and guidance to management and less senior employees on a variety of labor relations issues.  Written and oral advice is current and in accordance with applicable law, regulation and policy.  The method of presentation is straightforward.  Oral advice is given by telephone, cell phone, at conferences, meetings and training sessions; written advice is given via e-mail or other documents.  Inquiries with entities inside and outside of the Bureau are handled, quickly, accurately and

Critical Elements and Standards        3
Senior Negotiator
GS-201-13

succinctly. If there is feedback it is usually positive. Requests from management for information and advice are normally addressed in a timely matter.

Unacceptable: Usually is unable to provide written or oral technical guidance without significant assistance from the branch chief. Written work products contain frequent grammatical, spelling, and structural errors. Almost always fails to develop written materials suitable for distribution to Bureau employees.

## 4. Labor Relations Program Accountability. (15%)

Outstanding: In addition to the fully successful standard, keeps abreast of potential changes in Labor Relations statute and Federal personnel regulations using professional literature, Internet and other appropriate sources to anticipate potential impact on Bureau. Independently and on own initiative reviews human resources and administrative orders, policy statements, and Bureau guidance to ensure that they are consistent with the national labor agreement. Independently and on own initiative recommends appropriate changes in policy to ensure compliance with the national labor agreement. Maintains expert knowledge of Federal personnel regulations as they relate to assigned negotiations and labor relations areas.

Fully Successful: Is fully knowledgeable of negotiations/labor relations goals and responsibilities assuring that the assigned functions are carried out in line with the established goals and responsibilities. Reviews orders, policy statements and other Bureau guidance in human resources management and administration to ensure that they are consistent with current national labor agreement and brings discrepancies to the attention of the point of contact for changes. Keeps current on Federal personnel and administrative regulations as related to assigned Labor relations areas. Coordinates with other Division, Directorate or Bureau staff when functional responsibilities overlap in order to develop and present a unified position.

Unacceptable: Does not keep abreast of the national labor relations program area, review directives/orders, and maintain current technical knowledge of Federal personnel regulations. Fails to identify and make recommendation on changes to existing directives or complete assigned work.

## 5. Negotiations. (50%)

Outstanding: Independently identifies complex situations which may generate a duty to bargain and/or potential resolution through unprecedented efforts, and provides expert advice and guidance to applicable parties. Consistently provides appropriate notice to the union of changes in working conditions; determine whether impact and implementation bargaining is required. Independently determines if interest based bargaining or alternate dispute resolution processes are appropriate. Consistently without supervision determines the negotiability of proposals during the negotiation process. Independently study and provide expert guidance on the feasibility of jointly fashioned

Critical Elements and Standards                4
Senior Negotiator
GS-201-13

recommendations by working groups, focusing on problem resolution and joint interests. Consistently leads management teams on negotiating techniques and strategies.

Fully Successful:  Requires occasional supervision in addressing complex situations which may generate a duty to bargain and/or potential resolution through unprecedented efforts, and provides expert advice and guidance to applicable parties.  Usually provides appropriate notice to the union of changes in working conditions; determine whether impact and implementation bargaining is required.  Requires occasional supervision in determining if interest based bargaining or alternate dispute resolution processes are appropriate.  Usually without supervision determines the negotiability of proposals during the negotiation process.  Requires occasional supervision when studying and providing expert guidance on the feasibility of jointly fashioned recommendations by working groups, focusing on problem resolution and joint interests.  Usually leads management teams on negotiating techniques and strategies.

Unacceptable:  Demonstrates failure or unwillingness to exhibit the initiative necessary to meet the needs of management's priorities and work in progress.

OCT  2 9  2007

403021: LTB
2410

MEMORANDUM TO:  Kevin Hawkins
                Senior Labor Negotiator
                Management Employee/Labor Relations Branch
                Human Resources Division
                Office of Management

        FROM   Chief, Management Employee/Labor Relations Branch

        SUBJECT:  Performance Appraisal
                  October 1, 2006 thru September 30, 2007

The following constitutes the evaluation of your performance.  In order to evaluate your performance, I relied upon your critical elements and standards, my observation of your performance, information I received from Bureau managers and supervisors and input from you.

### Critical Element #1 Customer Service

Kevin provides accurate and timely advice to the customers he serves. He is able to identify issues that may arise and provides solutions that address managements concerns achieving a desired result.

Based on the types of issues that have arisen during this evaluation year, Kevin's customers have varied from internal to external, from his co-workers to his first line manager up to the Deputy Director of the Bureau.  He has been responsive to those issues and has been recognized as a subject matter expert in various areas of Labor Relations. Kevin demonstrates patience in dealing with his co-workers who have sought labor relations guidance.  While Kevin has demonstrated patience in dealing with co-workers [internal customers] he has on occasion been reminded of the need improve the manner in which he interacts both verbally and in writing with all customers. Also, during the mid-year review, we discussed the customer service aspects of his position and the importance

of maintaining consistent communication with those in his management chain, as well as with customers who are seeking his expertise. During the mid-year, and on occasion, as needed thereafter, we discussed the manner in which he communicates via e-mail when he communicates with his internal customers such as the Office of Chief Counsel, DAD's and AD's. Most importantly we have had several conversations regarding how he communicates with all levels of management within his division regarding the status of local and national negotiations and labor initiatives that have bureau wide impact.

During contract negotiations between ATF and NTEU, and subsequent contract training meetings with TPD, Kevin was commended for being a hard worker, well prepared and very articulate. Concerns have been raised however regarding his receptiveness of contrary opinions from those that are not subject-matter experts in the area of Labor Relations.

Kevin does however; interact very well with the union and provides prompt and reliable advice and service. His negotiation skills are very apparent when he is interacting with the union. He has continued to build on the good relationship the Management Employee/Labor Relations Branch has had with the union. He has been instrumental in helping to clarify ways in which the Bureau now interacts with the Union. His advice to his team members in the areas of union grievances and information request has been invaluable. His approach to problem solving compliments the advice and guidance he provides to his internal and external customers and understands his role as one of the more senior members of the Branch in determining how his interactions impact decision making in the Branch, the Division and the Directorate. He has received compliments regarding his responsiveness to issues from the customers he serves. Kevin can continue to build on his awareness of the organization regarding field and headquarters programs to round out his expertise in Labor that is responsive to AT customers needs.

For this element, Kevin receives a rating commensurate with his level of performance.

**_Rating for this critical element is Fully Successful_**

---

**_Critical Element #2 Workload Management_**

Kevin's primary responsibility lies within the Labor Relations function of the Branch. While he has fulltime responsibility to this aspect of the Employee/Labor Relations function, he manages to provide assistance when needed. In February of this year, Kevin assumed responsibility for Union Space Notifications, Position Description Determinations and the notification to the union when new Employees entered-on-duty. Since assuming these responsibilities, Kevin's performance has been stellar. He has balanced the addition of these responsibilities very well while maintaining a good understanding of how these issues impact the bureau as a whole. Kevin has received

various compliments for his ability to quickly assess the steps needed to follow up on projects and seeing the project through to completion. Kevin has also reviewed various policies and orders for the bureau to include the Absenteeism policy; the Alternative Dispute Resolution Policy; Industry Operation Investigator Self Defense Training Order; The New Hardship Program and the Voluntary Transfer Program Order as well.

Kevin regularly and routinely submits his weekly status report without any reminder and usually is the first person to do so.

During the transition of bureau headquarters to the new location, Kevin provided assistance in packing and preparing files for transport to the new building location or to the MMOC. He often worked late ensuring this task was complete while continuing with his daily workload.

On occasion, in the absence of the Chief, MELRB, Kevin has served as acting Chief. On these occasions, he has maintained the daily operations of the branch ensuring when necessary that all programmatic responsibilities were accounted for.

For this element, Kevin receives a rating commensurate with his level of performance.

*Rating for this critical element is Outstanding*

---

*Critical Element #3 Labor Relations Technical Support*

As the demands on the bureau have grown over the last year, so have the demands on the labor relations program. In particular Kevin's work with the Federal Firearms Licensing Center is commendable. The Federal Firearms Licensing Center has had several issues arise over the last year when management really needed his support, advice and guidance. In particular the issues surrounding negotiability, union management interaction and providing management with technical assistance as they entered into briefings with the union on very vital and sometimes contentious issues. Kevin has provide unyielding support and unwavering advise to management. His advice and guidance has been rooted in a foundation of labor relations law, the collective bargaining agreement and through speaking to and getting to know his customer. Kevin has been involved in numerous issues involving the union some only needing his advice and counsel such as the New Critical Elements and Standards for Legal Instruments Examiners, the ATF/NTEU telework agreement for non EPS employees, compensatory time off for travel order, ensuring that management has a clear understanding of these issues.

He is a member/advisor on the bureau's Telework Committee. He has been instrumental in helping to develop the Telework Charter and subsequent broadcasts.

His contributions to the Labor Relations Program and to the branch as a whole are greatly appreciated.

For this element, Kevin receives a rating commensurate with his level of performance.

*Rating for this critical element is Outstanding*

---

*Critical Element #4 Labor Relations Program Accountability*

As noted previously, Kevin has provided guidance to Human Resources Specialists in the Management Employee/Labor Relations Branch in the areas of grievance responses and responses to the union's request for information. When asked to develop a check list of what would be considered "elements of a grievance", Kevin created a document that would be used as the foundation for the creation of the new form. Kevin utilizes tools such as the internet and the Code of Federal Regulations to remain current on changing case law and legal decisions regarding labor relations.

Prior to Bureau Orders becoming final and after going through the bureau's Record of Coordination (ROC) process, Kevin reviews all Bureau issued orders for its content to ensure that the order contains appropriate bargaining unit exclusionary language and if not, making management aware of this omission and or advising management of the areas of the order in which the union may find unfavorable for their employees. While not all inclusive, some of those orders include: Telework, Professional Review Board, Continuity Operating Plan Brief and the Pay Demonstration Project.

As the initial point of contact for bureau wide issues impacting bargaining unit employees, Kevin has provided advice and guidance for various issues that include Compensatory Time Off for Travel; The implementation of the Automatic Call Distribution (ACD) at the Federal Firearms Licensing Center in Atlanta, Ga as well as the redistribution of work also in Atlanta Ga. He has written various notices to the union regarding the bureaus' intent to implement various programs and other bureau initiatives such as space and office moves, SF-50 online initiative, the realignment of the Administrative Programs and the Acquisition Property Management Divisions of the Office of Management Directorate.

Also Kevin provided excellent information to management, signifying the need to begin preparing the bureau (in earnest) to enter into contract negotiations with NTEU. In collaboration with NTEU, he developed a Memorandum of Understanding of Ground Rules for Term Agreement Negotiations with the union. He worked with senior management in the development of a negotiating team for the bureau. He was responsible for educating these members on the existing contract and then soliciting feedback from the members regarding areas of the contract believed to be of most concern regarding their respective operations. He carefully coordinated meetings with the negotiating team and provided training to the team prior to entering into negotiations

with NTEU. His accountability for this aspect of the program was indeed invaluable. When Kevin is given a project he works very diligently to complete that project. He demonstrates a keen ability to work independently which is an excellent quality and characteristic however as previously discussed, Kevin needs to work on his ability to work collaboratively with others on issues that are within the realm of his program accountabilities and commensurate with his level of expertise, when necessary and as required by management.

For this element, Kevin receives a rating commensurate with his level of performance.

*Rating for this critical element is Exceeds Fully Successful*

---

### Critical Element #5 Negotiations

Kevin independently identifies complex situation that may generate a duty to bargain. He provides expert advice and guidance to all parties. He provides timely and appropriate notices to the union of changes in working condition. He readily determines whether impact and implementation bargaining is required. Occasionally Kevin will seek input on issues from the Chief of MELRB regarding negotiabity issues raised by the union.

Kevin has a firm grasp on both traditional and interest based bargaining. Through his written proposals initiated by ATF and in responses to proposals to the union he demonstrates his understanding of the issue and often foresees issues that are to come prior to them being presented. His insightfulness is a definite asset. His experience has been recognized during several local and nation negotiations such as the ATF/NTEU Telework Pilot for Legal Instruments Examiners and ATF Specialists. This negotiation required that Kevin work beyond his normal tour of duty. Often times, Kevin spent a significant portion of his day [while balancing his other case work] researching and providing support to counsel in this matter. His efforts lead to the Enforcement Programs Division, entering into a pilot Telework program for its ATF Specialists with a similar offer presented to the Impasse Panel for the Legal Instruments Examiners.

Kevin's negotiating skills were very instrumental in finalizing the transfer of function of the Federal Firearms Licensing (FFLC) currently located in Atlanta Georgia to Martinsburg West Virginia. After the Local union received initial notice in 2003, Kevin followed up with subsequent notices and carried out the agencies duty to bargain over the transfer of function. He made at least two trips to Atlanta, providing needed assistance and guidance to management. As a result of his efforts and the transfer of function was ultimately concluded by the agency informing the union that the transfer of function was covered by the current collective bargaining agreement.

In October 2006, Kevin along with the negotiating team entered the agency into re-negotiation of the current collective bargaining agreement with the National Treasury Employees Union.   As the Senior Negotiator for the bureau, Kevin's expertise in managing labor issues was relied upon by all members of the team.   While the team had an Executive Negotiator, Kevin often times took the lead on issues during the negotiation sessions providing invaluable insight and input to the issue in an effort to lead to a resolution and mutual agreement by both parties.   The negotiations ended in June of 2007 and were reviewed by DOJ.   While the submission was not approved in its entirety, Kevin reestablished the agency's position and a subsequent submission was sent to DOJ for approval.

Kevin's focus on problem resolution and joint interest with the union has been an extreme benefit to the labor relations program.

This is one of the most notable undertakings he has managed thus far and is to be commended for his hard work.

For this element, Kevin receives a rating commensurate with his level of performance.

*Rating for this critical element is Outstanding*

---

*Overall Rating is* _**Exceeds Fully Successful**_

Lisa T. Boykin

Acknowledgement of Receipt:

_____     _____
Employee Signature                    Date

Your signature above indicates that you have received this document.  Your failure to sign will not void the contents of this memorandum.

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

KEVIN HAWKINS

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** P6
(EXCEPT IN U.S. PLAINTIFF CASES)

88888   88888

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

PRO SE (W/P)
8705 BOLENO COURT   301
CLINTON, MD 20735   856-0150

**DEFENDANTS**

DEPT. OF JUSTICE / ATF

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

Case: 1:07-cv-02077
Assigned To : Friedman, Paul L.
Assign. Date : 11/14/2007
Description: Employ. Discrim.

JURY ACTION

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☒ 1 U.S. Government
      Plaintiff

☒ 2 U.S. Government
      Defendant

☐ 3 Federal Question
      (U.S. Government Not a Party)

☐ 4 Diversity
      (Indicate Citizenship of Parties
      in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☒ | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other)   OR   ☐ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| ☐ G. *Habeas Corpus/ 2255* | ☑ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7Appeal to District Judge from Mag. Judge

*42 USC 2000*

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

*EEO STATUTE - AGENCY'S FAILURE TO COMPLETE 180 DAY INVESTIGATION*

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint    **JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    *N.F.*    ☐ YES ☐ NO    If yes, please complete related case form.

DATE *10-30-07*    SIGNATURE OF ATTORNEY OF RECORD    *Kevin Hawkins*

*11-14-07*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd